# EXHIBIT A

## Sale Procedures Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.,* | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER (A) APPROVING BID PROCEDURES RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING THE FORM AND MATTER OF NOTICES; (C) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) APPROVING BREAKUP FEE AND EXPENSE REIMBURSEMENT PROVISIONS; AND (E) GRANTING RELATED RELIEF

Upon the Motion,[1] dated November 25, 2008 (the "Sale Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (A) approving bid procedures which are attached as Exhibit 1 hereto (the "Bid Procedures") with respect to the proposed sale of substantially all of the Debtors' Assets, as more fully set forth in that certain asset purchase agreement (the "Agreement") by and between the Debtors and Eclipsejet Aviation International, Inc. ("Buyer"); (B) scheduling a hearing (the "Sale Hearing") and approving the form and manner of notice of the Auction and the Bid Procedures; (C) establishing procedures relating to the assumption and assignment of certain Designated Contracts, including notice of proposed cure amounts; (D) approving the Breakup Fee and Expense Reimbursement provisions; and (E) granting related relief; and the Court having determined that, to the extent set forth herein, the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; due and appropriate

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (defined below) or in the Bid Procedures (defined below).

notice of the Motion and the relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014 on the following parties: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the holders of the Debtors' Senior Secured Notes; (d) the Internal Revenue Service; (e) Kings Road Investments, Ltd., Citadel Investment Group, L.L.C. and HBK Services, LLC (the "Ad Hoc Committee of Senior Secured Noteholders"); (f) the DIP Lenders; and (g) any governmental entity effected by the relief sought herein (collectively, the "Notice Parties"); and after consideration of the Sale Motion to the extent of the relief granted herein; and the remainder of the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

FOUND, CONCLUDED, AND DECLARED THAT:[2]

    A.    The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    B.    Notice of the Hearing, the Motion and proposed entry of this Order has been provided to the Notice Parties. Under the urgent circumstances, requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, Bankruptcy Code § 102(1), and no further notice of, or hearing on, the Motion or this Order is necessary or required.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

C.     The Debtors' proposed notices of (i) the Proposed Sale of the Assets, (ii) the assumption and assignment of the Designated Contracts and any Cure Costs payable in respect thereof, as described or referred to in the Agreement, (iii) the Agreement, and the terms contained therein, and (iv) the Bid Procedures, in substantially the form attached hereto as Exhibit 1, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Proposed Sale of the Assets, the Auction, the assumption and assignment of Designated Contracts and the cure associated therewith, the Agreement and the Bid Procedures to be employed in connection therewith.

D.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bid Procedures. The Bid Procedures were negotiated in good faith by the Debtors and Buyer and are reasonable and appropriate.

E.     Buyer has expended, and likely will continue to expend, considerable time, money and energy pursuing the Proposed Sale and has engaged in extended arm's length and good faith negotiations. The Agreement is the culmination of these efforts.

F.     Recognizing this expenditure of time, energy and resources, the Debtors have agreed to pay the Breakup Fee and Expense Reimbursement to Buyer on the terms and conditions set forth in the Agreement.

G.     The Breakup Fee and Expense Reimbursement are (a) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (b) material inducement for, and a condition of, Buyer's entry into the Agreement, and (c) fair and reasonable in view of the fact that, if the Breakup Fee and Expense Reimbursement is triggered, Buyer's efforts will have increased the chances that the Debtors will receive the highest or otherwise best offer for the Assets.

3

H.    The Debtors have demonstrated sound business justifications for authorizing (i) the Bid Procedures and (ii) the payment of the Breakup Fee and Expense Reimbursement to Buyer under the circumstances set forth in the Agreement.

I.    The entry of this Order and the relief contained herein are in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Motion is granted, to the extent set forth herein.

2.    The Bid Procedures attached hereto as Exhibit 1 are hereby approved and fully incorporated into this Order, and shall apply with respect to the Proposed Sale of the Assets. The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

3.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

4.    The Expense Reimbursement, which shall be subject to court approval as to reasonableness of the amount, and the Breakup Fee of $4,000,000 are approved, and, pursuant to sections 105, 363, 503 and 507 of the Bankruptcy Code, the Debtors are authorized to pay an amount equal up to the Breakup Fee and Expense Reimbursement to Buyer pursuant to the terms and conditions set forth in the Agreement.

5.    Subject to the conditions and limitations set forth in the Agreement, in the event that the Agreement is terminated, the Debtors shall pay the Breakup Fee to Buyer pursuant to the terms and conditions set forth in the Agreement and without further order of this Court. Subject to the conditions and limitations set forth in the Agreement, in the event that the Agreement is terminated, the Debtors shall pay the Expense Reimbursement to Buyer pursuant to the terms

4

and conditions set forth in the Agreement. The Debtors' obligations to pay the Breakup Fee and Expense Reimbursement shall constitute superpriority administrative expense priority obligations under Bankruptcy Code § 364(c)(1) with priority over any and all expenses of the kind specified in Bankruptcy Code §§ 503(b) and 507(b), subject only to any superpriority claims of the Debtors' post-petition lenders and the superpriority claims granted to the holders of the Debtors' Senior Secured Notes as adequate protection for the use of their cash collateral and paid out of the collateral of the Senior Secured Noteholders pursuant to section 506(c) of the Bankruptcy Code.

6.     A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the parties set forth below not later than 12:00 noon (prevailing Eastern time) on January 6, 2009 (the "Bid Deadline") and shall comply with the requirements set forth in the Bid Procedures for making such bid: (a) Eclipse Aviation Corporation, 2503 Clark Carr Loop SE, Albuquerque, New Mexico 87106, Attn: Mark Borseth; (b) counsel to the Debtors: Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Daniel J. Guyder; (c) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (d) counsel for any official committee of unsecured creditors appointed in this case.

7.     The Debtors shall have the right to reject any and all bids that they believe in their reasonable discretion, in consultation with the Senior Secured Noteholders and any official committee appointed in these cases, do not comply with the Bid Procedures. Buyer is deemed to be a Qualified Bidder, and Buyer's Bid as embodied in the Agreement is deemed to be a Qualified Bid.

5

8.    As further described in the Bid Procedures, if a Qualified Bid other than Buyer's Bid is timely received, the Auction will be held on January 7, 2009 at 10:00 a.m. (prevailing Eastern time), and the Debtors shall, not later than 4:00 p.m. (prevailing Eastern time) on January 6, 2009, notify Buyer, all Qualified Bidders who have submitted a Qualified Bid and expressed their intent to participate in the Auction, counsel for the Senior Secured Noteholders, any official committee appointed in these cases, and the United States Trustee that the Auction will be held on January 7, 2009 at 10:00 a.m. at the offices of Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020.

9.    Not later than two (2) days after entry of this Order, the Debtors will cause the Auction and Sale Notice, substantially similar to the form attached hereto as Exhibit 2 to be sent by first-class mail postage prepaid to all of the Debtors' creditors and interest holders, the Federal Aviation Authority, the Environmental Protection Agency, the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property, the attorneys general of all states in which the Purchased Assets are located, all entities known to have expressed a *bona fide* interest in acquiring all or portions of the Assets, all taxing authorities or recording offices which have a reasonably known interest in the relief requested, the Office of the United States Trustee, counsel for Buyer, counsel for the Debtors' postpetition lender(s), counsel for the Ad Hoc Committee, counsel for any official committee of unsecured creditors appointed in these cases, all federal, state and local regulatory authorities with jurisdiction over the Debtors, all insurers, all non-debtor parties to the Designated Contracts, all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Assets, all parties that filed on or before December 10, 2008 a notice of appearance in these cases, and other known parties-in-interest in these cases.

10.     Not later than three (3) days after the entry of this Order, the Debtors shall cause the Auction and Sale Publication Notice, in a form substantially similar to the form attached to this Order as Exhibit 3 to be published in (i)_____, and (ii) one of the following: _____, as to be determined by the Debtors and the Buyer, pursuant to Bankruptcy Rule 2002(l). Such publication notice shall be sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

11.     In addition, to facilitate the sale, assumption and assignment of any Designated Contracts, the Debtors will serve a notice (the "Cure Amount Notice"), similar to the form attached hereto as Exhibit 4 hereto not later than two (2) days after the entry of this Order upon each counterparty to a Designated Contract. Buyer shall have the right until the date provided in the Agreement to amend the Designated Contracts to include additional executory contracts and unexpired leases or to exclude executory contracts or unexpired leases previously included as provided in the Agreement. To the extent that Buyer is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Designated Contracts assumed and assigned as part of an alternative transaction, the Debtors will provide financial information for the alternative bidder to all non-debtor parties to such Designated Contracts immediately following the Auction via facsimile or Federal Express.

12.     The Debtors will attach to the Cure Amount Notice its calculation of the undisputed cure amounts that the Debtors believe must be paid to cure all prepetition defaults under all Designated Contracts (the "Prepetition Cure Amounts"). If no amount is listed on Exhibit 4, the Debtors believe that there is no Prepetition Cure Amount. Unless the non-debtor party to a Designated Contracts files an objection (the "Cure Amount Objection") to its scheduled Prepetition Cure Cost or any other objection to the proposed assumption and

assignment of its Designated Contract no later than 4:00 p.m. (prevailing Eastern time) on

December 30, 2008 (or in the event Buyer is not the Successful Bidder, at or prior to the Sale

Hearing), and serves the objection, so that it is actually received before such deadline, upon (a)

counsel to the Debtors: Allen & Overy LLP, 1221 Avenue of the Americas, New York, New

York 10020, Attn: Daniel J. Guyder, (b) Buyer: c/o ETIRC Aviation S.a.r.l., 16 Rue Jean-

Brasseur, Luxembourg 1258, Luxembourg, Attn: Roland Pieper, with a copy to: Goodwin

Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018,

Attn: Allan S. Brilliant and Craig P. Druehl; (c) counsel for the Ad Hoc Committee: Covington

& Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York

10018, Attn: Benjamin Hoch and Andrew Ment; and (d) counsel for any official committee of

unsecured creditors appointed in this case, such non debtor party shall (i) be forever barred from

objecting to the Prepetition Cure Amount and from asserting any additional cure or other

amounts with respect to such Designated Contract or any other objection to the proposed

assumption and assignment of its Designated Contract and the Debtors shall be entitled to rely

solely upon the Prepetition Cure Amount; and (ii) be forever barred and estopped from asserting

or claiming against the Debtors, Buyer, or such other Successful Bidder or any other assignee of

the relevant Designated Contract that any additional amounts are due or defaults exist under such

Designated Contract.

13.     In the event that a Cure Amount Objection is timely filed, the Cure Amount

Objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party

asserts as the Prepetition Cure Amount, and (iii) appropriate documentation in support of the

Prepetition Cure Amount.

14.     Hearings on Cure Amount Objections may be held (a) at the Sale Hearing, or (b) on such other date as this Court may designate upon request by the Debtors with the prior written consent of Buyer.

15.     The Debtors' decision to assume and assign Designated Contracts is subject to Court approval and consummation of the Proposed Sale of the Assets. Absent consummation of the Proposed Sale of the Assets, each of the Designated Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

16.     Except to the extent otherwise provided in the Agreement or any agreement with a Successful Bidder, subject to any required Prepetition Cure Amount payments, the assignee of any assumed Designated Contract will not be subject to any liability to the assigned Designated Contract counterparty that accrued or arose before the closing date of the Proposed Sale of the Assets and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to Bankruptcy Code § 365(k).

17.     Objections, if any, to the relief requested in the Sale Motion must: (1) be in writing; (2) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (3) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 4:00 p.m. (prevailing Eastern Time) on December 30, 2008 and (4) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on such date, upon (a) counsel to the Debtors:  Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn:  Daniel J. Guyder, (b) Buyer:  c/o ETIRC Aviation S.a.r.l., 16 Rue Jean-Brasseur, Luxembourg 1258, Luxembourg, Attn: Roland Pieper, with a copy to: Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New

York, New York 10018, Attn: Allan S. Brilliant and Craig P. Druehl; (c) counsel for the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (d) counsel for any official committee of unsecured creditors appointed in this case, provided however, to the extent that Buyer is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain unexpired leases, license agreements and executory contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such unexpired leases, license agreements and executory contracts shall have until the Sale Hearing to raise objections under Bankruptcy Code § 365(b)(1)(C).

18.     The Sale Hearing shall be held before this Court on January 8, 2009 at _:__ _.m. (prevailing Eastern Time). The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

19.     The notices to be issued in connection with the Proposed Sale of the Assets, substantially in the form of the notices annexed hereto as Exhibits 2, 3 and 4 are approved in all respects.

20.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

21.     As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

22.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

067809.1001

23.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

Dated_____, 2007
Wilmington, Delaware

_____
United States Bankruptcy Judge

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*, | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | |
| Debtors. | ) | |

## BID PROCEDURES

Eclipse Aviation Corporation and its affiliated debtors and debtors in possession (collectively the "Debtors") have filed chapter 11 cases pending in the Bankruptcy Court[3] and jointly administered under Case No. 08-13031 (MFW). On November 25, 2008, the Debtors entered into an asset purchase agreement (the "Agreement") with Eclipsejet Aviation, Inc. ("Buyer") pursuant to which Buyer proposes to acquire substantially all of the Debtors' assets (the "Assets"). By motion dated November 25, 2008 (the "Motion"), the Debtors sought, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest and best offer for the Assets. On _____, 2008, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bid Procedures.

On January 8, 2009, as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Assets (the "Proposed Sale") to Buyer (defined below) or to one or more other Qualified Bidders (defined below) that the Debtors, in their sole discretion, determine to have made the highest and best offer.

*Agreement*

Pursuant to the terms and conditions of the Agreement, Buyer would provide consideration for the Assets equal to the following (the "Purchase Price"): (i) the Cash Consideration which amount shall be payable as set forth in <u>Section 3.2</u> of the Agreement, plus (ii) the Note Consideration, plus (iii) the Stock Consideration, plus (iv) the Buyer Funded Transaction Expenses. The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.

*Assets for Sale*

---

3    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement (defined below).

The Debtors are offering for sale in one or more transactions all or substantially all of the assets of Eclipse Aviation Corporation and its affiliated debtors and debtors in possession. The assets for sale do not include the Excluded Assets.

*Participation Requirements*

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors and their counsel, not later than 12:00 noon (prevailing Eastern time) on January 6, 2009:

    (a)    <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance acceptable to the Debtors and their counsel; such form attached as Exhibit 1 hereto;

    (b)    <u>Identification of Potential Bidder</u>. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the assets of the Debtors do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a)-(b) above, and that the Debtors in their discretion and with assistance from their advisors determine is reasonably likely to submit a *bona fide* offer that would result in greater total consideration being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(b) above, the Debtors, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Buyer is a Qualified Bidder.

*Access to Due Diligence Materials*

Only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information. If the Debtors determine that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## Bidding Process

The Debtors and their advisors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions, above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "Bidding Process"). Subject to the prior consent of Buyer, the Debtors shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be January 6, 2009, at 12:00 p.m. (Eastern Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its bid to: (a)

3

Eclipse Aviation Corporation, 2503 Clark Carr Loop SE, Albuquerque, New Mexico 87106, Attn: Mark Borseth; (b) counsel to the Debtors: Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Daniel J. Guyder; (c) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (d) counsel for any official committee of unsecured creditors appointed in this case (collectively, the "Notice Parties"), so that the bid is actually received by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors to satisfy each of the following conditions:

(a) Good Faith Deposit: Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or a certified check payable to the order of the Debtors in an amount of not less than $5.0 million.

(b) Minimum Overbid: The aggregate consideration must equal or exceed the sum of the Purchase Price plus (x) $5.0 million and (y) an amount necessary to repay the Debtors' postpetition debtor-in-possession financing in cash in full.

(c) Irrevocable: A bid must be irrevocable until two (2) business days after the Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "Termination Date").

(d) The Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment are substantially the same or better than the terms of the Agreement. A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price). The Contemplated Transaction Documents must include a written commitment satisfactory to the Debtors and the Ad Hoc Committee of Senior Secured Noteholders of its financial ability and intention to complete the transaction and contain a representation that the Qualified Bidder shall

4

make all necessary regulatory filings, if any, and pay all costs and expenses of such filings (including the Debtors' costs and expenses). A Bid shall propose a contemplated transaction involving all of the Assets and substantially all of the Assumed Liabilities, as such term is defined in the Agreement, and shall contain substantially all of the material terms and conditions contained in the Agreement (provided, however, that any variations from one or more material terms must, in the aggregate constitute an improvement, as determined by the Debtors' in consultation with the Senior Secured Noteholder, upon such term or terms as set forth in the Agreement).

(e) Contingencies: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

(f) Corporate Authority. A Bid must include written evidence of the Qualified Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that if the Qualified Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Qualified Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals").

(g) Financing Sources: A Bid must contain written evidence satisfactory to the Debtors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, that demonstrates the Qualified Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

(i) the Qualified Bidder's current financial statements (audited if they exist);

(ii) contact names and numbers for verification of financing sources,

(iii) evidence of the Qualified Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

(iv) any such other form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Ad Hoc Committee of Senior Secured Noteholders demonstrating that such Qualified Bidder has the ability to close the contemplated transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors and the Ad Hoc Committee of Senior Secured Noteholders, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Qualified Bidder's financial qualifications.

(h)     No Fees payable to Qualified Bidder: A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Debtors believe, in their reasonable discretion and after consultation with the Ad Hoc Committee of Senior Secured Noteholders, that such bid would be consummated if selected as the Successful Bid. For purposes hereof, the Agreement shall constitute a Qualified Bid. Promptly upon such determination, the Debtors shall provide any other Qualified Bids to the Buyer.

In the event that any Bid is determined by the Debtors not to be a Qualified Bid, the Qualified Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

**Auction**

Only if a Qualified Bid (other than Buyer's) is received by the Bid Deadline, shall the Debtors conduct an auction (the "Auction") to determine the highest and best bid with respect to the Assets. The Debtors shall provide Buyer and all Qualified Bidders with copies of all Qualified Bids at least eighteen (18) hours prior to the Auction. The Auction shall commence on January 7, 2009 at 10:00 a.m. (prevailing Eastern time).

No later than 4:00 p.m. (prevailing Eastern time) on January 6, 2009, the Debtors will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined in the Debtors' discretion after consultation with the Ad Hoc Committee of Senior Secured Noteholders (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (if Buyer's Qualified Bid constitutes the Baseline Bid then the Breakup Fee and Expense Reimbursement, calculated for this purpose in accordance with the Agreement, shall be added to such Qualified Bid for purposes of the Auction). If, however, no other such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Buyer will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the January 8, 2009 Sale Hearing, the Debtors will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

(a)     Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representative of each of the Qualified Bidders, the Debtors and the Ad Hoc Committee of Senior Secured Noteholders shall be permitted to attend. During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $3,000,000. Other than otherwise set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest and best offer for the Assets.

(b)     The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (A) the amount and nature of the consideration; (B) the proposed assumption of any

liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents, and (H) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

(c)     Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(i)     Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $3,000,000.

(ii)     Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors and the Ad Hoc Committee of Senior Secured Noteholders) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

(iii)     Announcing Overbids

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, *inter alia,* the Bid Assessment Criteria.

(d)     Additional Procedures

The Debtors, in their reasonable discretion, may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction. Subject to the prior consent of the Buyer, the Debtors, in their reasonable discretion, may adjourn without further notice the Auction (and Sale Hearing) if in their reasonable discretion, an adjournment will better promote the goals of the Auction and allow parties to make progress towards modifications of any Qualified Bid that could result in a higher and better Qualified Bid.

(e)     Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

(f)     Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest and best offer for the Assets (the "Successful Bid") and the entity submitting such Successful Bid, the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtors, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination. If Buyer's final bid is deemed to be highest and best at the conclusion of the Auction, Buyer will be the Successful Bidder, and such bid, the Successful Bid.

9

## Acceptance of Successful Bid

The Debtors shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Debtors' selection of the Successful Bidder (including the assignment of any of such objector's Assumed Executory Contract thereto, provided, however, that any objection to such assignment on the basis of the Cure Amount must be made and/or reserved as set forth in the order approving these Bid Procedures).

## "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to Buyer, the terms of the sale of the Acquired Assets shall be set forth in the Agreement, or (ii) as to another Successful Bidder, the terms of the sale of the Assets shall be set forth in the applicable purchase agreement.

## Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Bankruptcy Code § 363, with such Interests to attach to the net proceeds of the sale of the Assets.

## Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction Date or on such date as may be established by the Bankruptcy Court. Following the approval of the sale of the Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved sale within [twenty (20)] days after entry of an Order approving the Sale, the Debtors, unless such Order approving the Sale is otherwise stayed by order of a court with competent jurisdiction, shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder. Buyer shall not be required to provide a deposit.

### Modifications

The Bid Procedures may not be modified except with the express written consent of the Debtors and Buyer. The Debtors, after consultation with the Ad Hoc Committee of Senior Secured Noteholders, may (a) determine, which Qualified Bid, if any, is the highest and best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors. Subject to the prior consent of the Buyer, to the extent not contrary to the Bidding Procedures Order, the Debtors reserve the right to modify without further notice these Bidding Procedures if in their reasonable judgment such modifications would be in the best interests of the Debtors' estates and promote an open and fair sale process.

In all cases where the Bid Procedures require the Debtors to consult with the Ad Hoc Committee of Senior Secured Noteholders, the Debtors' fiduciary duties shall not be limited by such consultation requirement.

DB02:7587588.1                                          067809.1001

# **EXHIBIT 2**

## **Notice of Auction and Sale Hearing**

**To be Provided**