# EXHIBIT A



*Real Time*
*Simulation*
*Technologies*

**OPINICUS**
*Corporation*



ECLIPSE
AVIATION

# PURCHASE AGREEMENT

## PURCHASE AGREEMENT NO. 5702-0000

# ECLIPSE 500 FULL FLIGHT SIMULATORS AND FLIGHT TRAINING DEVICE

For

**Eclipse Aviation Corporation**
**2503 Clark Carr Loop SE**
**Albuquerque, NM 87106**

By

**OPINICUS Corporation**
**28870 US Hwy 19 N. Suite 400**
**Clearwater, Florida 33761 U.S.A.**

Date

April 6, 2005



# PURCHASE AGREEMENT



ECLIPSE
AVIATION

# TABLE OF CONTENTS

1.0 DEFINITIONS...................................................................................2
  1.1 CERTAIN DEFINED TERMS...........................................................2
2.0 SCOPE AND TERM.............................................................................7
  2.1 SCOPE..................................................................................7
  2.2 INITIAL TERM........................................................................7
  2.3 OPTION TERM.........................................................................7
  2.4 EXCLUSIVITY.........................................................................7
3.0 PRICE AND PAYMENT..........................................................................8
4.0 TAXES........................................................................................8
5.0 BUYER RESPONSIBILITIES.....................................................................9
  5.1 BUYER FURNISHED DATA.............................................................9
  5.2 INVENTORY..........................................................................10
  5.3 BUYER FURNISHED EQUIPMENT AND SOFTWARE........................................10
  5.4 WORK SPACE AVAILABILITY........................................................10
  5.5 SIMULATOR FACILITY MAINTENANCE................................................10
6.0 INSTALLATION AND SITE PREPARATION......................................................10
  6.1 SHIPMENT............................................................................10
  6.2 SITE PREPARATION.................................................................11
7.0 TESTING AND ACCEPTANCE....................................................................11
  7.1 TEST GUIDES AND PROCEDURES.....................................................11
  7.2 DISCREPANCIES.....................................................................11
  7.3 IN-PLANT ACCEPTANCE TESTING...................................................12
  7.4 ON SITE ACCEPTANCE TESTING....................................................14
  7.5 FAA QUALIFICATION TESTING......................................................15
  7.6 RELIABILITY DEMONSTRATION......................................................16
  7.7 FINAL ACCEPTANCE.................................................................16
8.0 DOCUMENTATION AND SOFTWARE..............................................................17
  8.1 OPERATIONS AND MAINTENANCE DOCUMENTATION.....................................17
  8.2 LICENSE.............................................................................17
9.0 SPARES/SUPPORT EQUIPMENT..................................................................19
  9.1 SPARES..............................................................................19
  9.2 SUPPORT EQUIPMENT...............................................................20
10.0 TRAINING...................................................................................20
  10.1 TRAINING BUYER'S TECHNICAL PERSONNEL.........................................20
  10.2 FORMAL CLASSROOM TRAINING.....................................................20
  10.3 ON-THE-JOB TRAINING............................................................20
11.0 PROGRAM MANAGEMENT.......................................................................21
  11.1 PROGRAM OFFICE...................................................................21
  11.2 PROJECT DEVELOPMENT TRACKING..................................................21
12.0 WARRANTIES................................................................................22

Initials: BUYER _OM_ OPINICUS _JRF_



**PURCHASE AGREEMENT**



ECLIPSE
AVIATION

13.0 PATENT, TRADEMARK, COPYRIGHT AND TRADE SECRET INDEMNITY 23
    13.1 HOLD HARMLESS ...................................................................23
    13.2 REMEDY FOR INFRINGEMENT ...............................................23
    13.3 EXCUSIONS TO INDEMINITY ..................................................24
    13.5   SURVIVAL ..........................................................................24
14.0 SUPPORT SERVICES .................................................................24
    14.1 TECHNICAL SUPPORT ...........................................................24
    14.2 PRODUCT SUPPORT .............................................................25
15.0 TITLE AND RISK OF LOSS ........................................................26
16.0 CHANGES ...............................................................................26
17.0 DELAYS ..................................................................................27
    17.1 FORCE MAJEURE ...................................................................27
    17.2 EXTENSION DUE TO FORCE MAJEURE ..................................27
    17.3 RECOVERY PLAN FOR DELAY DUE TO FORCE MAJEURE .........27
    17.4 UNEXCUSED DELAYS .............................................................27
    17.5 RECOVERY PLAN FOR DELAY DUE TO FAULT ........................27
18.0 TERMINATION ........................................................................28
    18.1 TERMINATION FOR FAULT ...................................................28
    18.2 TERMINATION FOR CONVENIENCE ......................................28
    18.3 EFFECTS OF TERMINATION ................................................29
19.0 INDEMNITY PROVISIONS ........................................................30
20.0 INSURANCE PROVISIONS ........................................................30
21.0 DISPUTES ...............................................................................31
22.0 GENERAL PROVISIONS ............................................................32
    22.1 ENTIRE AGREEMENT ...........................................................32
    22.2 AMENDMENTS ....................................................................32
    22.3 ASSIGNMENT ......................................................................32
    22.4 DISCLOSURE .......................................................................32
    22.5 WAIVER ..............................................................................32
    22.6 CONSEQUENTIAL DAMAGES ...............................................32
    22.7 MUTUAL ASSURANCES ........................................................33
    22.8 LOCAL LAWS AND ORDINANCES .........................................33
    22.9 SEVERABILITY ....................................................................33
    22.10 NOTICES ...........................................................................33
    22.11 APPLICABLE LAW AND VENUE ...........................................34
    22.12 EMPLOYMENT/WORK RESTRICTIONS .................................34
    22.13 CONFLICT OF INTEREST ....................................................34
    22.14 PROHIBITION OF USE OF TRADENAME AND TRADEMARK ......34
    22.15 AUDIT ..............................................................................34
    22.16 LIMITED AGENCY, UNITED SERVICES ..................................35
    22.17 RELATIONSHIP OF PARTIES AND PUBLIC ANNOUNCEMENTS ...35
    22.18 HEADINGS .........................................................................35

Initials:  BUYER  _AV_   OPINICUS _ART_



*Real Time Simulation Technologies*

**OPINICUS** *Corporation*

**PURCHASE AGREEMENT**



ECLIPSE
AVIATION

# LIST OF ATTACHMENTS

## ADDENDUM

Addendum A.1    Cost, Payment and Program Milestones, Flight Training Device #1
Addendum A.2    Cost Payment and Program Milestones, full flight Simulator #1
Addendum A.3    Cost Payment and Program Milestones, full flight Simulator #2

## APPENDIX

Appendix A.1    Technical Specification, Flight Training Device
Appendix A.2    Technical Specification, Full Flight Simulator
Appendix B    Confidentiality and Non-Disclosure Agreements
Appendix C    Certificate of Conformance
Appendix D    Change Order
Appendix E    Discrepancy Report (DR)
Appendix F    Warranty Claim
Appendix G    Training Syllabus/Curriculum
Appendix H    Eclipse 500 Staffing Plan
Appendix I    Buyer Furnished Equipment and Data

Initials: BUYER _____ OPINICUS _____



**PURCHASE AGREEMENT**



*Real Time
Simulation
Technologies*

**OPINICUS**
*Corporation*

**ECLIPSE**
**AVIATION**

## PURCHASE AGREEMENT NO. 5702-0000

THIS AGREEMENT, made this 6th day of April 2005, by and between Eclipse Aviation Corporation, a Delaware corporation (hereinafter referred to as "BUYER or ECLIPSE"), whose principal office is at 2503 Clark Carr Loop SE, Albuquerque, NM 87106 and OPINICUS Corporation, a Florida Corporation (hereinafter referred to as "OPINICUS"), whose principal office is at 28870 U.S. Hwy. 19 N., Suite 400, Clearwater, Florida 33761 (BUYER and OPINICUS sometimes hereinafter individually referred to as "Party" and collectively as "Parties");

Witnesseth:

Whereas, BUYER intends to develop, certify, market and sell an aircraft currently known as the Eclipse 500 aircraft; and

Whereas, BUYER may develop derivatives of the Eclipse 500 aircraft with a gross take-off weight between 5,500 and 6,000 pounds; and

Whereas, BUYER desires to purchase new Eclipse 500 full flight simulators and flight training devices; and

Whereas, OPINICUS has considerable knowledge and experience in building full flight simulators and flight training devices; and

Whereas, BUYER desires to retain the services of OPINICUS to build Eclipse 500 full flight simulators and flight training devices and

Whereas, OPINICUS is willing and able to build Eclipse 500 full flight simulators and flight training devices; and

Whereas, BUYER has contracted with a third party (United Air Lines, Inc, dba United Services, with operations in Denver ,CO) to serve as BUYER's Aircraft Flight Simulation Training Device (FSTD) Sponsor, to provide flight simulator training services and, to function as a limited agent, as further defined herein, on behalf of BUYER for the purposes of this Agreement.

Now, Therefore, BUYER and OPINICUS, in consideration of the premises and mutual covenants hereof, agree as follows:

Initials: BUYER _____ OPINICUS _____




# 1.0 DEFINITIONS

As used in this Agreement, the following terms shall have the meanings respectively assigned to them below:

## 1.1 CERTAIN DEFINED TERMS

| | |
|---|---|
| "Addendum" or "Addenda" | shall mean the Addenda attached to this Agreement that contain(s), among other things, the purchase prices, payment terms and conditions, and milestone schedules for the Program. |
| Addendum A | shall, with respect to this Agreement, mean Addendum A.1, flight training device cost, payment and Program Milestone schedule or Addendum A.2 or Addendum A.3, the latter two Addenda relate to simulator cost, payment and Program Milestone schedule, whichever is/are applicable. |
| "Agreement" | shall mean this Purchase Agreement and the Addendum(s), Appendices and Attachment(s) hereto, including all amendments, change orders, if any, from time to time made to this Agreement. |
| Appendix (ices) | shall mean the attachments to this Agreement corresponding to a document referenced in this Agreement. |
| "BUYER Acceptance Testing" | shall mean that period when BUYER is testing for the acceptance of the flight training device or Simulator either at OPINICUS' facility (In-Plant BUYER Acceptance Testing) or at BUYER's Training Facility (On Site BUYER Acceptance Testing). |
| "BUYER Furnished Data | shall mean the data and documents provided by BUYER to OPINICUS, as specified in Appendix I and, as generally described in Article 5.0, Subsection 5.1 of this Agreement. |
| "BUYER Furnished Equipment and Software (Aircraft)" | shall mean the aircraft and simulated equipment and software provided by BUYER to OPINICUS, as specified in Appendix I and, as generally described in Article 5.0, Subsection 5.3 of this Agreement. |

2

Initials: BUYER _____ OPINICUS _____

Real Time
Simulation
Technologies



**OPINICUS**
Corporation

**PURCHASE AGREEMENT**



ECLIPSE
AVIATION

| | |
|---|---|
| "BUYER's Training Center" or BUYER's Training Facility" | shall mean the BUYER's designated location for the installation of the Equipment. |
| "Certificate of Conformance" | shall mean that written instrument, when executed by both BUYER's and OPINICUS' duly authorized representatives, which evidences the accomplishment of the noted event or activity. See Appendix C for a sample Certificate of Conformance form. |
| "Change Order" | A document evidencing a change to this contract as provided in Article 16.0. See Appendix D for a sample Change Order form. |
| "Critical Milestone" | Shall mean the program milestones which are critical to the successful completion of the Program as defined in the appropriate Addendum A.1 and/or A.2. |
| "Discrepancy", "Discrepancy Report" or "DR" | shall mean those items identified in writing by BUYER or by OPINICUS and specifying where the flight training device and/or Simulator fails to comply with the applicable requirements of the Technical Specification or the applicable requirements for Simulator re-qualification determined by the FAA. See Appendix E for a sample Discrepancy Report (DR) form. |
| "Equipment" | shall mean the equipment (hardware, software and firmware components) sold by OPINICUS to BUYER under this Agreement. |
| "FAA Qualification" | shall mean the qualification of the simulator by the United States Federal Aviation Administration to the level D requirements as set forth in the FAA Advisory Circular 120-40B, dated 7/29/91.or the qualification of the flight training device by the Federal Aviation Administration to the Level 6 requirements as set forth in the FAA Advisory Circular 120-45A,dated 2/5/92 |
| "Flight Training Device" or "FTD" | Shall mean the BUYER's Eclipse 500 flight training device, manufactured by OPINICUS, owned and operated by BUYER. |

3

**PURCHASE AGREEMENT**



*Real Time
Simulation
Technologies*

**OPINICUS**
*Corporation*



ECLIPSE
AVIATION

| | |
|---|---|
| "In-Plant BUYER Acceptance" | shall mean the execution of the Certificate of Conformance indicating In-Plant acceptance by BUYER and OPINICUS as set forth in this Agreement. |
| "In-Plant BUYER Acceptance Testing" | shall mean that period when BUYER is testing the flight training device and/or Simulator at OPINICUS' facility. |
| "In-Plant OPINICUS Testing" | shall mean that period when OPINICUS is testing the flight training device and/or Simulator at OPINICUS' facility. |
| "Installation" | shall mean that period when OPINICUS is moving, installing, inspecting, and testing the flight training device and/or Simulator at BUYER's Training Center. |
| "Licensed Data" | shall mean all proprietary documentation and software provided by a Party, or by a Party's third party supplier, to a Party under this Agreement and appropriately marked as being proprietary to a Party, or to a Party's supplier, to the extent such documentation and/or software is used for the purposes of manufacturing, designing, operating, calibrating, maintaining, repairing or modification of a Flight Training Device and/or Simulator in accordance with Article 8.0, Subsection 8.2 hereof. |
| "On Site" | shall mean an event that takes place at BUYER's Training Facility. |
| "On Site BUYER Acceptance" | shall mean the execution of the Certificate of Conformance indicating On Site acceptance by BUYER and OPINICUS as set forth in this Agreement. |
| "On Site BUYER Acceptance Testing" | shall mean that period when BUYER is testing the flight training device flight training device and/or Simulator at the BUYER's Training Facility. |
| "On Site OPINICUS Testing" | shall mean that period when OPINICUS is testing the flight training device flight training device and/or Simulator at the BUYER's Training Facility. |

Initials: BUYER _____ OPINICUS _____

 **PURCHASE AGREEMENT** 

*Real Time
Simulation
Technologies*

**OPINICUS**
*Corporation*

ECLIPSE
AVIATION

"Purchase Price(s)"

shall, with respect to this Agreement, mean the purchase price(s) set forth for the flight training device #1 in Addendum A.1, Article 3.0, Subsection 3.1, for Simulator #1 in Addendum A.2, Article 3.0, Subsection 3.1 and for Simulator #3 in Addendum A.3, Article 3.0, Subsection 3.1.

"Qualification Test Guide" or "QTG"

shall mean the qualification test guide document which complies with FAA qualification test guide requirements as set forth in the applicable FAA Advisory Circular (AC 120-40B for the simulator and AC 120-45A for the flight training device).

"Qualification Level" or "Level D Qualification" or Level 6 Qualification"

shall mean the qualification Level 6 requirements for the flight training device or Level D requirements for the simulator based on the current FAA Qualification level specified for the Eclipse 500 flight training device or simulator in Article 2.0, Subsection 2.1 of the applicable Technical Specification.

"Ready For Training" or "RFT"

shall mean that the flight training device and/or Simulator(s) is ready for training as provided in Article 7.0, Subsection 7.5.

"Reliability Demonstration Period"

shall mean the 90 day reliability demonstration period which shall be satisfied when the applicable FTDs or simulator's average percent reliability, over 90 consecutive days, is greater than 99% as per the requirements set forth in Article 7.0, subsection 7.7 of this Agreement.

"Relocation"

shall mean the start of the relocation of the flight training device or Simulator(s) from OPINICUS' facility in Clearwater, Florida USA to BUYER's Training Facility

"Services"

shall mean the manufacture of a new flight training device or simulator, the relocation and installation of the flight training device and/or Simulator(s) at BUYER's Facility, and those support and warranty services provided by OPINICUS to BUYER in accordance with this Agreement.

Initials: BUYER _____ OPINICUS _____



| | |
|---|---|
| "Simulator Program" or "Program" | shall mean the Equipment, and software produced and developed in accordance with this Agreement. |
| "Simulator(s)" | shall mean the BUYER's Eclipse 500 full flight simulator(s) manufactured by OPINICUS. |
| "Simulator Program Milestone Schedule" or "FTD Program Milestone Schedule" or "Program Milestone Schedule" or "Program Schedule" | shall mean the BUYER's Eclipse 500 flight training device and/or Simulator Milestone Program Schedule as defined in Addendum A.1, Addendum A.2, and/or Addendum A.3 Article 4.0, Subsection 4.1. |
| "Systems Acceptance Test Procedure" | shall mean the document which defines the procedures for testing and verifying each major simulated aircraft system to verify the operational status, functionality, and performance of that specific system in accordance with the applicable Technical Specification as listed in Appendix A.1 or A.2. |
| "Technical Specification" | shall mean the technical specification document, including all properly incorporated changes thereto, contained in Appendix A.1 – Flight Training Device Technical Specification and/or Appendix A.2 Simulator Technical Specification. |
| "Training Syllabus" | shall mean the preliminary training syllabus/curriculum in Appendix G. |
| "Verification Plan" | shall mean the verification plan, which defines a series of building-block steps, to ensure that the functionality and performance of the flight training device and/or Simulator(s) is systematically tested and verified. See Appendix A.1 and or A.2, Technical Specification, Article 17.0. |
| "Warranty Claim" | shall mean the form, which is required to be complete in order to exercise a warranty claim. See Appendix F for a sample Warranty Claim form. |

6



## 2.0 SCOPE AND TERM

### 2.1 SCOPE
In consideration of the Purchase Price(s) shown in the Addenda OPINICUS shall, in accordance with the Program Schedule(s) shown in the Addenda and the terms and conditions of this Agreement:

- Design, develop, procure, project manage, produce, sell and deliver the Equipment (including necessary applications and operational software); and
- Provide the Services

### 2.2 INITIAL TERM
The initial Term of this Agreement shall be through the delivery of the first Flight Training Device and the first two (2) full flight Simulators. It is understood that the fixed price for the first full flight Simulator is based on the assumption that $830,000 of non-recurring engineering cost incurred on that Simulator is included in, and will be recovered as part of the purchase price of, the second full flight Simulator produced by OPINICUS.

### 2.3 OPTION TERM
BUYER shall have the option to add additional flight training devices and flight simulators and extend the term of this agreement for up to a total of ten (10) years upon mutually agreeable terms. Any such extension shall include terms identifying OPINICUS as BUYER's exclusive source for flight training devices and simulators. Given changing market conditions for technology based products, pricing will be based on a cost plus (either fixed fee or fixed margin) basis.

### 2.4 EXCLUSIVITY
OPINICUS agrees that during the INITIAL TERM of this Agreement and for three (3) years thereafter that OPINICUS shall not solicit nor offer for sale, to any third party, aircraft full flight simulators or Flight Training Devices incorporating Licensed Data, proprietary to BUYER, for Eclipse 500 model aircraft pilot training or type rating. The foregoing is subject to; (a) BUYER not purchasing full flight simulators or Flight Training Devices from any other such supplier, or providing documentation, data or software to any party, other than OPINICUS, that will allow the manufacture of Flight Training Devices and simulators for the Eclipse 500 aircraft, during the INITIAL TERM of this Agreement and, (b) prior to the expiration of the INITIAL TERM of the Agreement, BUYER shall have placed orders for a combination of at least six (6) full flight simulators or Flight Training Devices from OPINICUS.

During the OPTION TERM, OPINICUS shall agree not to manufacture Flight Training Devices or simulators for the Eclipse 500 aircraft without prior written consent from BUYER and BUYER shall agree not to provide documentation, data or software to any party, other than OPINICUS, that will allow the manufacture of Flight Training Devices and simulators

Initials: BUYER _____ OPINICUS _____



for the Eclipse 500 aircraft. Further, the term during which OPINICUS shall not solicit nor offer for sale, to any third party, aircraft full flight simulators or Flight Training Devices incorporating Licensed Data, proprietary to BUYER, for Eclipse 500 model aircraft pilot training or type rating shall increase to five years provided that BUYER shall have placed orders totaling a combination of at least ten (10) full flight simulators or Flight Training Devices from OPINICUS during the INITIAL TERM and the OPTION TERM of this Agreement.

### 3.0 PRICE AND PAYMENT

The price for the Equipment and Services shall be the Purchase Price(s) specified in Addenda A.1, A2 or A.3. The Purchase Price(s) shall be paid by BUYER to OPINICUS in accordance with the payment schedule set forth in the <u>Schedule of Payments</u> of Addenda A.1, A2 or A.3. In the event that the Purchase Price(s) set forth in the Addenda are increased or decreased as a result of any change order(s) under the <u>Changes</u> provisions hereof, the payment schedule for such price change shall be set forth in such change order, so as to give effect to said increase or decrease.

OPINICUS shall promptly submit an invoice for each payment identified in the <u>Schedule of Payments</u> of the Addenda. Said invoices shall include the payment number, payment amount, event description, and the date that the event was accomplished.

Upon receipt of an OPINICUS invoice reflecting the amount in conformance with the milestone payment, together with a Certificate of Conformance duly signed by OPINICUS and BUYER that the applicable payment milestone listed in the Addenda, has been achieved, BUYER shall be obligated to timely pay the full amount of the invoice within thirty (30) days of the date thereof. Provided however that if within ten (10) working days after receipt of an invoice, BUYER shall have given written notice that the work to have been performed (to meet the payment milestone) has not been substantially completed and which delay is not directly attributable to BUYER's failure to meet its responsibility under Article 5 herein. The work which BUYER specifies in its written notice not to have been substantially completed may result in a "dispute" which shall be resolved in accordance with Article 21 herein.

Payments shall be submitted by BUYER to OPINICUS either by wire transfer to OPINICUS at Account No. 3601245272, Routing No. 0260-0959-3 at Bank of America of Florida, New Port Richey, Florida or by check addressed to OPINICUS Corporation at 28870 U.S. Hwy. 19 N., Suite 400, Clearwater, Florida 33761.

### 4.0    TAXES

In addition to payment of the purchase price, BUYER shall be responsible for all governmental taxes, use, excise and/or other charges (except taxes on or measured by income or gross receipts of OPINICUS) that may be imposed as a result of the production, sale and delivery of the Equipment or the provision of Services.

Initials:   BUYER _____   OPINICUS _____





*Real Time*
*Simulation*
*Technologies*

**OPINICUS**
*Corporation*

# PURCHASE AGREEMENT

ECLIPSE
AVIATION

## 5.0    BUYER RESPONSIBILITIES

### 5.1    BUYER FURNISHED DATA

Subject to the terms of the Confidentiality Non-Disclosure Agreements contained in Appendix "B" hereto; BUYER shall furnish data and equipment required by OPINICUS in accordance with the BUYER Data delivery dates identified in the Program Schedule. BUYER Furnished Data not delivered in accordance with the dates identified in the Program Schedule may impact schedule and costs for which the Parties agree to enter into a Change Order pursuant to Article 16 to reflect such mutually agreeable schedule and/or cost impact.

Buyer Furnished Data for the Eclipse 500 Flight Training Device and Simulator shall include:

- Aircraft Operating Manual(s)
- Aircraft Flight Manual(s)
- Aircraft Maintenance Manuals
- Aircraft Wiring Diagrams/Schematics
- Aircraft Configuration Data
- Aircraft Performance Data
- Engine(s) Performance Data (P&W)
- Aircraft Systems Data
- Aircraft Avionics Data
- Aircraft Component Vendor Data (as specifically requested by OPINICUS)
- Required Aircraft Flight Test Data
- Wind Tunnel Data, as applicable
- BUYER's Engineering Simulator software and Data, as applicable
- Jeppesen ARINC 424 World Wide Database on CDROM
- Aircraft Avionics Software to be used for Avionics Simulation

Any additional related aircraft data or documentation required by OPINICUS in the performance of the Flight Training Device and/or Simulator build, or by the FAA to qualify the Flight Training Device and/or Simulator in accordance with this Agreement shall be requested through a formal data request submitted to BUYER. BUYER shall use its best efforts to provide OPINICUS with the data requested to meet the Program Schedule.

The data lists contained herein reflect OPINICUS' and BUYER's best estimate as to the aircraft data, and aircraft equipment that is required; further, if such data and equipment is provided as mutually agreed by the Parties, timely performance in accordance with the Program Schedule will result. The Parties understand, however, that there may arise the necessity for additional data not included as part of the lists, or the necessity for additional aircraft equipment or spares of aircraft equipment may occur, which necessity was not reasonably foreseeable by either Party as of the date of this contract. Where such necessity was not reasonably foreseeable as of the date of this contract, the Parties will negotiate a Change Order to reflect any mutually agreeable change(s) in contract schedule.

9



## 5.2 INVENTORY

OPINICUS shall be responsible for maintaining an inventory of all data furnished by BUYER under the provisions of this Article 5, and shall return all such data to BUYER in its originally delivered form and condition (except for normal usage wear) upon completion of the Simulator Program.

BUYER is responsible for all in transit loss of and damage to BUYER Furnished Data, BUYER Furnished Equipment and Software, unless caused by the negligence or willful act of OPINICUS. Upon receipt by OPINICUS, OPINICUS shall be responsible for all risk of loss or damage associated with BUYER Furnished Data, BUYER Furnished Equipment and Software in OPINICUS' possession.

## 5.3 BUYER FURNISHED EQUIPMENT AND SOFTWARE

BUYER shall be responsible for the purchase and supply of Buyer Furnished Equipment and Software. The required Buyer Furnished Equipment and Software shall be scheduled for delivery to OPINICUS' Facility in accordance with the BUYER Furnished Equipment and Software delivery date identified in the Program Schedule. BUYER Furnished Equipment and Software not delivered in accordance with the dates identified in the Program Schedule may impact schedule and costs for which the parties agree to enter into a Change order pursuant to Article 16 to reflect such mutually agreeable and justifiable schedule and/or cost impact. BUYER shall also use its best commercial efforts to provide spares of aircraft equipment and simulated instruments that from time to time as may be requested by OPINICUS. If such spares are not available to BUYER after using its best commercial efforts, OPINICUS agrees to provide a work around plan to minimize the impact on schedule.

## 5.4 WORK SPACE AVAILABILITY

BUYER shall work with OPINICUS to provide, without cost to OPINICUS, a secure workspace at the BUYER Training Facility for OPINICUS personnel to work during the installation portion of the Program through the Reliability Demonstration Period. Such space shall include a dedicated phone line, a broadband internet connection and dedicated facsimile line. OPINICUS shall comply with BUYER's reasonable security requirements for which OPINICUS has been provided written notice.

## 5.5 SIMULATOR FACILITY MAINTENANCE

BUYER is responsible for regular maintenance of the BUYER'S Training Facility, supply of electricity, supply of chilled water, and air conditioning, etc.

## 6.0 INSTALLATION AND SITE PREPARATION

## 6.1 SHIPMENT

OPINICUS shall be responsible for the proper packing, shipping arrangements, shipment, sufficiency and payment of all required insurance as provided by the Insurance provision set

Initials: BUYER _____ OPINICUS _____

Real Time
Simulation
Technologies

**OPINICUS**
Corporation

**PURCHASE AGREEMENT**


ECLIPSE
AVIATION

out in Article 20.0 hereof, and all other costs for the transportation of the Flight Training Device and/or Simulator and all Materials, components, equipment, spares, and documentation to BUYER's Training Facility.

## 6.2 SITE PREPARATION

OPINICUS shall provide information to BUYER to enable BUYER to complete site requirements necessary for installation of the Flight Training Device and/or Simulator at the BUYER Training Facility.

# 7.0 TESTING AND ACCEPTANCE

## 7.1 TEST GUIDES AND PROCEDURES

### 7.1.1 Qualification Test Guide

OPINICUS shall prepare a Qualification Test Guide (QTG) for the Flight Training Device and Simulator based upon FAA Qualification Level 6 and Level D requirements, respectively.

### 7.1.2 Systems Acceptance Test Procedure

OPINICUS shall also prepare a Systems Acceptance Test Procedure to ensure that all Flight Training Device and Simulator systems are operating correctly.

OPINICUS shall submit a Systems Acceptance Test Procedure to BUYER at the appropriate schedule event that OPINICUS certifies is in compliance with the Technical Specification contained in Appendix "A.1" or "A.2", whichever is applicable. BUYER shall have thirty (30) days from the date of receipt in which to review the Systems Acceptance Test Procedure to verify that it is in compliance with the Flight Training Device or Simulator requirements, and to provide any changes to OPINICUS that are required to ensure such compliance. OPINICUS shall review these changes, and OPINICUS and BUYER shall mutually agree upon which changes to incorporate. OPINICUS shall promptly incorporate the agreed upon changes in the Systems Acceptance Test Procedure.

## 7.2 DISCREPANCIES

BUYER shall identify any Discrepancy during the In-Plant BUYER Acceptance Testing, On Site BUYER Acceptance Testing, the FAA evaluation, and the Reliability Demonstration Period. BUYER and OPINICUS shall discuss the details of each Discrepancy to determine the resolution of the Discrepancy and shall determine its assignment to one of the following categories:

Category 1 - any Discrepancy identified by the FAA during the FAA's Simulator Qualification evaluation that is required to be corrected within sixty (60) days or any BUYER identified Discrepancy that has a substantially negative effect on BUYER's ability to conduct pilot training.

Category 2 - any FAA or BUYER identified Discrepancy that has a detrimental effect

11

Initials: BUYER _____ OPINICUS _____



**PURCHASE AGREEMENT**



*Real Time*
*Simulation*
*Technologies*

**OPINICUS**
*Corporation*

ECLIPSE
AVIATION

and degrades BUYER's ability to conduct pilot training.

**Category 3 -** any Discrepancy in the documentation to be provided under this Agreement, which has a nominal effect on the BUYER's ability to operationally support the Flight Training Device and/or Simulator.

Any Discrepancy identified by BUYER shall be so noted by the completion of an OPINICUS provided Discrepancy Report Form. This form shall be distributed to the following:

- ◆ Original for Historical Record (maintained by OPINICUS)
- ◆ Copy 1 to BUYER
- ◆ Copy 2 to OPINICUS

The contents of the Discrepancy Report Form will be entered into OPINICUS' online web based DR tracking system, Bugzilla. The status of the Discrepancies will be available to the BUYER online via OPINICUS' web page.

OPINICUS shall work diligently to correct OPINICUS' Category 1 or 2 Discrepancy identified by the FAA within the time frame specified by the FAA. Any BUYER identified Category 1 and 2 Discrepancy will be discussed at the BUYER Acceptance Testing debriefing, and based on discussions between the BUYER and OPINICUS, will be assigned a mutually agreed upon time frame for resolution.

OPINICUS shall work diligently to correct OPINICUS' Category 3 Discrepancies within a period of six (6) months of the RFT date.

### 7.2.1 Discrepancy Resolution Process

The contents of the Discrepancy Report Form will be entered into OPINICUS' online Web based DR tracking system, BUGZILLA. The BUYER will be provided a user login and password in order to have access to BUGZILLA. Upon resolution of a DR, the description of 'how the DR was resolved' will be entered into the 'comments' area for the associated BUGGZILA DR item, and the status of the DR will be changed to 'RESOLVED' and assigned back to the customer for final verification and closure.

### 7.3    IN-PLANT ACCEPTANCE TESTING

### 7.3.1   In-Plant OPINICUS Acceptance Testing

OPINICUS shall perform, in its facility, a complete inspection and testing of the Flight Training Device and/or Simulator as described in the Verification Plan to determine whether or not the Flight Training Device and/or Simulator is completed in accordance with this Agreement. Additionally, OPINICUS shall perform integrated testing based on the Systems Acceptance Test Procedure. Systems integrated testing shall include testing performed by an Eclipse 500 type rated pilot. The pilot shall be furnished by BUYER.

12

Initials:  BUYER _____  OPINICUS _____



The results of this inspection and testing shall be made available to BUYER for review prior to the commencement of In-Plant BUYER Acceptance Testing. During this inspection and testing, OPINICUS shall permit BUYER access, on a non-interference basis, for the purpose of observing OPINICUS' inspection and testing methods.

Upon OPINICUS' completion of the inspection, and testing of the Flight Training Device and/or Simulator, OPINICUS shall provide BUYER with a Certificate of Conformance that shall include the following:

    a. a statement by OPINICUS that the Flight Training Device and/or Simulator has been manufactured in accordance with the applicable requirements of this Agreement,

    b. a statement that in OPINICUS' determination the Flight Training Device and/or Simulator is ready for the In-Plant BUYER Acceptance Testing, and

    c. a report stating any known exceptions to requirements a. and b. above.

### 7.3.2   In-Plant BUYER Acceptance Testing

Upon receipt of a Certificate of Conformance from OPINICUS for the Flight Training Device and/or Simulator, BUYER shall have ten (10) hours per day, for three (3) consecutive weeks, at the OPINICUS Facility, within which to accomplish such acceptance testing as BUYER deems necessary to determine whether or not the Flight Training Device and/or Simulator is in accordance with this Agreement. This testing will include the execution of both automatic and manual FAA Qualification Test Guide tests.

During In-Plant BUYER Acceptance Testing, OPINICUS shall provide assistance to BUYER as required. BUYER shall provide OPINICUS with a debrief of the test results on a daily basis.

If BUYER so requests, OPINICUS shall be responsible for providing a separate workspace at OPINICUS' facility for BUYER's personnel to work during the In-Plant Acceptance Testing portion of the Program. This space shall be a secure area large enough for four (4) BUYER provided workstations. OPINICUS shall provide desks, chairs, wastebaskets, one (1) bookshelf, one (1) file cabinet, three (3) phone lines (phone, fax, modem), and a broad band internet connection. Only BUYER personnel shall have access to this area until the completion of the Program. BUYER shall comply with OPINICUS' reasonable security requirements for which BUYER has been provided written notice.

Within five (5) business days of completion of In-Plant BUYER Acceptance Testing, BUYER shall notify OPINICUS in writing, of its acceptance or rejection of the Flight Training Device and/or Simulator. If rejected, BUYER shall state therein the reasons for the rejection and such reasons shall specify the applicable requirements of this Agreement with which, in the opinion of BUYER, the Flight Training Device and/or Simulator does not comply. In the event of such rejection of the Flight Training Device and/or Simulator, the reasons given by BUYER shall be discussed between BUYER and OPINICUS whereupon OPINICUS shall, within the terms of this Agreement and to the satisfaction of BUYER,

Initials: BUYER OPINICUS


**PURCHASE AGREEMENT**


Real Time
Simulation
Technologies

**OPINICUS**
Corporation

ECLIPSE
AVIATION

satisfactorily correct all Discrepancies that serve as the basis for rejection of the Flight Training Device and/or Simulator by BUYER.

Upon satisfactory completion of the In-Plant BUYER Acceptance Testing, BUYER and OPINICUS shall execute a Certificate of Conformance indicating such satisfactory completion. Said Certificate shall include the identification of any open Discrepancies that are OPINICUS' responsibility and a plan and schedule for the clearance of the identified open Discrepancies. OPINICUS shall clear said Discrepancies pursuant to the Program Schedule.

## 7.4    ON SITE ACCEPTANCE TESTING

### 7.4.1    On Site OPINICUS Testing
OPINICUS shall perform, in BUYER's Training Facility, a complete inspection and testing of the Flight Training Device and/or Simulator as described in the Verification Plan to determine whether or not the Flight Training Device and/or Simulator has been completed in accordance with this Agreement.

The results of this inspection and testing shall be made available to BUYER for review prior to the commencement of On Site BUYER Acceptance Testing.

During this inspection and testing, OPINICUS shall permit BUYER access for the purpose of observing OPINICUS' inspection and testing methods.

Upon OPINICUS' completion of the inspection and testing of the Flight Training Device and/or Simulator, OPINICUS shall provide BUYER with a Certificate of Conformance that shall include the following:

    a.   a statement that the Flight Training Device and/or Simulator has been manufactured in accordance with the applicable requirements of this Agreement,

    b.   a statement that in OPINICUS' determination the Flight Training Device and/or Simulator is ready for the On Site BUYER Acceptance Testing, and

    c.   a report stating any known exceptions to requirements a. and b. above.

### 7.4.2    On Site BUYER Acceptance Testing
Upon receipt of a Certificate of Conformance from OPINICUS for the Flight Training Device and/or Simulator, BUYER shall have ten (10) hours per day, for Three (3) consecutive weeks, at the BUYER's Training Facility, within which to accomplish such acceptance testing as BUYER deems necessary to determine whether or not the Flight Training Device and/or Simulator is in accordance with this Agreement. This testing will include the execution of both automatic and manual FAA Qualification Test Guide tests.

14



**PURCHASE AGREEMENT**

*Real Time
Simulation
Technologies*

**OPINICUS**
*Corporation*




ECLIPSE
AVIATION

During On Site BUYER Acceptance Testing, OPINICUS shall provide assistance to BUYER as required. BUYER shall provide OPINICUS with a debriefing of the test results on a daily basis.

Within five (5) business days of completion of On Site BUYER Acceptance Testing, BUYER shall notify OPINICUS in writing, of its acceptance or rejection of the Flight Training Device and/or Simulator. If rejected, BUYER shall state therein the reasons for the rejection and such reasons shall specify the applicable requirements of this Agreement with which, in the opinion of BUYER, the Flight Training Device and/or Simulator does not comply. In the event of such rejection, the reasons given by BUYER shall be discussed between BUYER and OPINICUS, whereupon OPINICUS shall, within the terms of this Agreement, and to the satisfaction of BUYER correct all Discrepancies that serve as the basis for rejection of the Flight Training Device and/or Simulator by BUYER.

Upon satisfactory completion of the On Site BUYER Acceptance Testing of the Flight Training Device and/or Simulator, BUYER and OPINICUS shall execute a Certificate of Conformance indicating such satisfactory completion. Said Certificate shall include the identification of any open Discrepancies that are OPINICUS' responsibility and a plan and schedule for the clearance of the identified open Discrepancies.

## 7.5    FAA QUALIFICATION TESTING

OPINICUS shall submit the Qualification Test Guide including properly annotated simulator test results, for the Flight Training Device and/or Simulator to be qualified by the FAA, to BUYER at a minimum of 45 days prior to the FAA evaluation.

Upon approval of the Qualification Test Guide and On Site BUYER Acceptance of the Flight Training Device and/or Simulator, BUYER shall make the Flight Training Device and/or Simulator available to the FAA for evaluation and qualification.

During the FAA evaluation OPINICUS shall provide technical support to assist BUYER as required. OPINICUS shall promptly correct any Discrepancy identified by the FAA which results in the failure of the Flight Training Device and/or Simulator to be qualified by the FAA.

Upon the successful Level D qualification of the Flight Training Device and/or Simulator, BUYER and OPINICUS shall execute a Certificate of Conformance indicating such successful completion and the Flight Training Device and/or Simulator shall be deemed Ready For Training (RFT). Said Certificate shall include the identification of any open Discrepancies that are OPINICUS' responsibility and a plan and schedule for the clearance of the identified open Discrepancies. OPINICUS shall resolve said Discrepancies pursuant to the Program Schedule. BUYER shall ensure Simulator availability to OPINICUS in accordance with the Program Schedule.

15

Initials:  BUYER ___  OPINICUS ___

 **PURCHASE AGREEMENT** 

ECLIPSE
AVIATION

## 7.6 RELIABILITY DEMONSTRATION

Immediately after the Flight Training Device and/or Simulator is deemed RFT, a ninety (90) day reliability demonstration shall be performed on the Flight Training Device and/or Simulator. The purpose of this demonstration is to assure BUYER that the Flight Training Device and/or Simulator will be reliable during BUYER's scheduled training activities.

### 7.6.1 Demonstration Period

The reliability demonstration shall be performed by BUYER and monitored by OPINICUS for ninety (90) consecutive days. A daily record during the reliability demonstration period detailing the Simulator's or Flight Training Device's scheduled time (ST) and any unavailable time (UT), including the reason for any unavailable time, shall be maintained in writing by BUYER and provided to OPINICUS.

During the reliability demonstration period BUYER shall be responsible for adequately maintaining the Flight Training Device and/or Simulator.

### 7.6.2 Qualification

Any increment of time in which a failure interrupts BUYER's scheduled training activities shall be considered as unavailable time (UT). The Flight Training Device and/or Simulator availability shall be calculated using the following formula:

$$(\% \text{ availability}) = \frac{(ST-UT)}{(ST)} \times 100$$

where:
ST = Scheduled Time (hours)
UT = Unavailable Time (hours)

The reliability demonstration shall be satisfied when the Flight Training Device and/or Simulator's average percent availability, over ninety (90) consecutive days, is greater than ninety-nine percent (99%). In the event that the reliability demonstration is not successfully completed, OPINICUS shall be responsible for correction of the failure in a timely manner, and the reliability demonstration shall be promptly restarted upon correction. OPINICUS shall provide field support engineering services during a continuation of the reliability demonstration until ninety (90) consecutive days of demonstration period can be effected to calculate/obtain availability data.

## 7.7 FINAL ACCEPTANCE

Upon successful completion of the Reliability Demonstration Period for the Flight Training Device and/or Simulator, BUYER and OPINICUS shall execute a Certificate of Conformance indicating "Final Acceptance" of the Flight Training Device and/or Simulator. Said Certificate shall include a plan and schedule for the clearance of any remaining open obligations that are OPINICUS' responsibility. OPINICUS shall satisfy said obligations pursuant to a mutually agreed upon schedule. BUYER shall ensure Simulator availability in accordance with the agreed upon schedule.

Initials: BUYER _____ OPINICUS _____

 ## PURCHASE AGREEMENT



**Real Time Simulation Technologies**

**OPINICUS**
*Corporation*

**ECLIPSE**
AVIATION

# 8.0 DOCUMENTATION AND SOFTWARE

## 8.1    OPERATIONS AND MAINTENANCE DOCUMENTATION

OPINICUS shall provide operation and maintenance documentation to BUYER that contains the necessary information to enable BUYER to operate, maintain, and modify the Flight Training Device and/or Simulator and the software development system.

An initial documentation package consisting of draft or redline copies of the final documentation package shall be delivered to BUYER at Final Acceptance and shall include preliminary OPINICUS developed documentation and vendor documentation for review by BUYER.

Within 120 days after Final Acceptance, the final documentation package shall be delivered to BUYER.

## 8.2    LICENSE

8.2.1    All OPINICUS Licensed Data shall be protected in accordance with the Confidentiality Non-Disclosure Agreement attached hereto as Appendix "B". OPINICUS grants to BUYER, its subsidiaries, affiliates, contractors and agents, a non-exclusive, perpetual, non-royalty bearing, non-transferable license, without the right to sublicense except as provided herein, to use Licensed Data solely for the following purposes:

1)   Upon completion of the Flight Training Device and/or Simulator Program pursuant to this Agreement, the right to use the Licensed Data for the operation, calibration, maintenance, repair and modification of the Flight Training Device and/or Simulator for which it was developed.
2)   Upon the rightful termination for default of OPINICUS as set forth in this Agreement, the right to use the Licensed Data then available for continuing the use of the Flight Training Device and/or Simulator for which it was developed.

BUYER shall not sell, use, transfer, disclose or otherwise make available any Licensed Data to others, except as provided herein, or as required by law or governmental regulation, or as required for use by persons under contract with BUYER. Any party, as listed above, to whom such Licensed Data may be disclosed shall sign an agreement equivalent in terms to those contained in the Confidentiality Non-Disclosure Agreement attached hereto as Appendix B prior to such disclosure.

BUYER recognizes that all Licensed Data items provided by OPINICUS to BUYER, and all copies made by or for BUYER in whole or in part from such Licensed Data items, are proprietary to OPINICUS and title thereto remains in OPINICUS.  BUYER further agrees that it shall keep such Licensed Data confidential and protect such Licensed Data in the same manner as it protects its own proprietary data. BUYER may produce or reproduce up to two (2) copies and one (1) working copy of License Data for the Flight Training Device or the Simulator for which it was developed. BUYER further recognizes that documentation and

17

Initials:  BUYER _____  OPINICUS _____



**PURCHASE AGREEMENT**



ECLIPSE
AVIATION

software developed by OPINICUS under this Agreement shall be construed as Licensed Data proprietary to OPINICUS; provided, however, that documentation and software proprietary to BUYER contained or embedded therein, shall not be so construed, and shall remain the property of BUYER.

Vendor documentation and software shall be provided to BUYER by OPINICUS in accordance with the use and confidentiality terms of any vendor agreement, provided however that if said terms are more restrictive than those contained herein, OPINICUS shall endeavor to negotiate the terms to be consistent with those contained herein.

If any Simulator or Flight Training Device is sold or leased by BUYER, BUYER may sublicense, solely to the buyer lessee, or sub-lessee, the Licensed Data solely for the use, operation and maintenance of the Flight Training Device and/or Simulator. Any such sublicense shall be in writing and shall include an agreement equivalent in terms of protection to those contained in the Confidentiality Non-Disclosure Agreement attached hereto as Appendix B. Confirmation that any such sublicense contains the terms and conditions of the Confidentiality Non-Disclosure Agreement attached as Appendix B shall be forwarded to OPINICUS within ten (10) business days after the execution thereof.

8.2.2   All BUYER Licensed Data shall be protected in accordance with the Confidentiality Non-Disclosure Agreement attached hereto as Appendix "B". BUYER grants to OPINICUS, its subsidiaries, affiliates, contractors and agents, a non-exclusive, non-royalty bearing, non-transferable license, without the right to sublicense, to use Licensed Data solely for the following purposes:

1) To design, develop and manufacture flight training devices and/or simulators for the Eclipse 500 aircraft for the benefit of BUYER.
2) Upon the rightful termination for default by either Party as set forth in this Agreement, the right to use the Licensed Data shall immediately cease.

OPINICUS shall not sell, use, transfer, disclose or otherwise make available any Licensed Data to others, except as provided herein, or as required by law or governmental regulation (except as disclosed to the FAA for certification), or as required for use by persons under contract with OPINICUS. Any party, as listed above, to whom such Licensed Data may be disclosed shall sign an agreement equivalent in terms of protection to those contained in the Confidentiality Non-Disclosure Agreement attached hereto as Appendix B prior to such disclosure.

OPINICUS recognizes that all Licensed Data items provided by BUYER to OPINICUS, and all copies made by or for OPINICUS in whole or in part from such Licensed Data items, are proprietary to BUYER and title thereto remains in BUYER to include, documentation and software proprietary to BUYER which is contained or embedded in software developed by OPINICUS under this Agreement. OPINICUS further agrees that it shall keep such Licensed Data confidential and protect such Licensed Data in the same manner as it protects its own

18

Initials: BUYER _____ OPINICUS _____



**PURCHASE AGREEMENT**



proprietary data.

Vendor documentation and software shall be provided to OPINICUS by BUYER in accordance with the use and confidentiality terms of any vendor agreement, provided however that if said terms are more restrictive than those contained herein, BUYER shall endeavor to negotiate the terms to be consistent with those contained herein.

8.2.3    The provisions restricting disclosure contained in this Article and the Confidentiality Non-Disclosure Agreement attached hereto as Appendix B shall survive any termination or expiration of this Agreement and extend for a period of ten years thereafter.

## 9.0 SPARES/SUPPORT EQUIPMENT

### 9.1    SPARES

#### 9.1.1    OPINICUS' Spares Recommendations
OPINICUS shall provide to BUYER its recommendations for spares required to operate and maintain the Flight Training Device and/or Simulator which shall be in the form of a recommended spares list.  This list shall contain the following information for each recommended spare:

- vendor part description
- vendor name
- vendor part number
- vendor unit price
- estimated quantity
- level of repair (BUYER/Vendor/Expendable)

A preliminary spares list shall be provided by OPINICUS to BUYER at least thirty (30) days prior to the date established for a spares conference.  Should BUYER request similar information concerning other spares than those recommended, OPINICUS shall provide the detailed information for those additional spares.

#### 9.1.2    Spares Conference
A spares conference shall be held by teleconference or other agreed method in accordance with the date established by the Program Schedule.  The purpose of this conference shall be to determine the extent of BUYER's initial spare parts requirements.

#### 9.1.3    Spares Purchase
Within sixty (60) days of the commencement of the Installation, BUYER shall issue a purchase order or orders to OPINICUS for its selection of initial spares to be delivered with the Flight Training Device and/or Simulator or at RFT. Upon delivery of the spares, OPINICUS shall invoice BUYER for the price of the spares purchased from OPINICUS.  In no event shall the pricing on spares to BUYER exceed OPINICUS' actual cost plus 12%.

Initials:  BUYER _____  OPINICUS _____





### 9.1.4 Spares Compatibility

OPINICUS shall ensure that all spares purchased by BUYER, based on OPINICUS' recommended spares list, are compatible (form, fit, and function) with those components existing within the Flight Training Device and/or Simulator on the RFT date.

### 9.2 SUPPORT EQUIPMENT

#### 9.2.1 OPINICUS' Tool Recommendations

OPINICUS' recommendations for supplemental support equipment (special tools and test equipment) required to support the elements of the Flight Training Device and/or Simulator shall be provided to BUYER at least thirty (30) days prior to the commencement of the installation of the Flight Training Device and/or Simulator. The following information shall be provided for each recommended support equipment item:

- vendor name
- vendor model/identification
- vendor specification
- vendor price
- recommendation(s)

In no event shall the pricing on tools to BUYER exceed OPINICUS' actual cost plus 12%.

## 10.0 TRAINING

### 10.1 TRAINING BUYER'S TECHNICAL PERSONNEL

OPINICUS shall provide, at no additional cost to BUYER, an overall training program for BUYER's simulator operations, maintenance and engineering personnel as outlined in the Training Syllabus in Appendix G. This in-depth training program shall consist of both formal classroom training and on-the-job training. The training program shall provide BUYER's technical personnel with a working knowledge of the Flight Training Device and/or Simulator.

### 10.2 FORMAL CLASSROOM TRAINING

All formal classroom training shall be held at BUYER's Training Facility in accordance with mutually agreeable dates. The formal classroom training shall also include hands-on experience with the actual hardware and software components provided in the Flight Training Device and/or Simulator.

### 10.3 ON-THE-JOB TRAINING

During the installation phase of the Program, OPINICUS shall accommodate an agreed upon number of BUYER's technical personnel who are authorized by OPINICUS to work directly with, and under the supervision of, OPINICUS personnel in a cooperative environment for the purpose of transferring technical knowledge about the hardware and software

Initials: BUYER _____ OPINICUS _____



components supplied with the Flight Training Device and/or Simulator.

## 11.0 PROGRAM MANAGEMENT

OPINICUS shall provide and maintain a dedicated management team (Key Personnel) throughout the Program that is capable of performing in accordance with this Agreement. The OPINICUS Simulator Program management team shall consist of individuals from the program office and OPINICUS' corporate management. Such Key Personnel shall be named by OPINICUS in Appendix H, Eclipse 500 Staffing Plan and, OPINICUS agrees that with respect to this Program, it will only reassign such Key Personnel upon approval of Buyer, not to be unreasonably withheld, and that personnel of equivalent capability are assigned.

### 11.1 PROGRAM OFFICE

The program office shall have the primary responsibility of the Flight Training Device and/or Simulator Program. The program office shall consist of the program manager, program quality assurance staff, project engineer, and the logistics team.

#### 11.1.1 Program Manager

The program manager shall be the focal point for all technical and administrative activities. The program manager shall be responsible to both OPINICUS' corporate management and BUYER for the successful completion of the Program.

The program manager shall be specifically responsible for:

- The oversight of the overall Program.
- Serving as the primary point of contact for BUYER for the Program.
- Development of the various tasks, schedules, and assignments for the Program.
- Coordinating, monitoring, and expediting activities for the Program.
- Developing and producing the progress/status reports.
- The various BUYER/OPINICUS Program coordination meetings.

#### 11.1.2 Program Quality Assurance

A program quality assurance staff shall be responsible for ensuring that all formal inspection and testing activities conducted by OPINICUS are accomplished.

#### 11.1.3 Project Engineer

The project engineer shall be responsible for the technical accuracy and content of the various engineering tasks.

#### 11.1.4 Logistics Team

The logistics team shall be responsible for purchasing and material management, the deliverable documentation, technical training, and technical support issues for the Program.

### 11.2 PROJECT DEVELOPMENT TRACKING

The Program shall be accomplished under the direction of the program office and the assigned project engineer.

Initials: BUYER ____ OPINICUS ____



### 11.2.1 Program Coordination Meetings

Formal coordination meetings between BUYER and OPINICUS shall be held by the Program Manager to ensure that progress and general technical developments are being properly communicated. Meetings shall be held by teleconference or at a mutually agreeable location.

### 11.2.2 Progress/Status Reports

Program progress/status reports shall be provided by OPINICUS to BUYER on a monthly basis.

## 12.0    WARRANTIES

OPINICUS warrants that the hardware and software delivered under this Agreement shall be free from defects in material and workmanship for a period of two (2) years from the date of Final Acceptance.

OPINICUS maintains an internal computerized database for tracking and providing individual warranty claim status information. As part of its warranty claim service, OPINICUS shall, as the sole and exclusive remedy under this warranty, and at no additional cost to BUYER: (i) as to hardware, promptly repair any defective part or replace the same with a similar part free from defect, and (ii) as to software, OPINICUS shall provide to BUYER, at no additional cost, the necessary software corrections (software coding) to BUYER for its implementation and checkout. OPINICUS shall pay transportation costs for shipment to BUYER's Training Facility and return shipment to OPINICUS' named destination. BUYER agrees to properly package and timely return defective parts to OPINICUS, if so requested by OPINICUS.

Under this repair or replacement program (and corrections as to software) OPINICUS agrees to provide warranty claim submission procedures and forms (see a sample Warranty Claim Form in Appendix F), tracking of submitted warranty claims, and timely status of all outstanding warranty claims. BUYER agrees to identify and follow these procedures and identify any defects in writing by forwarding a properly completed hardware (or software) Warranty Claim Form along with the defective part to OPINICUS.

OPINICUS agrees to use reasonable efforts to ensure the shortest possible turn around time for parts submitted for repair or replacement under this warranty and shall also promptly notify BUYER of the estimated shipping date.

OPINICUS shall supply a written report of the repair accomplished by OPINICUS, or any of OPINICUS' vendors, for each part submitted for repair under this warranty.

The period of this warranty in respect to the replaced or repaired part shall be the remaining warranty period, or ninety (90) days from the date of receipt by BUYER, whichever is longer.

Initials:   BUYER _____   OPINICUS _____



OPINICUS shall provide to BUYER all transferable warranties upon transfer of title as set forth below. To the extent any such vendor warranty does not have a term of at least two (2) years from the date of transfer of title as described below, the OPINICUS warranty provided above shall be in effect.

OPINICUS makes no warranties for consumable items such as paper, toner, fuses, filters, bulbs, visual tubes, etc.

THE HARDWARE AND SOFTWARE WARRANTIES DESCRIBED HEREIN AND THE WARRANTY OF TITLE CONTAINED HEREIN, ARE THE SOLE AND EXCLUSIVE WARRANTIES GIVEN AND ARE IN LIEU OF ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF FITNESS FOR USE AND MERCHANTABILITY. THE REMEDY TO REPAIR OR REPLACE (OR CORRECTION FOR SOFTWARE) IS THE SOLE AND EXCLUSIVE WARRANTY REMEDY UNDER THIS AGREEMENT.

## 13.0 PATENT, TRADEMARK, COPYRIGHT AND TRADE SECRET INDEMNITY

### 13.1 HOLD HARMLESS

Each Party agrees to defend, protect, indemnify and hold the other harmless from and against any and all liabilities, costs, expenses, losses and damages, including reasonable attorneys' fees and expenses and the costs of settlement, arising out of or relating to any alleged or actual claims made by any third party that the Equipment, BUYER Furnished Equipment, software, technical information, know-how, documentation, and spares supplied hereunder infringe the rights of such third party in respect to patents, trademarks, copyrights, trade secrets and/or design.

### 13.2 REMEDY FOR INFRINGEMENT

The infringing party agrees that it will pay all sums which, by final judgment or decree in any such suits, may be assessed against the non-infringing party on account of such infringement, provided that the infringing party shall be given (i) immediate written notice of all claims of any such infringement and of any suits brought or threatened against the non-infringing party and (ii) authority to assume the sole defense thereof through its own counsel and to compromise or settle any suits so far as this may be done without prejudice of the right of the non-infringing party to continue the use, as contemplated, of the Equipment or BUYER Furnished Equipment, If in any such suit so defended the Equipment, BUYER Furnished Equipment, software, documentation or spares are held to constitute an infringement and its use is enjoined, or if in the light of any claim of infringement the infringing party deems it advisable to do so, the infringing party may either procure the right to continue the use of the same for the non-infringing party, or replace the same with non-infringing Equipment, or BUYER furnished equipment, or modify said Equipment, or BUYER Furnished Equipment, so as to be non-infringing but still compliant with the Technical Specification (Appendix A.1



or Appendix A.2). Where the infringing party agrees to indemnify non-infringing party pursuant to this Section 13, the infringing party will assume the defense of any action or their relating thereto, by reputable counsel retained at the infringing party's expense. The non-infringing party will give the infringing party the cooperation reasonably required, at the infringing party expense for out-of-pocket expenses incurred by the non-infringing party and paid to third parties (except for salaries of the non-infringing party's employees), in connection with any such action or suit. Notwithstanding the foregoing, the non-infringing party may participate in any such action or suit at its own expense and by its own counsel.

## 13.3 EXCUSIONS TO INDEMNITY

The infringing party does not have any indemnity liability to the non-infringing party with respect to a particular infringement or allegation thereof if:

(a)     non-infringing party enters into any compromise or settlement in respect of any such action or proceeding without the infringing party' prior written consent; or the non-infringing party attempts to conduct its own defense to any such action or proceeding without properly notifying the infringing party under notification procedures set out in this Agreement; and/or

(b)     Where otherwise non-infringing Equipment, BUYER Furnished Equipment, technical information, and documentation of the infringing party are rendered infringing due to alterations, adaptation or modification of the Equipment, or BUYER Furnished Equipment, provided by the non-infringing party and/or

(c)     For any of the foregoing exclusions (a through c), the infringing party will promptly advise the non-infringing party of any infringing conditions, of which it is already aware or becomes knowledgeable, during the term of this Agreement.

### 13.4  SOFTWARE WARRANTY

Each party warrants to the other that all software supplied hereunder is free of copyright infringement.

### 13.5  SURVIVAL

The provisions of this Article 13 shall survive the expiration or termination of this Agreement and shall continue in full force and effect notwithstanding such expiration or termination.

## 14.0    SUPPORT SERVICES

OPINICUS shall provide an extensive support services program, as further described in this Article 14, to assist BUYER in achieving maximum availability, timely incorporation of modifications, and satisfactory operational support for the Flight Training Device and/or Simulator.

## 14.1    TECHNICAL SUPPORT

Initials:  BUYER ___  OPINICUS ___



*Real Time*
*Simulation*
*Technologies*
**OPINICUS**
*Corporation*

**PURCHASE AGREEMENT**



**ECLIPSE**
AVIATION

### 14.1.1 Technical Support (On Site)

At no additional cost to the BUYER, OPINICUS shall provide the services of one (1) technical support engineer, at BUYER's Training Center, for three (3) months. OPINICUS shall provide such services to BUYER during the first three (3) months after the Flight Training Device and/or Simulator is deemed Ready for Training. At the expiration of the two (2) year overall warranty period, at BUYER's sole discretion and at no additional cost, OPINICUS will provide BUYER the services of one (1) technical support engineer at BUYER's Training Center, for an additional period of ten (10) business days. The technical support engineer shall assist BUYER's technical personnel in resolving problems associated with the operation, maintenance, repair, and support of the Flight Training Device and/or Simulator. As provided above, such technical support engineer shall be provided at no additional cost to BUYER during any extension of the reliability demonstration.

### 14.1.2 Technical Support (Emergency)

At no additional cost to the BUYER, OPINICUS shall provide BUYER with twenty-four (24) hours per day, seven (7) days a week, emergency technical support through OPINICUS' Technical Support Hot Line, throughout the warranty period.

OPINICUS shall also provide BUYER with the names and method of contacting OPINICUS' management personnel in the event that technical support is required by BUYER.

OPINICUS shall use best commercial efforts to comply with BUYER's requests for emergency technical support in a timely manner during the warranty period. Under normal circumstances, an OPINICUS customer support staff member will respond to an Emergency Hot Line call within 30 minutes

### 14.1.3 Technical Support (Normal)

At no additional cost to the BUYER, OPINICUS shall provide BUYER with technical support during OPINICUS' normal business hours through OPINICUS' Technical Support Group, throughout the warranty period. This technical support shall consist of a technical consulting service to assist BUYER in resolving problems associated with the operation, maintenance, repair, and support of the Flight Training Device and/or Simulator. OPINICUS' Technical Support Group shall be responsible to document each BUYER request and provide BUYER with appropriate written responses for implementation by BUYER's technical personnel.

. OPINICUS shall provide BUYER with the names and methods of contacting OPINICUS' Technical Support Group personnel.

OPINICUS shall use best commercial efforts to comply with BUYER's requests for technical support in a timely manner.

### 14.2 PRODUCT SUPPORT

Initials:  BUYER _____  OPINICUS _____

 **PURCHASE AGREEMENT** 

*Real Time Simulation Technologies*

ECLIPSE
AVIATION

### 14.2.1 Product Bulletins

Upon receiving relevant product information either from vendors or OPINICUS' own technical personnel, OPINICUS shall advise BUYER, at no additional cost, of its effects upon the applicable equipment by issuing product bulletins. For Equipment that is within the Warranty period, OPINICUS shall use best commercial efforts to timely effect such changes and at no additional cost to BUYER.

### 14.2.2 Product Enhancements

OPINICUS shall provide to BUYER, at no additional cost, all error corrections, updates, fixes, patches and point releases to any OPINICUS generated software utility, driver, or tools that are directly applicable to BUYER's Simulator. In addition to the supplied software error corrections and updates, OPINICUS shall provide documentation to BUYER, to facilitate BUYER's implementation of such error corrections, updates fixes, patches and point releases.

### 15.0 TITLE AND RISK OF LOSS

Title to the Flight Training Devices and Simulators shall pass to BUYER upon Final Acceptance and payment by BUYER of all payments due to OPINICUS under this Agreement. OPINICUS warrants all title to equipment purchased by BUYER under this Agreement.

Risk of loss for the Flight Training Devices and Simulators while at OPINICUS' facility or in transport to BUYER's facility shall be with OPINICUS. OPINICUS shall maintain in full force and effect insurance as outlined in the Insurance provision, Section 20.0.

Risk of Loss for the Flight Training Devices and Simulators shall pass to BUYER upon delivery to BUYER's facility. BUYER shall maintain in full force and effect sufficient insurance coverage to preserve and protect the unpaid balance of the schedule of payments, as described in Addendum A.1 and A.2 (whichever is appropriate given the Equipment under discussion), and due to OPINICUS.

### 16.0 CHANGES

This Agreement may be amended from time to time by the means of a Change Order. Each change order shall be in writing and shall set forth the particular changes to be made and the effect, if any, of such changes on the Purchase Price, Program Schedule, Technical Specification, or any other relevant matter under this Agreement.

A Change Order shall not be binding on either Party until executed in writing by either the President or Sr. Vice President of OPINICUS and an Officer or Director, Contracts of BUYER. Neither OPINICUS nor BUYER will unreasonably refuse, or delay, the execution of a change order.

All changes made to the Technical Specification shall be accomplished using a formal revision process and, as memorialized by a properly executed Change Order.

26

Initials: BUYER _____ OPINICUS _____




*Real Time
Simulation
Technologies*

**OPINICUS**
*Corporation*

**PURCHASE AGREEMENT**



ECLIPSE
AVIATION

# 17.0    DELAYS

### 17.1 FORCE MAJEURE
Neither Party to this Agreement shall be liable for failure to perform any obligation due to causes beyond its reasonable control. Such excusable (force majeure) causes include, but are not limited to, such things as fire, flood, earthquake or other natural disaster, war, embargo, riot, acts of government in its sovereign capacity, walkouts, and shortages of available power or other public utility services.

### 17.2 EXTENSION DUE TO FORCE MAJEURE
In the event that either Party is prevented by force majeure, as specified above, from fulfilling any requirement established by this Agreement, where it is obligated to fulfill by a specific date, then the time fixed for fulfilling such obligation and all subsequent obligations shall be extended by a period equal to the time lost by reason of such delay, provided that such excusable delay has been mutually agreed upon by both BUYER and OPINICUS.

### 17.3 RECOVERY PLAN FOR DELAY DUE TO FORCE MAJEURE
In the event that either Party furnishes or is required to furnish a notice of delay due to force majeure, as specified above, OPINICUS shall promptly provide to BUYER possible workaround plans to minimize the delay and to minimize costs associated with recovering from such delay. Such OPINICUS provided plans may include the assignment of additional personnel, increase in required hours of work, acceleration of effort on parallel tasks, and other planned efforts that are designed to overcome the effects of the delay. If BUYER agrees to the work-around plan it shall be documented and approved by a Change Order.

### 17.4 UNEXCUSED DELAYS
Unexcused delay by either Party in materially accomplishing a delivery or milestone date identified in the Program Schedule may be resolved in accordance with the Disputes clause Article 21) unless a material breach of this Agreement occurs, in which event the non-breaching party may terminate this Agreement for fault in accordance with Article 18.1 Termination for Fault. Where a Termination for Fault does not occur as provided in Article 18.1, unexcused delays shall be resolved in accordance with the Disputes clause and, if appropriate, by Change Order

### 17.5 RECOVERY PLAN FOR DELAY DUE TO FAULT
In the event that either Party anticipates that it will be or actually is delayed for fulfilling a Program Milestone for any reason other than a force majeure event, as described above, and that such unexcused delay will prevent OPINICUS from fulfilling any Critical Milestone as identified on the Program Schedule on or before the date established by this Agreement, OPINICUS shall promptly provide to BUYER possible recovery plans to minimize the delay.

Initials:  BUYER _____   OPINICUS _____

**PURCHASE AGREEMENT**

*Real Time*
*Simulation*
*Technologies*

**OPINICUS**
*Corporation*


ECLIPSE
AVIATION

Such OPINICUS provided plans may include the assignment of additional personnel, increase in required hours of work, acceleration of effort on parallel tasks, and other planned efforts that are designed to overcome the effect of the delay. The cost for such recovery efforts in the event of delay for any reason other than force majeure shall solely be the responsibility of the Party causing the delay.

## 18.0 TERMINATION

### 18.1 TERMINATION FOR FAULT
Either Party may terminate this Agreement for fault by notice to the other Party upon the occurrence of any of the following events:

### 18.1.1
A Party is in material breach of this Agreement or the Confidentiality Non-Disclosure Agreement and, in the case of a material breach which is capable of remedy, fails to diligently remedy such breach within thirty (30) days of written notification of the material breach asserted; or

### 18.1.2
A Party shall generally not pay its debts as such debts become due, shall be unable to pay its debts, shall make a general assignment for the benefit of its creditors, or shall institute any proceeding seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, reorganization, protection, or relief from its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of any order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property and which affects that Party's performance of this Agreement; or

### 18.1.3
Any proceeding is instituted seeking to adjudicate a Party as bankrupt or insolvent, or seeking liquidation, reorganization, protection, or relief from its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of any order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property; which is not opposed, and which affects that party's performance of this Agreements; or

### 18.1.4
A Party assigns, or attempts to assign, any or all of its rights or obligations under this Agreement to a third party without the other Party's prior approval, which approval will not be unreasonably withheld.

### 18.2 TERMINATION FOR CONVENIENCE
BUYER may terminate this Agreement at any time on ninety (90) days written notice for any reason or for its convenience upon giving notice of termination to OPINICUS. OPINICUS shall immediately cease to incur expenses pursuant to this Agreement, unless otherwise

Initials: BUYER _____ OPINICUS _____



directed in the termination notice.

OPINICUS shall take all reasonable steps to mitigate the cost to BUYER for terminating this Agreement and BUYER shall pay OPINICUS' actual direct acquisition cost for materials that a) are unique to BUYER's Equipment, b) have been procured by OPINICUS in a commercially reasonable manner, and c) will be scrapped as a result of BUYER's Termination for Convenience provided OPINICUS has used all commercially reasonable efforts to limit such costs.

## 18.3 EFFECTS OF TERMINATION

### 18.3.1 Ceasing of Expenses
OPINICUS shall immediately cease to incur expenses pursuant to this Agreement unless otherwise directed under any termination notice. OPINICUS shall take all reasonable steps to mitigate the impact of terminating this Agreement and shall immediately notify BUYER of the inventory on hand and the inventory on order specific to the Agreement so as to advise BUYER of the amount proposed to be paid with respect to work in process and provide supporting documentation for all such amounts.

### 18.3.1 Return of Property
OPINICUS shall return to BUYER all property and proprietary materials of BUYER, all tangible embodiments of intellectual property of BUYER in its possession and all other property of BUYER, and vice versa. Such property may include, but is not limited to, BUYER Furnished Equipment and Software, industrial designs, drawings, prints, technical literature, operating instructions, etc. For property owned by BUYER (which may have been loaned or consigned to OPINICUS), BUYER may, upon prior written notice to OPINICUS (such written notice may include emails, facsimile and letters), at their own cost and at such time or times designated by it, enter the facilities of OPINICUS for the purpose of securing, inventory, packaging, and removing BUYER's property without the need of any court action, intervention or order; provided, however, that BUYER agrees to be accompanied by OPINICUS' personnel.

### 18.3.3 Reimbursement
Under a Termination for Breach (by BUYER) or a Termination for Convenience (by BUYER), OPINICUS shall be entitled to reimbursement for all actual (direct and verifiable) costs which shall be properly allocable under generally accepted accounting principles (GAAP) to the performance of this Agreement and its cancellation. In the event of a BUYER initiated Termination for Convenience, Seller shall also be entitled to recover a profit mark-up that shall not exceed fifteen (15) percent of the said actual costs (as defined in this passage). Within thirty (30) calendar days of a notice of termination, OPINICUS shall submit to BUYER an accounting, in writing, stating the value of the Equipment delivered; the value of the Equipment or other work in process of design and/or production, test, calibration, and delivery but not yet delivered, having due regard to the state thereof; the value of such part or

Initials: BUYER _____ OPINICUS _____

 **PURCHASE AGREEMENT** 

*Real Time Simulation Technologies*

**OPINICUS** *Corporation*

ECLIPSE AVIATION

the installation and commissioning work as may have been completed; and the amount of any other monies properly payable to OPINICUS by BUYER.

## 19.0    INDEMNITY PROVISIONS

OPINICUS shall indemnify and hold harmless BUYER from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising from In-Plant or On Site injuries or On Site loss, as described herein, resulting from acts of its employees or subcontractors performing the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily or personal injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting thereof, and (2) is not attributable, in whole or in part, to negligent or intentional acts or omissions of BUYER, its officers, agents, successors, assigns or employees. Further, until On Site BUYER acceptance of the Simulator or Flight Training Device by BUYER, OPINICUS agrees to defend, protect, indemnify and hold BUYER harmless from and against any and all liabilities, costs, expenses, losses and damages, including reasonable attorneys' fees and expenses and the costs of settlement, as a result of personal injury or property damage to a third party caused by the Simulator or Flight Training Device and not attributable in whole or in part, to negligent or intentional acts or omissions of BUYER, its officers, agents, successors, assigns or employees.

## 20.0    INSURANCE PROVISIONS

OPINICUS agrees to maintain in full force and effect, throughout the term of the Agreement, the following insurance coverage's:

- Statutory Workers' Compensation and Occupational Disease Insurance in compliance with the laws of the State of Florida. Such coverage shall include Employers Liability up to a limit of at least Five Hundred Thousand Dollars ($500,000).
- Commercial General Liability insurance policy limits no less than Five Million Dollars ($5,000,000).
- Errors and Omissions insurance with policy limits no less than One Million Dollars ($1,000,000).
- Insurance shall include endorsements for personal injury, completed operations, product liability and contractual liability.
- Commercial General Liability shall provide coverage for events, which occur during the policy period, is continuing in nature and not on a claims made basis, and shall include endorsements that:
    (a) BUYER is named as an additional insured on such insurance.
    (b) Said insurance is primary with respect to the matters within such coverage, irrespective of any insurance carried by BUYER.
    (c) Provide that, as respects the interests of BUYER, this insurance shall not be invalidated by any breach of the insurance policy by OPINICUS.
    (d) Provide a severability of interest/cross liability endorsement
    (e) Provide that the insurer shall waive its subrogation rights against BUYER
    (f) Underwriters acknowledge that the indemnification provisions of this Agreement are insured under OPINICUS' blanket contractual liability coverage.

Initials:  BUYER *[signature]*  OPINICUS *[signature]*



- Business Auto Insurance policy with limits no less than One Million Dollars ($1,000,000) combined single limit per occurrence. This insurance shall cover owned, non-owned, and hired vehicles.
- While OPINICUS has Risk of Loss, OPINICUS will provide SPECIAL FORM Insurance for business personal property to preserve and protect the FFS and FTD. Such insurance will raise equal to the value of equipment and materials up to a maximum of Five Million Dollars ($5,000,000 USD)
- OPINICUS will provide Special Form insurance with limit coverage of Five Million Dollars ($5,000,000 USD) while in transit.

Within Sixty (60) days after the full execution by both Parties of this Agreement, Certificates of Insurance shall be delivered to BUYER. The Certificates of Insurance shall be of a type that unconditionally obligates the insurer to notify BUYER in writing at least thirty (30) days in advance of effective date in the event of any material change in or cancellation of such insurance.

## 21.0 DISPUTES

If any dispute or claim arises out of or relates to this Agreement, the Parties agree to the following procedure as the manner to resolve any such Dispute, except for any actual or threatened misappropriation or infringement of a Party's intellectual property rights:

The Parties shall initially attempt to resolve the Dispute by direct negotiation between a Director level or higher employee of the respective Parties and, in an amicable manner for a period of at least thirty (30) calendar days, or such longer period as the Parties may mutually agree in writing.

If the Parties fail to resolve the dispute by direct negotiation within the time period allotted, the Dispute may be submitted to a three person panel of the American Arbitration Association ("AAA") with the arbitration to be held in Albuquerque, New Mexico for resolution in accordance with the procedural rules of that organization. The arbiters shall be selected from the list of approved arbiters of the AAA, wherein each Party shall select one arbiter from the approved list and the two selected arbiters shall then select the third arbiter, also from the approved list. To be qualified for selection, all arbiters must be either an attorney or retired judge.

The decision of the arbitrators shall be final and binding on the Parties and may be confirmed by a judgment entered in any court having jurisdiction over the subject matter thereof. The arbitrators shall award reasonable attorney's fees and costs to the prevailing Party. The arbitrators shall have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve the Dispute, including ordering the non-prevailing Party to pay the arbitrator's costs in full. Absent such an order, the fees and costs of the arbitrators shall be borne equally by the Parties.

Initials: BUYER _____ OPINICUS _____

 

*Real Time*
*Simulation*
*Technologies*

**OPINICUS**
*Corporation*

ECLIPSE
AVIATION

Pending final resolution of any Dispute, OPINICUS shall proceed with performance of this Agreement according to BUYER's instructions so long as BUYER continues to pay amounts not in Dispute. Nothing in this Article 21 shall prevent or limit a Party's right to obtain immediate injunctive relief in any court of competent jurisdiction to stop or prevent the misappropriation or infringement of a Party's intellectual property rights.

## 22.0     GENERAL PROVISIONS

### 22.1   ENTIRE AGREEMENT
THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT CONSTITUTE THE ENTIRE AGREEMENT BETWEEN BUYER AND OPINICUS WITH RESPECT TO THE SUBJECT MATTER HEREOF AND SUPERSEDE ALL PRIOR REPRESENTATIONS, NEGOTIATIONS, LETTERS, ACCEPTANCES, AGREEMENTS, AND UNDERSTANDINGS BETWEEN BUYER AND OPINICUS WITH RESPECT TO OR IN CONNECTION WITH ANY MATTERS OR THINGS TO WHICH THIS AGREEMENT APPLIES OR REFERS.

### 22.2   AMENDMENTS
This Agreement may not be modified except by mutual written agreement signed by authorized representatives of both Parties.

### 22.3   ASSIGNMENT
This Agreement shall inure to the benefit of, and be binding upon, each Party hereto and their respective successors and assigns. Nevertheless, it may not be assumed or assigned in whole or in part by contract or operation of law by either Party without the prior written consent of the other, with such consent shall not be unreasonably withheld or delayed.

### 22.4   DISCLOSURE
Neither Party shall without the other Party's written consent disclose, advertise or publish the financial terms and conditions contained within this Agreement, except as required by law.

### 22.5   WAIVER
No provision of this Agreement may be waived except by an instrument in writing signed by the affected Party. The failure of either Party to insist, in any one or more instances, upon the performance of any of the terms or conditions of this Agreement or to exercise any right under this Agreement, shall not be construed as a waiver or relinquishment of the future performance of any such term or condition or the future exercise of such right, and the obligation of either Party with respect to such future performance shall continue in full force and effect.

### 22.6   CONSEQUENTIAL DAMAGES
IN NO EVENT SHALL OPINICUS BE LIABLE FOR ANY INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES WHETHER DUE TO LOSS OF REVENUE OR OTHERWISE

Initials:  BUYER ___  OPINICUS ___




### 22.7 MUTUAL ASSURANCES

OPINICUS and BUYER acknowledge and agree that they have entered into this Agreement in good faith, and that during the performance of this Agreement they shall continue to act in good faith and cooperate with each other to achieve the successful completion of this Agreement.

### 22.8 LOCAL LAWS AND ORDINANCES

OPINICUS does not represent or warrant that the Program complies with any local laws or ordinances and BUYER shall assume complete responsibility for compliance with local laws and ordinances and obtain all local permits, licenses, authorizations or certificates required by any local regulatory body for the installation or use of the Flight Training Device and/or Simulator, for the avoidance of doubt, except for FAA Level 6 and/or FAA Level D Qualifications. OPINICUS will comply with safety requirements provided BUYER presents a written statement of such BUYER specific requirements to OPINICUS within 30 business days of the execution date of this Agreement.

### 22.9 SEVERABILITY

In the event that any provision of this Agreement is held by any court of competent jurisdiction to be unenforceable, the remainder of the Agreement shall continue in full force and effect as if the unenforceable provision were not contained herein.

### 22.10 NOTICES

All notices and consents required or authorized under this Agreement shall be given in writing by either personal delivery to an officer of the Party to whom the same is given, by registered mail (return receipt requested), by courier service (receipt acknowledgment required), or by facsimile (receipt acknowledgment required), [here within referred to as "Notice(s)"]. The date upon which any such Notice is received shall be deemed to be two (2) business days after the effective date from which the sending Party conveyed such Notice. If a Notice is personally delivered, the effective date and delivery date shall be deemed the same.

BUYER Notices shall be addressed to:

> Eclipse Aviation Corporation
> 2503 Clark Carr Loop SE
> Albuquerque, NM 87106
> Attn: Ed Lundeen, Director-Contracts
> Fax: 505-241-8943
> Email: edward.lundeen@eclipseaviation.com

OPINICUS Notices shall be addressed to:

> OPINICUS Corporation

33



28870 U.S. Hwy. 19 N.; Suite 400
Clearwater, Florida 33761
Attn: Ms. Jennifer Frame, Sr. Vice President
Fax No: (727) 799-4645
Email: jennifer@opinicus.com

## 22.11 APPLICABLE LAW AND VENUE

This Agreement and its validity, construction and performance will be governed by and construed in accordance with the laws of the State of New Mexico without regard for its conflict of laws principles. The state and federal courts residing in Bernalillo County, New Mexico shall have jurisdiction over this Agreement.

## 22.12 EMPLOYMENT/WORK RESTRICTIONS

During the term of this Agreement, and extending to one (1) year after Final Acceptance of the Flight Training Device and/or Simulator, neither BUYER nor OPINICUS shall recruit, whether by direct (employee status) or by indirect (contractor status) means, to the other Party's current employees without the prior written consent of the other Party.

## 22.13 CONFLICT OF INTEREST

OPINICUS and BUYER will prohibit their employees from using their official positions for personal financial gain, or from accepting any personal advantage from anyone under any circumstances which might reasonably be interpreted as an attempt to influence the recipients in the conduct of their official duties. Neither OPINICUS nor BUYER, nor their employees will, under any circumstances which might reasonably be interpreted as an attempt to influence the recipients in the conduct of their duties, extend any gratuities or special favors to employees of the other Party.

## 22.14 PROHIBITION OF USE OF TRADENAME AND TRADEMARK

OPINICUS covenants and agrees with BUYER, its parent and affiliates that it will not make any use whatsoever of, or cause or allow others to make or assist others in making any use whatsoever of, the corporate or trade name of BUYER, or any of their affiliates, or any portion thereof, or any of their respective trademarks, insignia, logos, or other markings, or any portion thereof, including, but not limited to, any use in connection with any advertising, promotion, publicity, customer list, or other printed material, without the prior written consent of the BUYER. BUYER may not use OPINICUS' name or logo except in the manner specifically authorized in writing pursuant to this Agreement.

## 22.15 AUDIT

OPINICUS will maintain detailed records of all costs and charges that relate in any way to the costs billed to BUYER. During the term of the Agreement and for a minimum period of 18 months after its expiration, cancellation or termination, BUYER shall have the right to audit the records pertaining to the costs of the work being performed for BUYER during OPINICUS' regular business hours. No more than one audit in any calendar year shall be permitted. If any audit reveals that OPINICUS' charges to BUYER are in excess of the costs

Initials: BUYER _____ OPINICUS _____

*Real Time*
*Simulation*
*Technologies*

**PURCHASE AGREEMENT**





ECLIPSE
AVIATION

and overheads OPINICUS is entitled to receive under the Agreement, such costs and excessive charges, will be deducted from amounts due OPINICUS under the Agreement, or will be refunded by OPINICUS to BUYER, regardless of whether BUYER may have previously paid such costs or excessive charges.

## 22.16 LIMITED AGENCY, UNITED SERVICES

As limited by the language in this Article 22.15, BUYER is naming United Air Lines dba United Services as a limited agent of BUYER strictly for the purposes of: reviewing and approving Technical Specifications, Systems Acceptance Test Procedures and Qualification Test Guide(s); preparing and submitting Discrepancy Reports; performing and accepting (or rejecting) In-Plant BUYER Acceptance/Testing, On Site BUYER Acceptance/Testing and, Final Acceptance; and, Certificates of Conformance for the any/all of the aforementioned.

## 22.17 RELATIONSHIP OF PARTIES AND PUBLIC ANNOUNCEMENTS

The relationship between BUYER and OPINICUS is that of buyer and seller, and this Agreement will not be construed as a partnership, joint venture or agency relationship between the Parties hereto. Except as otherwise provided by this Agreement, neither Party will have any right or authority to assume or create any responsibility, express or implied, on behalf of the other in any manner whatsoever.

Neither Party will make any public announcements or disclose any provisions of this Agreement, without first obtaining the written approval of the other Party, as to the contents, timing and manner of such public announcements and such approval will not be unreasonably delayed or withheld.

## 22.18 HEADINGS

Headings in this Agreement are for guidance only and are not to affect its construction.

Initials:  BUYER _____ OPINICUS _____



**PURCHASE AGREEMENT**



ECLIPSE
AVIATION

IN WITNESS WHEREOF, the Parties have executed this Agreement on the first date written below, agree this document is the final expression of their agreement, and is the complete and exclusive statement of the terms and conditions; as indicated by the signatures of their respective duly authorized and empowered representatives below.

For and on behalf of
**Eclipse Aviation Corporation**

By: _____
Mr. Peter Reed
Senior Vice President

Date: __4/6/05__

By: _____
Mr. Edward M. Lundeen
Director, Contracts

Date: __4-6-05__

For and on behalf of
**OPINICUS Corporation**

By: _____
Mr. James R. Takats
President

Date: __April 6, 2005__

By: _____
Ms. Jennifer Frame
Senior Vice President

Date: __4-6-2005__

36

Initials: BUYER ___ OPINICUS ___