**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*, | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Ref Docket Nos.: 18 & 229** |

**ORDER (A) AUTHORIZING THE DEBTORS TO SELL SUBSTANTIALLY
ALL OF THEIR ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
AND (C) GRANTING RELATED RELIEF**

Upon the motion, dated November 25, 2008 (the "Sale Motion"), of the above-captioned

debtors and debtors in possession (the "Debtors" or "Sellers") for the entry of an order pursuant

to sections 105, 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as

amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (as amended, the "Bankruptcy Rules") authorizing the Debtors to, *inter*

*alia,* (i) enter into that certain Asset Purchase Agreement, dated as of November 25, 2008,

between EclipseJet Aviation International, Inc. ("Buyer"), and the Debtors (the "Agreement"),

(ii) sell substantially all of their assets free and clear of all Encumbrances (as defined below),

with such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume

and sell and assign certain executory contracts and unexpired leases to the Buyer; and (iv)

granting related relief; and

Upon the record of the hearing before this Court on December 15, 2008, at which the

Court denied the request for a Break-Up Fee (as defined in the Agreement) and Expense

Reimbursement (as defined in the Agreement) for the Buyer, required certain assets under the

Agreement not to be sold, required either that the proposed date of the hearing to consider the

proposed sale be delayed or that bids for the proposed sale be considered in lots, and required certain other modifications of the proposed bid procedures; and

Upon the record of the hearing before this Court on December 22, 2008, at which the Court required certain other modifications to the proposed bid procedures; and

The Buyer having entered into (i) that certain Amended and Restated Asset Purchase Agreement, initially dated as of November 25, 2008 and amended and restated on December 22, 2008 and further amended by Amendment No. 1, dated January 15, 2009, between Buyer and the Debtors (the "Principal APA"), (ii) that certain Asset Purchase Agreement, dated as of December 22, 2008 between Buyer and the Debtors (the "Cirrus APA") and (iii) that certain Asset Purchase Agreement, dated as of December 22, 2008 between Buyer and the Debtors (the "WIP APA"); and

After consideration of the objections filed to the proposed bid procedures and upon the rulings at the hearings on December 15, 2008 and December 22, 2008 and the modifications in response thereto, this Court having entered an order dated December 23, 2008 (the "Procedures Order" and attached as Exhibit 1 thereto, the "Bid Procedures") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher and better offers for each of (x) the Purchased Assets (as defined in the Principal APA), (y) the Disputed Work-In-Progress and (z) the Cirrus Design Corp SR20, Aircraft Serial Number 1540 and FAA Registration Number N499SF, establishing a date for the Auction, and approving, *inter alia,* (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; and (iii) procedures relating to certain Designated Contracts (as defined in the Amended APA), including notice of proposed cure amounts; and the Court having established the date of the hearing to consider the relief sought in the Sale Motion (the "Sale Hearing"); and

2

The Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and

After consideration of the Sale Motion, the relief requested therein, and the responses thereto, and the evidence admitted in support of and in opposition to the Sale Motion at the Sale Hearing which was held on January 16, 2009, January 20, 2009, January 21, 2009 and January 22, 2009; and

The Buyer subsequently having entered into that certain Second Amended and Restated Asset Purchase Amended APA, dated January 22, 2009, between Buyer and Debtors (the "Amended APA," attached hereto as Exhibit 1[1]) which combined the Principal APA, the Cirrus APA and the WIP APA, pursuant to which the Debtors will seek to sell substantially all of their assets free and clear of all Encumbrances (as defined below), with such sale to be in accordance with the terms and conditions of the Amended APA; and

This being a core proceeding in accordance with 28 U.S.C. § 157(b); and

The appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and

It appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

I. FINDINGS OF FACT:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Amended APA.

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[2]

### Jurisdiction, Final Order, Statutory Predicates

A.    The findings and conclusions set forth herein and on the record at the hearing on January 20, 2009 and January 22, 2009, which are incorporated herein by reference, constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    The Court has jurisdiction over this matter and over the property of the Debtors, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Amended APA, and their estates pursuant to 28 U.S.C. § § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 363, 365, 1123, 1141 and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

D.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), the parties may consummate the transactions provided for under the terms and conditions of the Amended APA immediately upon entry of this Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

### Retention of Jurisdiction

E.    It is necessary and appropriate for the Court to retain jurisdiction to, among other

---

[2]    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. *See* Fed. R. Bankr. P. 7052.

things, interpret and enforce the terms and provisions of this Order and the Amended APA, and to adjudicate, if necessary, any and all disputes relating in any way to the transactions provided for under the terms and conditions of the Amended APA.

## Time Is of the Essence

F.     On November 25, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

G.     Time is of the essence in consummating the sale. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Amended APA. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

## Notice of the Sale Motion

H.     As evidenced by the affidavits of service and publication filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing (including due and proper notice of the assumption, sale, and assignment of each Designated Contract to each non-debtor party under each such Designated Contract) have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Procedures Order; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Designated Contracts, or of the entry of this Order is necessary or shall be required.

5

I.     Actual written notice of the Sale Motion, the Auction, and the Sale Hearing (including due and proper notice of the assumption, sale, and assignment of each Designated Contract to each non-debtor party under each such Designated Contract) and a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien upon the Purchased Assets; (ii) all parties to Designated Contracts assumed and sold and assigned pursuant to this Order; (iii) all governmental taxing authorities that have or as a result of the sale of the Purchased Assets may have claims, contingent or otherwise, against the Debtors; (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) all interested governmental, pension, environmental and other regulatory entities; (vii) the attorneys general of all states in which the Purchased Assets are located; (viii) the Office of the United States Trustee; and (ix) all entities that heretofore expressed to the Debtors an interest in purchasing the Purchased Assets within the past 12 months.  Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

J.     The Auction and Sale Publication Notice was published in the Wall Street Journal on December 30, 2008.  Such publication notice was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

### Compelling Circumstances for Immediate Sale

K.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring it to enter into the Amended APA, sell the Purchased Assets and assume and assign the Designated Contracts under Bankruptcy Code §§ 363, 365, 1123 and 1141, and

6

such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors, in that:

1. The Debtors violated the terms of the minimum cash covenant in their Senior Notes, and the holders of such notes would not consent to the use of additional cash collateral absent a sale of substantially all of their assets.

2. Due to the Debtors' need for additional liquidity, they cannot continue to operate in the ordinary course of business for a sufficient period of time to reorganize their business other than through a sale.

3. The Debtors' postpetition financing does not allow the Debtors to operate their business in the ordinary course for a period beyond that required for a sale of substantially all of their assets.

4. Even with the use of cash collateral permitted by the holders of the Senior Notes and the postpetition financing obtained by the Debtors, they can continue to operate their business and preserve the value of their assets only for a short period of time. If the sale and related transactions under the Amended APA were not approved and consummated promptly, the Debtors would exhaust the financing available to them under their postpetition financing, and the Debtors' business could deteriorate to the point where Buyer could terminate the Amended APA, thereby potentially consigning the Debtors to a liquidation that would achieve far less value for creditors than the transactions contemplated by the Amended APA or a sale involving a significantly reduced purchase price.

5. A sale pursuant to section 363(b) of the Bankruptcy Code is the only viable alternative for preserving and capturing the value of the Purchased Assets and ensuring the continuation of the Debtors' business. Without the sale, the Debtors

7

cannot continue to operate their business for the time required to confirm and

consummate a plan of reorganization without risking an immediate and material

decline in the value of their business and the Purchased Assets. Thus, the only way

to preserve and maximize value is to consummate the sale and sell the Purchased

Assets pursuant to section 363(b) of the Bankruptcy Code, thereby ensuring an

orderly and equitable sales process and distribution of proceeds.

6. A sale of the Purchased Assets at this time to Buyer would result in the highest

possible purchase price therefore.

## Consent of the Holders of the Senior Notes

L. Pursuant to the terms of the Debtors' Senior Notes, the liens securing the Senior

Notes may be released with the consent of the holders of more than 50% of the Debtors' Senior

Notes.

## Good Faith

M. It has been fully disclosed to the Court and other parties in interest that the Buyer

is an entity formed by an "insider" or "affiliate" of the Debtors as those terms are defined in the

Bankruptcy Code. Notwithstanding its status as an insider or affiliate, the Buyer is a purchaser

in good faith, as that term is used in the Bankruptcy Code and court decisions thereunder, and is

entitled to the protections of Bankruptcy Code § 363(m). The Amended APA were negotiated

and entered into in good faith, based upon arm's length bargaining, and without collusion or

fraud of any kind. The sales process was conducted in accordance with the Procedures Order

and in good faith within the meaning of Bankruptcy Code § 363(m). Neither the Debtors nor the

Buyer have engaged in any conduct that would prevent the application of Bankruptcy Code §

363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Amended APA

or to the consummation of the sale transaction and transfer of the Purchased Assets and

Designated Contracts to Buyer. The Buyer is entitled to all the protections and immunities of Bankruptcy Code § 363(m). The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions pursuant to the terms and conditions of the Amended APA any time after the entry of this Order, including immediately after its entry. The Court has found that the Buyer has acted in good faith in all respects in connection with these chapter 11 cases and the transactions under the Amended APA in that, among other things:

1. the Debtors established a special committee of the Board of Directors (which did not include any representative of Buyer or its affiliates) to conduct the sale process and to negotiate with the Buyer;

2. the Buyer recognized that the Debtors were free to negotiate with any other party that expressed qualified interest in purchasing their assets;

3. the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order;

4. neither the Buyer not any of its Affiliates induced, caused, or required the commencement of the Debtors' chapter 11 cases;

5. all payments to be made by Buyer and other agreements or arrangements entered into by Buyer with the Debtors in connection with the Amended APA have been disclosed;

6. the Buyer has disclosed at the Sale Hearing all material written post-Closing employment arrangements with the Debtors' senior management; and

7. the negotiation and execution of the Amended APA and all other aspects of the transactions contemplated thereby were conducted in good faith and at arms' length.

N.     In the absence of a stay pending appeal, the Buyer will be acting in good faith,

9

pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Amended APA at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

## No Collusion

O. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The sale price to be paid by Buyer was not controlled by an agreement among potential bidders at such sale. The transactions under the Amended APA may not be avoided, and no damages may be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

## Bid Procedures Fair

P. The Bid Procedures set forth in the Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of arms length negotiations between the Debtors and the Buyer.

Q. The Debtors, the Buyer, and their respective professionals have complied, in good faith, in all respects with the Procedures Order. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing. Through marketing efforts and a competitive sale process conducted in accordance with the Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase substantially all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

10

## Highest and Best Offer

R.    The Bidding Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates.

S.    The offer of the Buyer, upon the terms and conditions set forth in the Amended APA, including the form and total consideration to be realized by the Debtors pursuant to the Amended APA, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practical and available alternative. The Debtors' determination that the Amended APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

T.    The Amended APA and the transactions thereunder are not being entered into to escape liability for the estates' debts. The Debtors' estates are unable to satisfy all of the Debtors' debts.

## No Fraudulent Transfer

U.    The total consideration provided by the Buyer for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price delivered under the Amended APA constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, reasonably equivalent value, fair consideration and fair value for the Purchased Assets.

## Validity of Transfer

11

V. Prior to the transactions contemplated under the Amended APA, the Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

W. The Debtors have full corporate power and authority to execute the Amended APA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Amended APA. No consents or approvals, other than as may be expressly provided for in the Amended APA, are required by the Debtors to consummate such transactions.

X. The Debtors have advanced sound business reasons for seeking to enter into the Amended APA and to sell and/or assume and sell and assign the Purchased Assets and the Designated Contracts, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell and assign the Purchased Assets and the Designated Contracts and to consummate the transactions contemplated by the Amended APA. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Buyer and the assumption and assignment of the Designated Contracts is a legal, valid and effective transfer of the Purchased Assets and any Designated Contracts.

Y. The terms and conditions of the Amended APA, including the consideration to be realized by the Debtors pursuant to the Amended APA, are fair and reasonable, and the transactions contemplated by the Amended APA are in the best interests of the Debtors' estates.

### Section 363(f) Is Satisfied

Z. Except as otherwise provided in the Amended APA, the Purchased Assets shall be sold free and clear of all of the following (collectively, the "Encumbrances"): mortgages, security interests, conditional sale or other retention agreements, pledges, liens (as that term is

12

defined in section 101(37) of the Bankruptcy Code), claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, guaranties, debts, obligations, rights, contractual commitments, interests, judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, other Encumbrances (as defined in the Amended APA), Liens (as defined in the Amended APA), and restrictions of any kind or nature whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation (i) encumbrances that purport to give any party a right or option to effect any forfeiture, modification or termination of any Debtor or of the Buyer in the Purchased Assets or (ii) in respect of taxes, in each case accruing, arising, or relating to a period prior to the Closing. All such Encumbrances shall attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and Buyer would not enter into the Amended APA to purchase the Purchased Assets otherwise.

AA.     The transfer of the Purchased Assets to Buyer will be a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Amended APA, shall vest Buyer with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances. Except as specifically provided in the Amended APA or this Order, the Buyer shall not assume or become liable for any Encumbrances relating to the Purchased Assets being sold by the Debtor.

BB.     The transfer of the Purchased Assets to the Buyer free and clear of all Encumbrances will not result in any undue burden or prejudice to any holders of any Encumbrances as all such Encumbrances of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.

13

All persons having Encumbrances of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Encumbrances against the Buyer, any of its assets, property, successors or assigns, or the Purchased Assets.

CC.    The Debtors may sell the Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those (i) holders of Encumbrances and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). Those holders of Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the sale as set forth in this Order, with such Encumbrances being subject to treatment as prescribed in the Debtors' Plan or by separate order of this Court.

DD.    Not selling the Purchased Assets free and clear of all Encumbrances would adversely impact the Debtors' estates, and the sale of Purchased Assets other than free and clear of all Encumbrances would be of substantially less value to the Debtors' estates.

EE.    The Buyer shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities and its obligations under the Amended APA.

### Cure under Designated Contracts; Adequate Assurance of Future Performance

FF.    The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code. Pursuant to the terms and subject to the conditions of this Order and the Amended APA, the Buyer shall, within the time period set forth in the Amended APA, (i) cure or provide adequate assurance of cure of any undisputed default

**14**

existing prior to the Closing under any of the assigned Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provide compensation or adequate assurance of compensation to any party other than the Debtors for any undisputed actual pecuniary loss to such party resulting from an undisputed default prior to the Closing under any of the assigned Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The Buyer has demonstrated adequate assurance of future performance with respect to the Designated Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. Moreover, any party that did not object to the assignment and assumption of their applicable Designated Contract shall be deemed to have consented to such assumption and assignment for all purposes of section 365 of the Bankruptcy Code. The Designated Contracts are assignable notwithstanding any provisions contained therein to the contrary pursuant to section 365(f) of the Bankruptcy Code. The assumption and assignment of the Designated Contracts pursuant to the terms of this Order is integral to the Amended APA and is in the best interests of the Debtors, their estate, creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

### No Successor Liability

GG.    The transactions contemplated under the Amended APA do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates.

HH.    Except as expressly set forth in the Amended APA, the transfer of the Purchased Assets to the Buyer and assumption and assignment to Buyer of the Designated Contracts and

15

the Assumed Liabilities by Buyer do not and will not subject the Buyer or any of its affiliates or

subsidiaries to any liability by reason of such transfer under (i) the laws of the United States, any

state, territory, or possession thereof, or the District of Columbia, based in whole or part on,

directly or indirectly, including without limitation, any theory of antitrust, environmental,

products liability, successor or transferee liability, labor law, *de facto* merger, or substantial

continuity or (ii) any employment contract, understanding or agreement, including without

limitation collective bargaining agreements, employee pension plans, or employee welfare or

benefit plans.

### Miscellaneous

II.     The sale of the Purchased Assets outside of a plan of reorganization pursuant to

the Amended APA neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a plan of liquidation or reorganization for the Debtors. The

sale does not constitute a *sub rosa* chapter 11 plan.

CONCLUSIONS OF LAW:

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS

HEREBY ORDERED, ADJUDGED AND DECREED THAT:[3]

1.     The relief requested in the Sale Motion is granted in its entirety, subject to the terms

and conditions contained herein.

2.     All objections, responses, and requests for continuance concerning the Sale Motion

are resolved in accordance with the terms of this Order and as set forth in the record of the Sale

Hearing.  To the extent any such objection, response or request for continuance was not

otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is

---

[3]     To the extent any of the following conclusions of law constitute findings of fact, they are adopted as
such.  *See* Fed. R. Bankr. P. 7052.

16

overruled and denied on the merits.

3.    Notice of the Sale Hearing was fair and adequate under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

### Approval of Sale

4.    The sale of the Purchased Assets, the terms and conditions of the Amended APA (including all schedules and exhibits affixed thereto), the bid by the Buyer and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.    The sale of the Purchased Assets and the consideration provided by the Buyer under the Amended APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.    The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code § 363(m), including with respect to the transfer of the Designated Contracts as part of the sale of the Purchased Assets pursuant to Bankruptcy Code § 365 and this Order.

7.    The Debtors be, and hereby are, authorized and directed to fully assume, perform under, consummate and implement the terms of the Amended APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Amended APA, this Order and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities and the assumption and assignment of the Designated Contracts, as may be necessary or appropriate

17

to the performance of the Debtors' obligations as contemplated by the Amended APA, without any further corporate action or orders of this Court. The Buyer shall have no obligation to proceed with the Closing of the Amended APA until all conditions precedent to its obligations to do so have been met, satisfied or waived. The Buyer may consummate the transactions under the Amended APA at any time after the entry of this Order (including immediately thereafter) by waiving all closing conditions set forth in the Amended APA that have not been satisfied and by proceeding to close such transactions, without any notice to the Court, any pre-petition or post-petition creditor of the Debtors or any other party in interest.

8. The Debtors are hereby authorized and directed to distribute, to the extent and in the manner set forth herein and in the Senior Secured Notes and that certain Amended and Restated Security Agreement dated as of February 15, 2008 (the "Security Agreement"), the Purchase Price (as defined in the Amended APA) received by the Debtors, pursuant to the Amended APA, to the Bank of New York (in its capacity as Collateral Agent under the Security Agreement) as payment for amounts due and owing the holders of the Senior Secured Notes pursuant to the terms of the Senior Secured Notes. Pending distribution of the Purchase Price, the Debtors shall not commingle the Purchase Price with any other of the Debtors' assets and shall establish from the Purchase Price the following accounts:

(i) The Debtors shall deposit $3.2 million in cash from the Purchase Price (the "Over and Out Escrow Amount") in a separate account. The liens of the Senior Secured Notes, and the interests (if any) alleged by the Over and Out Plaintiffs (as defined below) in the Over and Out Action (as defined below), shall attach to the Over and Out Escrow Amount in the order of their priority. The Over and Out Escrow Amount shall be not be distributed, except in accordance with a final order of the Court resolving by settlement, dismissal or adjudication, Adversary Proceeding No. 09-50029, commenced by Over and Out, Inc., Ocala Bedrock, Inc.,

18

The Kenneth and Shari Meyer Trust, Michael T. Flynn, Richard A. Smith, James Frisbie, Team Aircraft, Inc., Max J. Cohen, Joseph J. Rusin/Northwest Ohio International LLC, Shaun Hughes, Henry Orlosky, Peter Riechers, Peter Schultz, Management Tech LLC, Robert H. Yarbrough, Linde International, Inc., Davis Air, LLC, Julian MacQueen, Jeff Reynolds, K2 Jet, LLC, James Teng, Black Falcon Aviation & Consulting, LLC, Gulfstream Nautical, Dan Mudge, Gray & Co., Inc., The Gray Oil & Gas Company, Louisiana, N400EA, Richard Ryan, Michael Osbourne (the "Over and Out Plaintiffs") against Eclipse Aviation Corporation (the "Over and Out Action").

(ii)     The Debtors shall deposit $1.6 million in cash from the Purchase Price in a separate escrow account, subject to liens in favor of the Senior Secured Notes (the "Dispute Resolution Escrow Amount"). Upon entry of a final order resolving the Over and Out Action, the Dispute Resolution Escrow Amount shall be distributed as follows: (x) an amount equal to fifty percent of any Over and Out Escrow Amount distributed to the Over and Out Plaintiffs shall be distributed to the Senior Secured Notes; (y) an amount equal to fifty percent of any fees and expenses incurred by the Ad Hoc Committee of Senior Noteholders in connection with the Over and Out Action shall be distributed to the Ad Hoc Committee of Senior Secured Noteholders; and (z) any remaining Dispute Resolution Escrow Amount, after deducting the distributions made pursuant to (x) and (y) above, shall be distributed to the Buyer.

(iii)     The Debtors shall deposit Notes (as defined in the Amended APA) in a separate account (or with their counsel) in an amount (x) agreed to by the Ad Hoc Committee of Senior Secured Noteholders and A.R. Airways, or (y) as determined by the Court following the hearing (the "Adequate Protection Hearing") to determine the extent to which A.R. Airways is entitled to adequate protection of its alleged interest in an Eclipse 500 Aircraft in production with Serial

19

No. 273. The liens of the Senior Secured Notes and the interests (if any) asserted by A.R. Airways in such aircraft shall attach to such Notes in the order of their priority.

(iv)     The Debtors shall deposit $5,000,000 (the "Closing Transaction Expenses") in a separate account, for use in payment of Transaction Expenses (as defined in the Amended APA).

(v)     The Debtors shall deposit $2.5 million in cash in a separate account, subject to liens in favor of the Senior Secured Notes, for use exclusively for payment of Transaction Expenses in excess of the Closing Transaction Expenses, and shall not be otherwise used or released without further order of this Court.

(vi)     The Debtors shall deposit the remaining Purchase Price (the "Remaining Purchase Price") in a separate account, subject to liens in favor of the Senior Secured Notes. The Remaining Purchase Price shall be distributed to the Senior Secured Notes upon expiration of the 75-day period provided to the Committee to challenge the liens and claims with respect to the Senior Secured Notes (the "Investigation Period"); *provided, however*, that if an adversary proceeding challenging such liens or claims is filed by the Committee prior to the expiration of the Investigation Period, the Remaining Purchase Price shall be distributed in accordance with a final order of the Court resolving such adversary proceeding, by settlement, dismissal or adjudication.

9.     The Adequate Protection Hearing is scheduled for February 3, 2009 at 9:30 a.m. at the United States Bankruptcy Court for the District of Delaware, Wilmington, Delaware. Any party objecting, or wishing to be heard with respect, to the adequate protection of A.R. Airways' alleged interest in the Eclipse 500 Aircraft in production with Serial No. 273, as provided herein, shall file its objection with the Clerk of the United States Bankruptcy Court for the District of Delaware and serve a copy of such objection on (i) counsel for the Debtors, (ii) counsel to A.R. Airways, (iii) counsel to the Ad Hoc Committee of Senior Secured Noteholders, (iv) counsel for

20

the Official Committee of Unsecured Creditors, (v) counsel for the Buyer, and (vi) the U.S. Trustee, so as to be received no later than January 30, 2009 at 4:00 p.m.

10. Notwithstanding anything herein or in the Amended APA to the contrary, all cash remitted to the Debtors by the Senior Notes and DIP Lenders to fund the expenses set forth in the budget annexed to the Final Order Authorizing Limited Use Of Cash Collateral And Granting Adequate Protection (as such Budget has been amended from time to time), which expenses have accrued but have not yet been paid by the Debtors as of the Closing Date, shall not be transferred to Buyer and shall remain property of the Debtors' estates to be used solely to pay such accrued and unpaid expenses up to the amounts set forth in the budget.

11. The Debtors and each other person or entity having duties or responsibilities under the Amended APA, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Amended APA, to carry out all of the provisions of the Amended APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Amended APA, and any related agreements; to take any and all actions contemplated by the Amended APA, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Amended APA, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by

21

unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Amended APA, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Amended APA, any related agreements and this Order, and the transactions contemplated thereby and hereby.

12. Effective as of the Closing, (a) the sale of the Purchased Assets by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, pursuant to Bankruptcy Code § 363(f),

22

and (b) the assumption of any Assumed Liabilities by the Buyer shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

13. The sale of the Purchased Assets is not subject to avoidance, and no damages may be assessed against the Buyer or any other party, pursuant to Bankruptcy Code § 363(n).

14. Notwithstanding any other provision of this Order or the APA, the Purchased Assets shall not include any production certificate issued to the Debtors by the Federal Aviation Administration, as such production certificate is not transferable pursuant to 14 C.F.R. § 21.155.

### Transfer of Purchased Assets

15. Except to the extent specifically provided in the Amended APA, upon the closing, pursuant to Bankruptcy Code § 1141(c), the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Bankruptcy Code §§ 105, 363(b), 1123 and 1141, to sell the Purchased Assets to the Buyer. The sale of the Purchased Assets shall vest Buyer with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Encumbrances and other liabilities and claims to attach only to the proceeds of the sale (if any) with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtors may possess with respect thereto. Following the Closing Date, no holder of any Encumbrance in the Purchased Assets shall interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to

23

such Encumbrance, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Amended APA or this Order. To the extent provided for in the Amended APA, any and all of the Debtors' security deposits, or other security held by landlords, lessors and other counterparties to the contracts, leases, and licenses that are to be assumed and assigned under the Amended APA are being transferred and assigned to, and shall be the property of, the Buyer from and after the Closing, which transfer and assignment of security deposits, other deposits, or security shall satisfy in full the requirements of Bankruptcy Code section 365(l) for all contracts, leases, and licenses assumed and assigned pursuant to this Order or the Amended APA.

16. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Encumbrances, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtors and the Buyer, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Amended APA and this Sale Order. Moreover, effective as of the Closing, the Buyer, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Buyer, its successors and assigns, to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof, and from time to time to institute and prosecute in the Debtors' name, for the benefit of the Buyer, its

**24**

successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets which the Buyer, its successors and assigns, shall deem desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

17. On or before the Closing Date, all parties holding Encumbrances of any kind are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Encumbrances that the person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Buyer is authorized to file such documents after Closing.

18. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

19. All of the Debtors' interests in the Purchased Assets to be acquired by the Buyer under the Amended APA shall be, as of the Closing Date and upon the occurrence of the

25

successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets which the Buyer, its successors and assigns, shall deem desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

17. On or before the Closing Date, all parties holding Encumbrances of any kind are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Encumbrances that the person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Buyer is authorized to file such documents after Closing.

18. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

19. All of the Debtors' interests in the Purchased Assets to be acquired by the Buyer under the Amended APA shall be, as of the Closing Date and upon the occurrence of the

25

Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Buyer under the Amended APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Buyer.

20. Except as expressly provided in the Amended APA, the Buyer is not assuming nor shall it or any affiliate or subsidiary of Buyer be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Amended APA, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Amended APA, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate or subsidiary of the Buyer.

21. Except as otherwise provided in the Amended APA, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

22. Except as otherwise expressly provided in the Amended APA, the Debtors agree to exercise commercially reasonable efforts to assist Buyer in assuring that all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets will surrender possession of the Purchased Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

26

23. Notwithstanding any other provision of this Order or the APA, no "personally identifiable information" of individual customers of the Debtors, as defined under section 101(41A) of the Bankruptcy Code, shall be transferred without first obtaining the prior consent of any such individual customer. As provided in section 101(41A), this restriction shall only apply to information provided by an individual that is a customer, and only with respect to information provided in connection with obtaining a product or a service from the Debtors primarily for personal, family, or household purposes. Nothing herein shall be deemed a finding or determination that the Debtors produce products or provide services primarily for personal, family, or household purposes.

## Designated Contracts

24. Subject to the terms of the Amended APA and the occurrence of the Closing Date, the assumption by the Debtors of the Designated Contracts and the sale and assignment of such agreements to the Buyer, as provided for or contemplated by the Amended APA, be, and hereby is, authorized and approved pursuant to sections 363, 365, 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code.

25. The Designated Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Buyer at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to (a) the payment by Buyer of all cures required to assume and assign the Designated Contracts to the Buyer as provided in this Order and the Amended APA; and (b) the Buyer's right to exclude Designated Contracts from the definition of Designated Contracts in accordance with the terms of the Amended APA. To the extent the Buyer excludes any Designated Contracts from the definition of Designated Contracts, the Debtors shall file a revised Schedule 2.3 to the Amended APA with the Court and provide proper and adequate notice thereof.

27

26. Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Designated Contract. The Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

27. Pursuant to Bankruptcy Code §§ 365(b)(1)(A) and (B), pursuant to the terms and subject to the conditions of this Order and the Amended APA, within the time period provided in the Amended APA the Buyer shall pay or cause to be paid to the parties to any Designated Contracts the requisite Cure Costs, if any, set forth in the notice served by the Debtors on each of the parties to the Designated Contracts, except to the extent that a cure amount was amended on the record of the Sale Hearing or pursuant to the terms of this Order, including the applicable exhibits hereto which are incorporated by reference (the "Cure Amounts"), following the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the notice served by the Debtors, or the amounts set forth herein or on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Designated Contracts are forever bound by such Cure Amounts. The assignment and assumption of the Designated Contracts is conditioned on the Closing and the payment of the Cure Amounts at Closing.

28. Each of the objections identified on Exhibit 2 attached hereto is hereby withdrawn with prejudice on the basis that the Debtors, Buyer and the parties filing such objections (the "Objecting Parties") have entered into written agreements amending such Objecting Party's existing agreement(s) with Debtors and such amendments resolve any objections made by the Objecting Party. The Designated Contracts with such parties shall be assumed and assigned as amended.

29. Each objection filed by the counterparties to Designated Contracts set forth on Exhibit 3 attached hereto is hereby withdrawn with prejudice on the basis that Buyer agrees,

28

pursuant to the terms and subject to the conditions of this Order and the Amended APA, to pay the Cure Cost identified with such Designated Contract as set forth on Exhibit 3.

30. Each objection set forth on Exhibit 4 attached hereto is resolved as follows: the parties agree that all issues relating to the assumption and assignment of any agreements identified in such objections (the "Pending Designated Contracts") shall be determined by (i) subsequent agreement of the parties or (ii) in the absence of such agreement, adjudication by the Court on a schedule to be mutually agreed to by the parties. In the event that the parties reach a mutually agreeable resolution with respect to a Pending Designated Contract, such Pending Designated Contract shall be deemed to be a Designated Contract for all purposes of this Order and the Amended APA. In the event that the parties are unable to reach a mutually agreeable resolution but mutually agree to have such issues adjudicated by the Court, then the treatment of such Pending Designated Contracts shall be determined by the Court. At any time, Buyer may decide to have any Pending Designated Contract treated as an Excluded Contract (as defined in this Order).

31. Computer Science Corporation's Objection to Debtors' Notice of Auction and Sale, Potential Assumption and Assignment of Designated Contracts, and Cure Amounts Associated Therewith, dated January 8, 2009, filed by Saul Ewing LLP and Munsch Hardt Kopf & Harr, P.C. on behalf of Computer Sciences Corporation ("CSC") (docket no. 292) shall be resolved as follows: (i) the Debtors, CSC and Buyer agree that the CSC cure amount relating to Debtors' pre-petition incurred expenses is $1,800,499 (the "CSC Cure Amount"); (ii) the existing CSC agreements with the Debtors will be Designated Contracts for all purposes of this Order and the Amended APA; (iii) the outstanding post-Petition Date invoices of CSC billed in accordance with such CSC Designated Contracts shall be paid timely and in full by the Debtors as required by the Court and pursuant to the terms of the Amended APA and with respect to the final CSC

29

invoice through the Closing Date, the Debtors agree to pay such invoice within five (5) Business Days of receipt; (iv) at Closing, Buyer will pay, by wire transfer, to CSC an amount equal to $825,000 (the "Closing Payment") and payment of the Closing Payment by Buyer shall partially satisfy Buyer's obligation to pay the CSC Cure Amount for purposes of this Order and the Amended APA and to the extent the remaining portion of the CSC Cure Amount is not ultimately paid in full, notwithstanding 11 U.S.C. § 365(k), CSC reserves all rights to file a proof of claim with the Debtors for such unpaid amount; (v) for a three week period commencing on the Closing Date (the "Negotiation Period"), Buyer and CSC will negotiate in good faith to resolve any issues relating to the Remaining Pre-Petition Payable (as defined below); (vi) during the Negotiation Period, CSC will provide services to Buyer pursuant to the terms of CSC's Designated Contracts and Buyer will pay for such services in the ordinary course in accordance with such CSC Designated Contracts and to the extent there are any capital or other significant expenditures required by CSC, such capital or other significant expenditures shall be delayed until such time as CSC and Buyer have reached a final agreement regarding all outstanding issues; (vii) at the end of the Negotiation Period, if CSC and Buyer have not reach resolution on the Remaining Pre-Petition Payable, CSC may terminate its services with Buyer and, should Buyer elect to obtain transition services from CSC, Buyer shall pay the amounts associated with such transition services pursuant to the existing terms of the CSC Designated Contracts. The term "Remaining Pre-Petition Payable" shall mean the CSC Cure Amount, less the Closing Payment.

32. Subject to Section 2.3(b) of the Amended APA, any Contract not identified as a Designated Contract shall not be assumed by Debtors and assigned to Buyer (such contracts, the "Excluded Contracts"). Therefore, any objections contesting the cure amount or Buyer's assurance of future performance which were filed by, or on behalf of, the parties to any Excluded

30

Contract are moot.

33. No aircraft or aircraft engines in which George L. Miller, chapter 7 trustee for DayJet Corporation and its affiliated debtors (the "DayJet Trustee") asserts an interest are subject to this Order. The DayJet Trustee preserves and reserves any and all claims against the Debtor, which claims are not transferred to the Buyer.

34. Notwithstanding anything contrary in this Order, (i) the objection of TW Metals, Inc. ("TW") to the Sale Motion and the Cure Notice has been consensually resolved; (ii) any contract between TW and any of the Debtors will not be among the Designated Contracts assumed by the Debtors and assigned to the Buyer or among Purchased Assets sold to the Buyer and any such contract shall be treated as an Excluded Asset; and (iii) any account receivable of the Debtors against TW or other amount owed by TW to any of the Debtors will not be among the Purchased Assets sold to the Buyer and any such receivable or amount owing shall be treated as an Excluded Asset.

35. The Debtors are not selling, transferring, assuming, assigning or otherwise conveying, and shall not sell, transfer, assume, deliver, assign or otherwise convey the Laval Landing Gear (as defined in the objection of Mecaer [D.I. 377] (the "Mecaer Objection")), the Mecaer IP (as defined in the Mecaer Objection) or the Agreement (as defined in the Mecaer Objection) by or through this Order, the Sale Motion or the Amended APA and related documents and any and all rights, remedies, claims and the like of Mecaer and the Debtors are reserved and preserved with respect to the Laval Landing Gear, Mecaer IP and the Agreement, including the right to seek attorneys' fees under the Agreement.

36. The Debtors are not selling, transferring, assuming, assigning, or otherwise conveying, and shall not transfer, assume, deliver, assign or otherwise convey the Curtiss-Wright IP (as defined in the objection of Curtiss-Wright Integrated Sensing, Inc. and Novatronics, Inc.

31

[D.I. 391] (the "C-W Objection") or the Contracts (as defined in the C-W Objection) by or through this Order, the Sale Motion or the Amended APA (as defined in this Order) and related documents and any and all rights, remedies, claims and the like of the Curtiss-Wright Companies (as defined in the C-W Objection) and the Debtors are reserved and preserved with respect to the Curtiss-Wright IP and the Contracts, including the right to seek attorneys' fees under the Contracts.

37. Notwithstanding anything else in this Order, that certain real property described and identified as the "Eclipse Tract" in the Special Warranty Deed (the "Deed") recorded January 20, 2005 as document no. 2005009859, in Bk-A90, Pg-9831, in the Office of the County Clerk of Bernalillo County, New Mexico (Recording and Filing Department), a copy of which Deed is attached hereto as Exhibit 5, shall only be sold or transferred subject to the right of reversion (the "Right of Reversion") retained by Ranch Joint Venture, LLP ("Ranch") as described in the Deed. Notwithstanding the foregoing, Eclipse and Ranch further agree five acres of the Eclipse Tract on which there is currently situated a flight training/simulator center (the "Flight Training Parcel") , identified as Tract D-1-A-2 on Plat of Tracts D-1-A-1, D-1-A-2, and S-1-A of Amended Bulk Land Plat For Aerospace Technology Park Within Section 36, Township 11 North, Range 1 East and Section 3, Township 10 North, Range 1 East City of Albuquerque Bernalillo County, New Mexico, June 2007, is not subject to Ranch's Right of Reversion. The option of Ranch to purchase the Eclipse Tract set forth in the Deed shall not be deemed to be triggered by reason of the bankruptcy filing of Eclipse Aviation Corporation ("Eclipse") or the transfer of the Eclipse Tract to EclipseJet Aviation International, Inc.

38. All defaults or other obligations under the Designated Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment of the Cure

32

Amounts.

39.    Any provision in any Designated Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Designated Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Designated Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Designated Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Designated Contract pursuant to the terms of the Amended APA shall in any respect constitute a default under any Designated Contract. The non-Debtor party to each Designated Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Buyer shall enjoy all of the rights and benefits under each such Designated Contract as of the applicable date of assumption without the necessity of obtaining each such non-Debtor party's written consent to the assumption or assignment thereof.

40.    The Buyer has satisfied all requirements under Bankruptcy Code §§ 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under the Designated Contracts.

41.    The Debtors and their estates shall be relieved of any liability for any breach of any of the Designated Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

## Additional Provisions

42.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to

33

consummate the transactions contemplated by the Amended APA and this Order.

43. The Buyer has not assumed and is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Amended APA, and the Buyer has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in Bankruptcy Code §§ 101(27) and 101(41)) and all holders of Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against any of the Buyer, its affiliates, and subsidiaries or the Purchased Assets to recover any Encumbrance or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Amended APA. All persons holding or asserting any Encumbrance in the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrance or cause of action against any of the Buyer, its affiliates, and subsidiaries or the Purchased Assets for any liability associated with the Excluded Assets.

44. The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer, its affiliates, and subsidiaries shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the Amended APA. Neither the purchase of the Purchased Assets by the Buyer or its affiliates or subsidiaries, nor the fact that the Buyer or its affiliates or subsidiaries are using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer or any of its affiliates or subsidiaries to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability

34

under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, and the Buyer, its affiliates and subsidiaries shall have no liability or obligation on account of any of the foregoing. Buyer and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 *et seq.*) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

45. Except to the extent expressly included in the Assumed Liabilities, pursuant to Bankruptcy Code §§ 105, 363, 1123(a)(5)(D) and 1141(c), all persons and entities, including, but not limited to, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, any claimant asserting a products liability claim, trade and other creditors asserting or holding an Encumbrance of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrance or other liability against the Buyer or any affiliate, subsidiary, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if

35

any, against the Buyer and/or its successors and assigns in and only in accordance with the terms of the Amended APA.

46. Subject to the terms of the Amended APA, the Amended APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors, the Ad Hoc Committee, and the Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Amended APA and any related agreements.

47. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Amended APA.

48. The failure specifically to include any particular provisions of the Amended APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Amended APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing. To the extent any provisions of this Order conflict with the terms and conditions of the Amended APA, the terms and conditions of the Amended APA shall govern and control. Nothing in this Order shall alter or amend the Amended APA and the obligations of the Debtors and Buyer thereunder.

49. This Order and the Amended APA shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract to

36

accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. All Encumbrances against the Debtors estates of record as of the Closing shall forthwith be removed and stricken as against the Purchased Assets, without further order of the Court or act of any party. Upon Closing, the entities listed above in this paragraph are authorized and directed to strike all such recorded Encumbrances against the Purchased Assets as provided for herein from their records, official and otherwise. Each and every federal, state, and local governmental agency, unit, or department are hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Purchased Assets to the Buyer, and such agency, unit, or department may rely upon this Order in consummating the transactions contemplated by the Amended APA.

50. Any amounts that become payable by the Debtors to Buyer pursuant to the Amended APA shall (a) constitute administrative expenses of the Debtors' estate under sections 503(b) and 507(a)(1) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner provided by the Amended APA, all without further Court order and notwithstanding any Encumbrances against the Debtors' estate.

51. The Debtors will retain or have reasonable access to their books and records to administer their bankruptcy cases. The Buyer and any Hired Employees shall cooperate with all reasonable requests of the Debtors and provide any information or documentation reasonably necessary to enable the Debtors to administer their estates and to reconcile claims.

52. Pursuant to that certain term sheet that memorializes the agreement reached by and among the Debtors, Buyer and Vermeer Manufacturing Company ("Vermeer"), authority to enter into which is authorized herein, Vermeer has agreed to, among other things, withdraw both its objection [D.I. 379] to approval of the Sale Motion and its cure objection [D.I. 291] in consideration for (i) the termination of that certain Aircraft Purchase Agreement entered into

37

067809.1001

between Vermeer and Debtors for the purchase of an Eclipse 500 (serial number 000266), (ii) the payment of certain cash consideration and (iii) upon such termination and payment, to enter into a mutual release by and among the Debtors, Buyer and Vermeer.

53. Pursuant to that certain term sheet that memorializes the agreement reached by and among the Debtors, Buyer and Maverik, Inc. ("Maverik"), authority to enter into which is authorized herein, Maverik has agreed to, among other things, withdraw its objection [D.I. 408] to approval of the Sale Motion in consideration for (i) the termination of that certain Aircraft Purchase Agreement entered into between Maverik and Debtors for the purchase of an Eclipse 500 (serial number 000267), (ii) the payment of certain cash consideration and (iii) upon such termination and payment of cash , to enter into a mutual release by and among the Debtors, Buyer and Maverik.

54. Pursuant to that certain term sheet, dated January 22, 2009 (the material terms of which were described on the record at the January 20, 2009 hearing) (the "PLG Term Sheet"), executed by Buyer and Paul Keenan, as counsel to the customers with purchase contracts to acquire Eclipse 500 aircraft with serial numbers 261, 262, 263, 264, 265, 269, 270, 271, 272, 274, 275, 276, 277, 279, 280, 281, 284, 286, 287, 288, 289, 290, 291, 292 and 293 (the "PLG Group"), that memorializes the agreement reached by and among the Debtors, Buyer and the PLG Group, authority to enter into which is authorized herein, the PLG Group has agreed to, among other things, withdraw its objection [D.I. 376] to approval of the Sale Motion, its cure objection [D.I. 287] and its adversary proceeding [D.I. 209] other than such adversary proceeding with respect to A.R. Airways serial number 273, in consideration for (i) Buyer and each PLG Group being bound by the terms and conditions set forth in the PLG Term Sheet and (ii) entry into a mutual release by and among the Buyer and such PLG Group member, as set forth in the PLG Term Sheet.

38

55. Within five (5) business days of the Closing, Buyer shall (i) turnover to 100 PM, Inc. possession of a certain Eclipse Model EA500 airplane, bearing serial number 000260, and a registration mark of N877PM ("Airplane No. 260"), and (ii) take all necessary steps for transfer of ownership of Airplane No. 260 to 100 PM, Inc., and upon completion of such turnover and transfer of ownership, Buyer shall be entitled to take possession and ownership of $477,721.47 which shall be transferred free and clear of all Encumbrances and as otherwise entitled to the benefits provided to Buyer in this Order which funds are currently being held in escrow pursuant to an Order of the Bankruptcy Court dated December 19, 2008 in Adversary No. 08-51870(MFW). Further, upon the turnover of Airplane No. 260 to 100 PM, Inc. and confirmation of transfer of ownership of Airplane No. 260 to 100 PM, Inc., Gulf Coast Commercial Corp. and 100 PM, Inc. shall dismiss Adversary No. 08-51870(MFW) with prejudice.

56. The provisions of this Order are non-severable and mutually dependent.

57. Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Amended APA or the terms of this Order.

58. Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close under the Amended APA at any time, subject to the terms of the Amended APA. If, in the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer close under the Amended APA, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Amended APA if this Order or any authorization

39

contained herein is reversed or modified on appeal.

59. This Court shall retain jurisdiction even after the closing of these chapter 11 cases to:

      a.  interpret, implement, and enforce the terms and provisions of this Order, the Procedures Order, and the Amended APA, all amendments thereto and any waivers or consents thereunder and each of the agreements executed in connection therewith in all respects;

      b.  decide any disputes concerning this Order, the Amended APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Amended APA and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Designated Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Encumbrances;

      c.  protect the Buyer or any of the Designated Contracts or Purchased Assets against any of the Encumbrances as provided herein including, without limitation, to enjoin the commencement or continuation of any action seeking to impose successor liability or bulk sale liability;

      d.  enter orders in aid or furtherance of the transactions contemplated by the Amended APA or to ensure the peaceful use and enjoyment of the Designated Contracts or the Purchased Assets by the Buyer;

      e.  compel delivery of all Purchased Assets to the Buyer;

      f.  adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and assign the Designated Contracts and the rights and

DB02:7587616.10      067809.1001

obligations of the Debtors and the Buyer with respect to such assignment and the existence of any default under any such Designated Contract;

g.  adjudicate any and all disputes concerning alleged pre-Closing Encumbrances in and to the Purchased Assets including without limitation the extent, validity, enforceability, priority, and nature of any and all such alleged Encumbrances;

h.  adjudicate any and all disputes relating to the Debtors right, title, or interest in the Purchased Assets and the proceeds thereof; and

i.  re-open the Debtors' chapter 11 case to determine any of the foregoing.

Dated:  January 23, 2009
        Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge

41