# EXHIBIT 1
# BID PROCEDURES

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Eclipse Aviation Corporation, *et al.*,[1] | ) | Case No. 08-13031 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BID PROCEDURES

On November 25, 2008 (the "Petition Date"), Eclipse Aviation Corporation and its affiliated debtors (collectively, the "Debtors") filed chapter 11 cases pending in the Bankruptcy Court and jointly administered under Case No. 08-13031 (MFW). On March 5, 2009, the Debtors' cases converted to cases under Chapter 7 of the Bankruptcy Code. Jeoffrey L. Burtch was appointed as interim chapter 7 trustee on March 5, 2009, and serves as the chapter 7 trustee (the "Trustee") in these cases pursuant to section 702(d) of the Bankruptcy Code. On July [__], 2009, the Trustee entered into an asset purchase agreement (the "Agreement")[2] with Eclipse Aerospace Inc. ("Buyer") in which Buyer proposes to purchase substantially all of the Debtors' assets. By motion dated July [__], 2009 (the "Motion"), the Trustee sought, among other things, approval for the sale of substantially all the assets (the "Assets") of the Debtors and of the process and procedures set forth below (the "Bid Procedures") through which the Trustee, with the consultation of the Ad Hoc Committee of Senior Secured Noteholders, will determine the highest and best offer for the Assets. On July [__], 2009, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bid Procedures.

On August [__], 2009, at ____ _. m. (prevailing Eastern Time) as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Trustee shall seek entry of the Sale Order authorizing and approving the sale of the Assets (the "Proposed Sale") to Buyer (defined below) or to one or more other Qualified Bidders (defined below) that the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines to have made the highest and best offer.

*Agreement*

Pursuant to the terms and conditions of the Agreement, Buyer would provide consideration for the Assets equal to the following (the "Purchase Price"): (i) the Cash Consideration, which amount shall be payable as set forth in Section 3.2 of the Agreement, plus (ii) the Note Consideration. The transaction contemplated by the Agreement is subject to

---

[1] The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax I.D. No. XX-XXX9000) and Eclipse IRB Sunport, LLC, a wholly-owned subsidiary of Eclipse Aviation Corporation (Tax I.D. No. XX-XX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

*Assets for Sale*

The Trustee is offering for sale in one or more transactions all or substantially all of the assets of Eclipse Aviation Corporation and its affiliated debtor. The assets proposed to be sold to the Buyer consist of the Purchased Assets as set forth in the Agreement. The assets for sale to the Buyer do not include the Excluded Assets, which shall mean (i) the excluded assets specified in the Agreement.

*Participation Requirements*

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Trustee and his counsel no later than 12:00 noon (prevailing Eastern Time) on August ___, 2009:

(a) <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance acceptable to the Trustee and his counsel; such form attached as Exhibit 1 hereto (if not already provided); and

(b) <u>Identification of Potential Bidder</u>. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Debtors' assets do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a)-(b) above, and that the Trustee in his discretion and with assistance from his advisors, and in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines is reasonably likely to submit a *bona fide* offer that would result in greater total consideration being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(b) above, the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Buyer is a Qualified Bidder.

*Access to Due Diligence Materials*

Only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information. If the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines that a Potential Bidder who has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Trustee will designate a representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Trustee is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Trustee, the Ad Hoc Committee of Senior Secured Noteholders or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Trustee to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Trustee to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**Bidding Process**

The Trustee and his advisors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions, above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "Bidding Process"). The Trustee shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be August ___, 2009, at 12:00 noon (Eastern Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its bid to: (a) counsel to the Trustee, Cooch & Taylor P.A., The Brandywine Building, 1000 West Street, 10th Floor, P.O. Box 1680, Wilmington, Delaware 19899-1680, Attn: Adam Singer; (b) Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq; and (c) counsel to the Ad Hoc Committee of Senior Secured Noteholders, Covington & Burling LLP,

The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment (collectively, the "Notice Parties"), so that the bid is actually received by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid unless otherwise agreed by the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, to satisfy each of the following conditions:

(a) <u>Good Faith Deposit</u>: Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or a certified check payable to the order of the Trustee in an amount of not less than $5.0 million.

(b) <u>Minimum Overbid</u>: The aggregate consideration must exceed the sum of the Purchase Price by at least $2,000,000.

(c) <u>Irrevocable</u>: A bid must be irrevocable until two (2) business days after the Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "Termination Date").

(d) <u>The Same or Better Terms</u>: The Bid may be for the Purchased Assets under the Agreement, as applicable for the Purchased Assets subject to the Bid (provided, however, that any variations from one or more material terms must, in the aggregate constitute an improvement, as determined by the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders, upon such term or terms as set forth in the Agreement). The Bid must be on terms that, in the Trustee's business judgment, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, are substantially the same or better than the terms of the Agreement. A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price). The Contemplated Transaction Documents must include a written commitment satisfactory to the Trustee and the Ad Hoc Committee of Senior Secured Noteholders of its financial ability and intention to complete the transaction and contain a representation that the Qualified Bidder shall make all necessary regulatory filings, if any, and pay all costs and expenses of such filings (including the Trustee's costs and expenses).

For all Qualified Bidders seeking to acquire all or substantially all assets of the Debtors:

(a) <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement, as applicable.

(b) <u>Corporate Authority</u>: A Bid must include written evidence of the Qualified Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that if the Qualified Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Qualified Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals").

(c) <u>Financing Sources</u>: A Bid must contain written evidence satisfactory to the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, that demonstrates the Qualified Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

   (i) the Qualified Bidder's current financial statements (audited if they exist);

   (ii) contact names and numbers for verification of financing sources,

   (iii) evidence of the Qualified Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

   (iv) any such other form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders demonstrating that such Qualified Bidder has the ability to close the contemplated transaction provided, however, that the Trustee shall determine, in his reasonable discretion, in consultation with his advisors and the Ad Hoc Committee of Senior Secured Noteholders, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Qualified Bidder's financial qualifications.

(d) <u>No Fees payable to Qualified Bidder</u>:  A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Trustee believes, in his reasonable discretion and after consultation with the Ad Hoc Committee of Senior Secured Noteholders, that such bid would be consummated if selected as the Successful Bid.  For purposes hereof, the Agreement shall constitute a Qualified Bid.  Promptly upon such determination, the Trustee shall provide any other Qualified Bids to the Buyer and to any Qualified Bidders.

In the event that any Bid is determined by the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, not to be a Qualified Bid, the Qualified Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

**Auction**

Only if a Qualified Bid (other than Buyer's) is received by the Bid Deadline, shall the Trustee conduct an auction (the "Auction") to determine the highest and best bid with respect to the Purchased Assets under the Agreement.  The Trustee shall provide Buyer and all Qualified Bidders with copies of all Qualified Bids at least eighteen (18) hours prior to the Auction.  The Auction shall commence on August ___, 2009 at 10:00 a.m. (prevailing Eastern time).

No later than 4:00 p.m. (prevailing Eastern time) on August ___, 2009, the Trustee will notify all Qualified Bidders of (i) the highest and best Qualified Bid(s), as determined in the Trustee's discretion after consultation with the Ad Hoc Committee of Senior Secured Noteholders (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders.  If, however, no other such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Buyer will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the August ___, 2009 Sale Hearing, the Trustee will seek approval of and authority to consummate the Proposed Sale contemplated by the  Agreement.

The Auction shall be conducted according to the following procedures:

(a) Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  The auction shall be conducted openly and all creditors shall be entitled to attend. Each Qualified Bidder shall have at least one representative physically present at the location of the Auction.  During the Auction, bidding shall begin initially with the highest Baseline Bid as to the Purchased Assets under the Agreement and subsequently continue in minimum increments of at least $100,000.  Bidding at the auction shall be transcribed or

videotaped.  Other than otherwise set forth herein, the Trustee may conduct the Auction in the manner he determines, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, will result in the highest and best offer for the Purchased Assets under the Agreement.

(b) The Trustee Shall Conduct the Auction

The Trustee and his professionals shall direct and preside over the Auction. At the start of the Auction the Trustee shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (A) the amount and nature of the consideration; (B) the proposed assets to be purchased and the assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents and (H) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Trustee shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

(c) Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Trustee's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder seeking to acquire all or substantially all of the Debtors' assets must comply with the following conditions:

(i) Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $100,000.

(ii) Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (a) the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, accepts a higher Qualified Bid as an Overbid and (b) such Overbid is not selected as the Back-up Bid (as defined below).

7

To the extent not previously provided (which shall be determined by the Trustee), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee and the Ad Hoc Committee of Senior Secured Noteholders) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

(iii) Announcing Overbids

The Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

(d) Additional Procedures

The Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, may adopt rules for the Auction at or prior to the Auction that, in his reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction. Subject to the prior consent of the Buyer, the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, in his reasonable discretion, may adjourn without further notice the Auction (and Sale Hearing) if in his reasonable discretion an adjournment will better promote the goals of the Auction and allow parties to make progress towards modifications of any Qualified Bid that could result in a higher and better Qualified Bid.

(e) Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

(f) Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest and best offer for the Purchased Assets

8

under the Agreement (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtors' estates, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination. If Buyer's final bid is deemed to be highest and best at the conclusion of the Auction, Buyer will be the Successful Bidder, and such bid, the Successful Bid.

### Acceptance of Successful Bid

The Trustee shall sell the assets subject to the Successful Bid(s) to the Successful Bidder(s) upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Trustee's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Trustee's acceptance of the bid. The Trustee will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Trustee's selection of the Successful Bidder (including the assignment of any of such objector's Designated Contract thereto, provided, however, that any objection to such assignment on the basis of the Cure Amount must be made and/or reserved as set forth in the order approving these Bid Procedures).

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, his agents or the Chapter 7 estates except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to Buyer, the terms of the sale of the Purchased Assets under the Agreement shall be set forth in the Agreement, or (ii) as another Successful Bidder, the terms of the sale of the Assets shall be set forth in the applicable purchase agreement.

### Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Chapter 7 estates' right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests'') in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on August ___, 2009 or on such date as may be established by the Bankruptcy Court.  Following the approval of the sale of the Assets to the Successful Bidder(s) at the Sale Hearing, if any Successful Bidder fails to consummate an approved sale within ten (10) days after entry of an Order approving the Sale, the Trustee, unless such Order approving the Sale is otherwise stayed by order of a court with competent jurisdiction, shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Trustee shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder(s) shall be applied to the purchase price of such transaction at Closing.  The Good Faith Deposit of the Back-up Bidder shall be held in an interest-bearing account until five (5) days after the Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the Back-up Bidder.  Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders.  If a Successful Bidder or the Back-up Bidder, as appropriate, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, the Trustee shall be entitled to retain the Good Faith Deposit as part of the Debtors' damages resulting from the breach or failure to perform by such Bidder.

### Modifications

The Trustee, after consultation with the Ad Hoc Committee of Senior Secured Noteholders, may (a) determine, which Qualified Bid, if any, is the highest and best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors' estates and creditors. The Trustee shall not make material modifications to these Bidding Procedures without Bankruptcy Court approval, provided, however, that, to the extent not contrary to the Bidding Procedures Order, the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders and the Buyer, may make other non-material modifications to such procedures if their reasonable judgment such modifications would be in the best interests of the Debtors' estates and promote an open and fair sale process.

In all cases where the Bid Procedures require the Trustee to obtain consent or consult with the Buyer or the Ad Hoc Committee of Senior Secured Noteholders, the Trustee's fiduciary duties shall not be limited by such requirement.

# EXHIBIT 1 TO BID PROCEDURES

**Confidentiality Agreement**

1835973

# CONFIDENTIALITY AGREEMENT

In connection with your consideration of materials relating to a possible acquisition (the "**Transaction**") of part or all of the assets of Eclipse Aviation Corporation and Eclipse IRB Sunport, LLC (the "**Company**"), you are being or have been provided with certain Confidential Information (as defined below). All information concerning the Company that is non-public, confidential or proprietary, whether written, in electronic or other tangible or intangible form, in any other medium whatsoever, or oral, including without limitation, trade secrets, inventions, system designs, processes, business plans, marketing strategies, pricing information, budgets, financial statements, lists or other information relating to suppliers, customers, clients, and employees, together with any evaluations, ideas, analyses, reports, notes, compilations, interpretations, or other documents or technical, business or financial data of any kind, furnished to you by or on behalf of the Chapter 7 Trustee or the Company, or containing all or any part of, or derived from, any of the foregoing, from the date hereof through the term of this Confidentiality Agreement (this "**Agreement**") is hereinafter referred to as the "**Confidential Information**." Notwithstanding the foregoing, Confidential Information does not include any information that (A) is or becomes generally available to the public other than as a result of disclosure or actions by you or your Representatives (as defined below) in breach of this Agreement, (B) is or becomes available to you or your Representatives on a nonconfidential basis from a source (other than the Chapter 7 Trustee or his representatives, or the Company or its Representatives) which, to your knowledge, had no obligation to the Chapter 7 Trustee or the Company or any other party to maintain the confidentiality of such information, (C) was in your possession prior to the date of this Agreement and the source of such information, to your knowledge, had no obligation to the Chapter 7 Trustee or the Company or any other party to maintain the confidentiality of such information or (D) has been independently developed or acquired by you or your Representatives without violating your or any of their respective obligations under this Agreement.

In consideration of the Chapter 7 Trustee furnishing you with the Confidential Information, the Chapter 7 Trustee and you hereby agree that:

     1.    <u>Non-Disclosure; Limitations On Use; Representatives</u>. Except as otherwise expressly provided herein, without the prior consent of the Chapter 7 Trustee or the Company, you and your Representatives (A) will not disclose to any person (i) the fact that any discussions or negotiations took place concerning an Transaction; (ii) the economic or other terms of the Transaction; and (iii) the Confidential Information, the fact that the Confidential Information has been made available to you or that you have inspected or have knowledge of any portion of the Confidential Information, and (B) will use the Confidential Information solely for the purpose of evaluating, negotiating, documenting and/or consummating the Transaction, will keep the Confidential Information confidential and will not disclose the Confidential Information to any third party whatsoever; <u>provided</u>, <u>however</u>, that the Confidential Information may be disclosed to any of your directors, officers, employees, representatives, accountants, advisers, potential financing sources, agents and legal counsel (collectively, "**Representatives**") who need the Confidential Information solely for the purpose of evaluating, negotiating, documenting and/or consummating the Transaction on your behalf, so long as such Representatives agree to maintain the confidentiality thereof in accordance with the terms of this Agreement. The obligations of you and your Representatives with respect to Confidential Information shall terminate two (2) years from the date of this Agreement (the "**Term**"). You shall be responsible for any breach of the confidentiality provisions of this Agreement by any of your Representatives.

You agree that, for a period of 24 months after the date of this Agreement, you will not, without the prior written consent of the Chapter 7 Trustee or the Company, directly or indirectly, solicit for employment or hire any employee of the Company or any of its subsidiaries provided, however, that you shall not be precluded or otherwise restricted from hiring or employing, or from having employment or hiring discussions with, any such person (i) who is not then employed by the Company or any of its subsidiaries, (ii) who contacts you without any solicitation by you or (iii) who responds to a general solicitation for employment placed by you or your agents in newspapers, trade journals, the Internet, through recruiters or by any similar media; and provided further that no such general solicitation shall constitute a breach of this Agreement. You also agree that until 24 months after the date of this Agreement, you will not, without the prior written consent of the Chapter 7 Trustee, initiate or maintain contact (except in the ordinary course of business) with any officer, director, employee, supplier, vendor, distributor, broker, customer or agent of the Company for purposes of discussing the Transaction.

2. <u>Termination</u>. The Chapter 7 Trustee may at any time terminate this Agreement and cease to provide to you Confidential Information and you may at any time terminate this Agreement with respect to any information furnished to you after receipt by the Chapter 7 Trustee of your notice of termination. At such time that this Agreement is terminated, upon written request by the Chapter 7 Trustee you and your Representatives shall promptly destroy or return to the Chapter 7 Trustee all instances and copies of the Confidential Information, in any medium, and shall destroy analyses, reports, notes, compilations, studies, summaries, extracts or other documents containing any of, or derived from, the Confidential Information prepared by you or your Representatives; <u>provided</u> <u>that</u>, in the event that you destroy rather than return any such Confidential Information to the Chapter 7 Trustee, upon the written request of the Chapter 7 Trustee, you shall confirm such destruction in writing to the Chapter 7 Trustee; and <u>provided</u>, <u>further</u>, that you may retain copies of such Confidential Information in accordance with your internal record retention policies, so long as such Confidential Information continues to be treated as such and all such Confidential Information shall continue to be subject to this Agreement through the remainder of the Term. The termination of this Agreement will not affect the respective obligations of you and your Representatives hereunder, all of which obligations shall continue in effect through the remainder of the Term for any Confidential Information obtained from the Chapter 7 Trustee or the Company prior to such termination.

3. <u>Compelled Disclosure</u>. If you or any of your Representatives reasonably believe that you are legally required to disclose any of the Confidential Information to a third party or you are requested by regulatory authority to provide Confidential Information, unless legally prohibited you will before such disclosure has occurred provide as soon as is practical, written notice to the Chapter 7 Trustee of the proposed disclosure; provided in the case of a broad regulatory request with respect to your business (not specifically targeted at the Chapter 7 Trustee or the Company) you may promptly comply with the request and provide notice (if permitted by such regulator) to the Chapter 7 Trustee thereafter of such disclosure. You and your Representatives will use commercially reasonable efforts to cooperate with the Chapter 7 Trustee in his efforts to decline, resist or narrow such request and, if reasonably necessary, to assist Chapter 7 Trustee in his efforts to obtain an appropriate protective order or other reliable assurance that confidential treatment, if available, will be accorded to such disclosure.

4. <u>No Representations or Warranties</u>. You shall assume full responsibility for all conclusions you derive from the Confidential Information. The Confidential Information is being provided "as is" without representation or warranty hereunder of any kind. You acknowledge and agree that none of the Chapter 7 Trustee or the Company and their respective Representatives makes any express or implied representations or warranties as to the accuracy, completeness or fitness for a particular purpose of any Confidential Information, and you agree that none of such persons shall

have any liabilities to you or any of your Representatives relating to or arising from your or their use of any Confidential Information or for any errors therein or omissions therefrom except to the extent otherwise provided in a definitive agreement.

      5.    <u>Privilege Issues; Work Product</u>.  To the extent that any Confidential Information may include material subject to the attorney-client privilege, work product doctrine or any other applicable privilege concern pending or threatened legal proceedings or governmental investigations, you understand and agree that we have a commonality of interest with respect to such matters and it is our desire, intention and mutual understanding that the disclosure of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege and any such Confidential Information shall remain entitled to all protection under these privileges, this agreement, and under the joint defense doctrine.  Nothing in this agreement obligates any party to reveal material subject to the attorney-client privilege, work product doctrine or any other applicable privilege.

      6.    <u>Equitable Remedies</u>. You agree that money damages may not be a sufficient remedy for any breach of this Agreement by you or your Representatives, and that the Chapter 7 Trustee and the Company would be irreparably harmed in the event of such a breach. Accordingly the Chapter 7 Trustee and the Company shall, in addition to any other remedies or money damages to which it may be entitled, be entitled to specific performance and injunctive or other equitable relief as a remedy for any such threatened or actual breach. The parties hereby waive any requirement of the posting of a bond or other security in connection with the granting to the Chapter 7 Trustee or the Company of any such injunctive relief.

      7.    <u>Waiver; Governing Law; Assignment; Severability; Counterparts</u>. It is understood and agreed that no failure or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. The agreements set forth herein may only be waived or modified by an agreement in writing signed on behalf of the parties hereto. This Agreement shall be governed by the laws of the State of Delaware without regard to the principles of choice of law thereof. This Agreement is not assignable by either party; any purported assignment will be void and without effect.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors. Except as set forth in Section 1 hereof, there are no third-party beneficiaries of this Agreement. In case specific provisions of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of the Agreement shall not in any way be affected or impaired thereby. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of such counterparts taken together shall be deemed to constitute one and same instrument.

      8.    <u>Term</u>.  This Agreement shall expire two years following the date hereof.

9. By execution below, the signatory represents and warrants that he has fully authority to bind the entity for which he is signing.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized representatives as of the later of the dates under the signatures below.

[Name of Entity and Address]

By: _____
Name:
Title:

Date:

Jeoffrey L. Burtch, Chapter 7 Trustee for Eclipse Aviation Corporation  and and Eclipse IRB Sunport, LLC,


By: _____
Name: Adam Singer
Title: Counsel to the Chapter 7 Trustee

Date: