IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECLIPSE AVIATION CORP., et al., | ) | Case No. 08-13031 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Pleadings: D.I. 763** |
| | ) | **Hearing Date: 08/10/09 at 11:00 a.m.** |

## OBJECTION OF OPINICUS CORPORATION TO MOTION OF THE CHAPTER 7 TRUSTEE TO APPROVE SALE PROCEDURES, AND TO APPROVE SALE, AND FOR RELATED RELIEF

Opinicus Corporation ("Opinicus"), by and through its undersigned counsel, hereby objects (the "Objection") to the Motion of the Chapter 7 Trustee (the "Trustee") to Approve Sale Procedures (the "Sale Procedures"), and to Approve Sale (the "Sale"), and for Related Relief (the "Sale Motion").[1] In support thereof, Opinicus respectfully represents as follows:

### GENERAL BACKGROUND

1. On November 25, 2008 (the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On December 23, 2008, the Court entered an order in the Chapter 11 cases (A) Approving Bid Procedures Relating To Sale Of Substantially All Of The Debtors' Assets; (B) Scheduling A Hearing To Consider The Sale And Approving The Form And Matter Of Notices;

---

[1] For the avoidance of doubt, this Objection concerns and responds to (a) the proposed Sale Procedures to be considered by the Court on August 10, 2009, and (b) any prospective Sale to be heard and considered at a future date.

(C) Establishing Procedures Relating To Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, Including Notice Of Proposed Cure Amounts; And (D) Granting Related Relief. (the "Chapter 11 Sales Procedures") [D.I. 229].

3. One January 23, 2009, the Court entered an Order in the Chapter 11 cases (A) Authorizing The Debtors To Sell Substantially All Of Their Assets Free And Clear Of All Liens, Claims And Encumbrances, (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (C) Granting Related Relief. (the "Chapter 11 Sale Order") [D.I. 446]. However the Chapter 11 Sale failed to close.

4. On March 5, 2009, the Court entered an order converting these cases to cases under Chapter 7 of the Bankruptcy Code, and Jeoffrey L. Burtch was appointed as the Chapter 7 Trustee.

5. One July 31, 2009, the Trustee filed the Sale Motion seeking, among other things, approval of the Sales Procedures and a sale of substantially all of the Debtors' assets. [D.I. 763].

## THE PURCHASE AGREEMENT

6. Opinicus and Eclipse Aviation Corp. ("Eclipse") are parties (the "Parties") to a certain Purchase Agreement (No. 5702-0000) (and Change Orders thereto) (collectively, the "Agreement") dated April 6, 2005 pursuant to which Eclipse (a) agreed to purchase certain equipment from Opinicus including, among other things, (i) a flight training device (the "Flight Training Device"), (ii) three (3) full flight simulators (the "Simulators") and (iii) certain motion hardware for the Flight Training Device (together with the Flight Training Device and the Simulators (as defined herein), the "Equipment"), and (b) licensed, on a non-exclusive basis, the right to use proprietary, operational software developed and owned by Opinicus for the use of the

Equipment (the "Intellectual Property"). A true and correct copy of the Agreement (including certain material Change Orders thereto) is attached hereto as Exhibit A.

7. Under the Agreement, the Parties agreed on technical specifications (the "Technical Specifications") for the Flight Training Device and Simulators. (*Agreement*, Appendix A.1 and A.2). The Parties further agreed on procedures for testing and acceptance of the Equipment, including a Systems Acceptance Procedure (*Agreement*, §7.1.2), a procedure for identifying and resolving discrepancies (*Agreement* §§ 7.2 and 7.2.1), in-plant and on-site acceptance testing by Opinicus and Eclipse (*Agreement* §§ 7.3 and 7.4), United States Federal Aviation Administration ("FAA") Qualification Testing (*Agreement* §7.5) and reliability demonstration procedures (the "Reliability Demonstration") (*Agreement* §7.6). Upon successful completion of the acceptance procedures described above, and a Reliability Demonstration Period for the Flight Training Device and the Simulators, the Parties agreed to execute a certificate of conformance indicating final acceptance ("Final Acceptance") of the Flight Training Device and Simulators. *Agreement* §7.7.

8. Critically, since the execution of the Agreement, the Flight Training Devices and the Simulators have remained, at all times, under the control of, and in the possession of, Opinicus. Indeed, since that time, Opinicus has undertaken (and continued to perform) testing and other work necessary with regard to the Equipment. In addition, the Agreement provides that title to the Equipment passes to Eclipse only "upon Final Acceptance and payment by [Eclipse] of all payments due to [Opinicus] under this Agreement." *Agreement* §15. Significantly, neither acceptance nor delivery of the Equipment has occurred, and Eclipse has failed (and refused) to execute a certificate of conformance as required by the Agreement for "Final Acceptance".

9. With respect to the Intellectual Property[2] owned by Opinicus or, in some instances, its suppliers, Eclipse was only granted a limited, conditional, and non-exclusive license for use in connection with the operation, calibration, maintenance, repair and modification of the Equipment, and/or integrated in the operational software developed by Opinicus and necessary for use of the Equipment. *Agreement §8.2.*

10. The Agreement contains ongoing obligations to be performed by both Eclipse and Opinicus, including specific obligations respecting the Intellectual Property license. Non-exhaustive examples of such obligations include:

- Nondisclosure provisions: providing ongoing obligations of nondisclosure and related requirements. See *Agreement §§8.2.1-8.2.2*;

- Patent, Trademark, Copyright and Trade Secret Indemnity: providing and imposing obligations on parties with respect to Intellectual Property including, among other things, obligations to hold harmless and indemnify. Such obligations survive any termination of the Agreement. See *Agreement Article 13*; and,

- Protection Against Assignment of Intellectual Property to Competitors:[3] providing each party the right to approve, and consent to, any person that would assume the obligations of Article 8 and Article 13 of the Agreement. See *Agreement §22.3.*

11. Eclipse has not made all payments due to Opinicus under the Agreement. As of the date hereof, approximately $4.07 million remains due and owing to Opinicus under the Agreement. Moreover, as of the date hereof, the parties have not executed a certificate of conformance indicating Final Acceptance, as described above, respecting the Equipment.

---

[2] Intellectual Property consists of proprietary software and proprietary documentation provided by Opinicus or its supplier to Eclipse and is included within the definition of "Licensed Data" in *Agreement §1.1.*

[3] Opinicus' Intellectual Property is competitively sensitive, and would give any competitor of Opinicus the ability to design and manufacture simulators using Opinicus' proprietary data -- protected as trade secrets -- thus causing irreparable harm to Opinicus. See N.M. Stat. Ann. Secs.57-3A-1, *et seq.* Additionally, Opinicus is obligated under licenses from its suppliers to

# OBJECTION

## I. The Sales Procedures Must Include "Lot Bidding"

12. The Sale Procedures proposed by the Trustee purport to be "substantially similar to those approved by this Court in these cases during the Chapter 11 phase." *Sale Motion*, p. 9. In fact, the Sale Motion contemplates a "sale in one or more transactions." *Id.* p.10, ¶14(a). However, it is unclear whether the instant Sale Procedures will permit "Lot Bidding." Lot Bidding was expressly permitted in the Chapter 11 Sale Procedures approved by this Court as a means to encourage and maximize the value of prospective bids. The Chapter 11 Sales Procedures provided:

> Notwithstanding the foregoing, the Debtors propose to sell any and all of their assets, either under one or a series of related transactions (e.g. to the Buyer) *or in lots ("Lot Bids") consisting of discrete assets irrespective of whether they are designed by the Buyer as Excluded Assets*

*Chapter 11 Sales Procedures*, p. 2 (emphasis added).

13. Notwithstanding the terms of the Sale Motion (see *Sale Motion*, p.10, ¶14(a)), this provision is not included in the Sale Procedures proposed by the Trustee, leaving it, at best, unclear whether Lot Bids for discrete assets will be permitted under the Trustee's proposed Sales Procedures, and, if so, under what conditions. See *Sales Procedures*, p. 2. Lot Bidding is a valid means to encourage the highest and best bids, and should be included in the Trustee's Sale Procedures. Indeed, Lot Bidding needs to be expressly permitted if the Trustee's Sale Procedures are in fact to be substantially similar to those approved by this Court with respect to the previous sale proceedings.

---

protect their proprietary data, certain of which is or may be embedded in the Intellectual Property and/or Equipment.

## II. The Equipment and Intellectual Property Cannot be Sold -- Neither the Debtors Nor Their Estates Hold Title

14. Pursuant to the express terms of the Agreement, title to the Equipment passed to Eclipse *only* upon payment to Opinicus of all payments due under the Agreement and Final Acceptance. See *Agreement*, Art. 15.0 ("Title to the Flight Training Devices and Simulators shall pass to [Eclipse] upon Final Acceptance and payment by [Eclipse] of all payments due to [Opinicus] under this Agreement."), Art. 8.2 ("title [][to the Intellectual Property] remains in Opinicus']. And as set forth above, there has not been Final Acceptance of the Equipment, nor has Opinicus received the approximately $4.07 million that remains due and owing to Opinicus under the Agreement for the Equipment and Intellectual Property. Nor has delivery or acceptance of the Equipment and Intellectual Property occurred. Rather, Opinicus has maintained control and possession of such Equipment and Intellectual Property since the execution of the Agreement.

15. Accordingly, title to the Equipment and the Intellectual Property lies and remains with Opinicus. See e.g. *Subaru Distr. Corp. v. Subaru of America, Inc*, 2002 WL 188473 *45 (S.D.N.Y.)(parties may agree that title passes prior to or subsequent to delivery); *Diesel Props S.R.L. v. Greystone Business Credit II, LLC*, 2008 WL 594773 (S.D.N.Y.). And it is axiomatic that a bankruptcy court may not allow the sale of property as "property of the estate" if, in fact, the property is not property of the estate. See generally *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir.2001) ("[T]he property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as 'property of the estate.'"); *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 266 (B.A.P. 9th Cir.2005) (even before one gets to Section 363(f), Section 363(b), as interpreted by Rodeo, requires that the estate demonstrate that the property it proposes to sell is "property of the estate."); *Anderson v. Conine (In re*

*Robertson)*, 203 F.3d 855, 863 (5th Cir. 2000) (holding that section 363(f) does not permit a trustee to sell the property of a non-debtor spouse because such property was not "property of the estate"); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla.1999) (finding it necessary to determine whether an asset is property of the estate in order to decide whether the trustee is entitled to sell the asset pursuant to section 363(f)).

16. Thus, as title to the Equipment and Intellectual Property lies and remains with Opinicus, the Trustee may not sell, transfer or otherwise encumber the Equipment and Intellectual Property. Indeed, pursuant to the terms of the Agreement, the Intellectual Property is -- beyond question -- proprietary to Opinicus and may not be sold, used by, or disclosed to, anyone. See *Agreement*, § 8.2.1. The Sale Motion must therefore be denied as it concerns Opinicus, and, specifically, the Equipment and Intellectual Property.

### III. The License to the Intellectual Property May Not Be Assumed and Assigned To Buyer

17. Eclipse has been granted a limited, conditional and non-exclusive license of use of Opinicus' proprietary information only under certain circumstances. Though not entirely clear, it appears that the Trustee may seek to "sell" (by assumption and assignment, or otherwise), among other things, Opinicus' Intellectual Property to the proposed Buyer. In that case, the Trustee is prohibited from doing so absent the consent of Opinicus.

18. Courts have generally held that the assumption and assignment of such licenses is prohibited by § 365(c) where "applicable law" excuses the licensor from accepting performance from an entity other than the debtors. *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300 (D. Del. 2001); *In re Patient Education Media, Inc.*, 201 B.R. 237 (Bankr.S.D.N.Y.1997); *In re CFLC, Inc.* 89 F.3d 673, 679 (9th Cir.1996). Indeed, a nonexclusive license of a copyright or patent is personal to the transferee and cannot be assigned without the consent of the licensor.

*Id.; 11 U.S.C. §365(c); See also Unarco Industries, Inc. v. Kelley Co.*, 465 F.2d 1303, 1306 (7th Cir.1972); *In re Valley Media, Inc.*, 279 B.R. 105, 135-136 (Bankr.D.Del.2002); *Cargill Inc. v. Nelson (In re LGX, LLC)*, 336 B.R. 601 (10th Cir. BAP 2006) (licensee has only a personal and not a property interest in the patent that is not transferable, unless the patent owner authorizes the assignment or the license itself permits assignment); see also N.M. Stat. Ann. Secs.57-3A-1 *et seq*. Accordingly, the Sale Motion must be denied to the extent that it seeks authority to assume and assign the Agreement – or any integral part thereof – without Opinicus' consent.

19. Assuming, *arguendo*, that the Trustee was otherwise authorized to assign the Intellectual Property license, he must nevertheless assume the Agreement, in its entirety. See *Sharon Steel Corp. v. National Fuel Gas Distr. Corp.*, 872 F.2d 36, 41 (3d Cir. 1989). A license of intellectual property is an executory contract under the Bankruptcy Code. This is so because each party remains obligated under the Agreement -- the licensor (Opinicus) not to sue for infringement, and the licensee (Eclipse) to use the intellectual property in accordance with the terms of the agreement. *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 43 (Bankr. D. Del. 1999) (finding that parties to license agreement have at least one material duty: to refrain from suing other for infringement of any of patents covered by license); *In re Exide*, 340 B.R. at 239 (holding, generally, that license agreement is executory contract as contemplated under Bankruptcy Code).

20. Provisions in the Agreement expressly provide and impose obligations of nondisclosure, nondisclosure to competitors and indemnification on both parties. The Intellectual Property license thus is an integral part of the Agreement, and for the Trustee – and Buyer -- to avail itself of these benefits, *all* continuing obligations under the Agreement must be assumed and any default(s) thereunder must be cured. *In re Exide Technologies*, 340 B.R. 222, 228

(Bankr. D. Del. 2006) (executory contracts must be assumed or rejected *in toto*). Indeed, any continued use or assumption by the Trustee of the Intellectual Property may only be conditioned on compliance with all of the Trustee's continuing obligations under the Agreement including, without limitation, all restrictions on the sale, use, transfer or disclosure of the Intellectual Property, and all indemnification rights with respect to infringement relating to such Intellectual Property.

### IV. The Sale Order Inappropriately Prejudices the Opinicus Adversary Proceeding

21. The provisions in paragraph HH of the proposed sale order (the "Sale Order") attached to the Sale Motion would inappropriately prejudice Opinicus' rights in its pending adversary proceeding (*Adv. Pro. No. 09*-50406, the "Opinicus Adversary Proceeding") against Trustee, the Debtors and the Noteholders (as that term is defined in the Opinicus Complaint).

22. Paragraph HH provides a mechanism whereby the proposed Buyer will be substituted for the Chapter 7 Trustee, or permitted to intervene in certain adversary proceedings, including (apparently) the Opinicus Adversary Proceeding. However, the language in paragraph HH preordains and improperly limits the proposed Buyer's potential liability in the Opinicus Adversary Proceeding:

> liabilities assumed by the Buyer are expressly limited to the obligations of the Chapter 7 estate to return to the Plaintiffs in those actions any aircraft parts, or in the case of Opinicus Corporation, aircraft simulators, to the extent such rights, if any, are established by the Court. Any claims against buyer pursuant to those actions, shall be, and hereby are, limited to the obligation to return to the Plaintiffs, if such rights are established, any property which is part of the Purchased Assets and which the Court may later determine the *Plain*tiffs are entitled to possession of under applicable law. The Buyer shall not be liable for: (1) specific performance; or (2) any monetary claims against the Seller, including but not limited to, any claims to deposits or segregated funds.

Sale Order, p. 14

23. This language would inappropriately predetermine and limit Opinicus' potential remedies in the adversary proceeding. The Court should not be approved by this Court, and should strike this provision in its entirety.

### GENERAL RESERVATION/JOINDER

24. In support of the points and objections raised herein, Opinicus hereby joins in, adopts and incorporates herein by reference the various legal arguments raised in any response or opposition to the Sale Motion, to the extent such objections do not conflict with the objections herein.

25. Opinicus hereby reserves, in full, any and all rights, remedies and defenses available under the Bankruptcy Code, otherwise applicable law and the Agreement, and to raise such rights, remedies and defenses as facts and evidence are discovered and developed.

WHEREFORE, for the reasons stated herein, Opinicus Corporation respectfully requests that the Court deny the Sale Motion, and that the Court grant it such other and further relief as the Court deems just and proper.

August 10, 2009                    ASHBY & GEDDES

*[signature: Ben Keenan]*
_____
Ricardo Palacio (#3765)
Benjamin Keenan (#4724)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(Tel.): 302-654-1888
(Fax): 302-654-2067
rpalacio@ashby-geddes.com
bkeenan@ashby-geddes.com

*Attorneys for Opinicus Corporation*