# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.,*[1] | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | | Docket Nos. 763, 787 and 845 |

## ORDER (A) AUTHORIZING THE TRUSTEE TO SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF

Upon the motion, dated July 31, 2009 (the "Sale Motion"), of Jeoffrey L. Burtch, the appointed chapter 7 trustee (the "Trustee") for the debtors in the above-captioned cases (the "Debtors") for the entry of an order pursuant to sections 105, 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Trustee to, *inter alia,* (i) enter into that certain Asset Purchase Agreement, dated as of July 30, 2009, between Eclipse Aerospace, Inc. (the "Buyer") and the Trustee (the "Agreement," attached hereto as Exhibit 1),[2] (ii) sell substantially all of the Debtors' assets free and clear of all Encumbrances (as defined below), with such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume and sell and assign certain executory contracts and unexpired leases to the Buyer; and (iv) granting related relief; and this Court

---

[1] The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax I.D. No. XX-XXX9000) and Eclipse IRB Sunport, LLC, a wholly-owned subsidiary of Eclipse Aviation Corporation (Tax I.D. No. XX-XX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

having entered an order dated August 11, 2009 (the "Procedures Order," and attached hereto as Exhibit 2, the "Bid Procedures") authorizing the Trustee to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher and better offers for the Assets, establishing a date for the Auction and approving, inter alia, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; (iii) procedures relating to certain Designated Contracts, including notice of proposed cure amounts; and (iv) the Break-Up Fee; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and after consideration of the Sale Motion, the relief requested therein, and the responses thereto, if any; and this being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, the Chapter 7 estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

I.     FINDINGS OF FACT:

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

### Jurisdiction, Final Order, Statutory Predicates

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[3]     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. See FED. R. BANKR. P. 7052.

B.     The Court has jurisdiction over this matter and over the property of the Debtors, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Agreement, and the Chapter 7 estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this chapter 7 case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 363 and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

D.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), the parties may consummate the transactions provided for under the terms and conditions of the Agreement immediately upon entry of this Order.  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

## Retention of Jurisdiction

E.     It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes relating in any way to the transactions provided for under the terms and conditions of the Agreement.

## Time Is of the Essence

F.     On November 25, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code.  On March 5, 2009 (the "Conversion Date"), the Court entered an order converting the Debtors' chapter 11 cases to cases

under chapter 7 of the Bankruptcy Code. On the Conversion Date, Jeoffrey L. Burtch was appointed as interim chapter 7 trustee and currently serves as the Trustee in these cases pursuant to section 702(d) of the Bankruptcy Code.

G.     Time is of the essence in consummating the sale. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

### Notice of the Sale Motion

H.     As evidenced by the affidavits of service filed with the Court, (i) proper, timely, adequate and sufficient notice of the Sale Motion, the Auction and the Sale Hearing (including due and proper notice of the assumption, sale and assignment of each Designated Contract to each non-Debtor party under each such Designated Contract) have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution and in compliance with the Procedures Order; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Designated Contracts or of the entry of this Order is necessary or shall be required.

I.     Actual written notice of the Sale Motion, the Auction and the Sale Hearin g (including due and proper notice of the assumption, sale and assignment of each Designated Contract to each non-Debtor party under each such Designated Contract) and a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested

persons and entities, including, without limitation, (i) all entities known to assert any interest in or lien upon the Purchased Assets; (ii) all parties to Designated Contracts; (iii) all parties that are entitled to notice under Bankruptcy Rule 2002; (iv) the attorneys general of all states in which the Purchased Assets are located; (v) the Office of the United States Trustee; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service and any governmental taxing authority that has filed a claim against the Chapter 7 Estates; (viii) all entities that expressed to the Seller an interest in purchasing the Purchased Assets; (ix) any party appearing in the Bankruptcy Cases and claiming a secured interest in the Purchased Assets; or any party known to the Seller and claiming a secured interest in the Purchased Assets. Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

## Compelling Circumstances for Immediate Sale

J.     The Trustee has demonstrated a sufficient basis and the existence of exigent circumstances requiring it to enter into the Agreement, sell the Purchased Assets and assume and assign the Designated Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Trustee's business judgment and in the best interests of the Debtors, the Chapter 7 estates and their creditors, in that:

1.     The holders of Senior Secured Notes (as defined below) (the "Noteholders") would not consent to the continued use of additional cash collateral absent a sale of substantially all of the assets.

2.     If the sale and related transactions under the Agreement is not approved and consummated promptly, the Trustee will exhaust any cash collateral available, thereby potentially consigning the Debtors to a piecemeal liquidation that would

achieve far less value for creditors than the transactions contemplated by the Agreement.

3.      A sale pursuant to section 363(b) of the Bankruptcy Code is the only viable alternative for preserving and capturing the maximum value of the Purchased Assets and allow for the Debtors to begin operations again for the benefit of current owners of Eclipse aircraft and other customers. Thus, the only way to preserve and maximize value is to consummate the sale and sell the Purchased Assets pursuant to section 363(b) of the Bankruptcy Code, thereby ensuring an orderly and equitable sales process and distribution of proceeds.

4.      A sale of the Purchased Assets at this time to Buyer would result in the highest possible purchase price therefore.

**Consent of Senior Secured Noteholders**

K.      Pursuant to the terms of the Debtors' 8% Senior Secured Notes due 2012 (the "2012 Senior Secured Notes"), the Debtors' Senior Secured Convertible Notes due 2010 (the "2010 Senior Secured Notes" and, collectively with the 2012 Senior Secured Notes, the "Senior Secured Notes"), and the Amended and Restated Security Agreement dated February 15, 2008, the liens securing the Senior Secured Notes may be released with the consent of the holders of more than 50% of the 2012 Senior Secured Notes, which constitute requisite holders of the Senior Secured Notes. Holders of more than 50% of the 2012 Senior Secured Notes have consented to the sale of the Purchased Assets and the release of the liens on the Purchased Assets securing the Senior Secured Notes in accordance with the terms of the Agreement and this Order.

## **Good Faith**

L.     The Buyer is a purchaser in good faith, as that term is used in the Bankruptcy Code and court decisions thereunder, and is entitled to the protections of section 363(m) of the Bankruptcy Code. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. The sales process was conducted in accordance with the Procedures Order and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Neither the Trustee nor the Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets and Designated Contracts to Buyer. The Buyer is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code. The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions pursuant to the terms and conditions of the Agreement any time after the entry of this Order, including immediately after its entry. The Court has found that the Buyer has acted in good faith in all respects in connection with these chapter 7 cases and the transactions under the Agreement in that, among other things:

1.     The Trustee, as a fiduciary of this Court pursuant to section 702 of the Bankruptcy Court, conducted the sale process and negotiated with the Buyer;

2.     The Buyer recognized that the Trustee was free to negotiate with any other party that expressed qualified interest in purchasing the Purchased Assets;

3.     The Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order;

4.     All payments to be made by the Buyer and other Agreement or arrangements

entered into by Buyer with the Trustee in connection with the Agreement have been disclosed; and

5. The negotiation and execution of the Agreement and all other aspects of the transactions contemplated therein were conducted in good faith and at arms' length.

M. In the absence of a stay pending appeal, the Buyer will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

## No Collusion

N. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The sale price to be paid by Buyer was not controlled by an agreement among potential bidders at such sale. The transactions under the Agreement may not be avoided, and no damages may be assessed against the Buyer or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

## Bid Procedures Fair

O. The Bid Procedures set forth in the Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of arms length negotiations between the Trustee and the Buyer.

P. The Trustee and his professionals have complied, in good faith, in all respects with the Procedures Order. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing. Through marketing, and an open and competitive sale process conducted in accordance

with the Procedures Order, the Trustee (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase substantially all of the Debtors' assets; and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets.

### Marketing Efforts Leading to Sale

Q.      Since the date of his appointment, the Trustee has identified interested parties who have previously expressed an interest in the Purchased Assets and continued to identify other parties who may have a strategic or financial interest in acquiring the Purchased Assets. The Trustee negotiated with several parties in an attempt to reach an asset purchase agreement and selected the Buyer as the most qualified and beneficial bid after several months of negotiations.

### Auction

R.      No Potential Bidder submitted a bid, and no auction was conducted.

### Highest and Best Offer

S.      Therefore, the Trustee has determined that, after consultation with the Ad Hoc Committee, the offer submitted by Eclipse Aerospace, Inc. (hereinafter, the "Buyer") in the Agreement was the highest and best offer, and the Buyer is the Successful Bidder for the Purchased Assets in accordance with the Procedures Order. The Bidding Procedures obtained the highest value for the Purchased Assets.

T.      The offer of the Buyer, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Trustee pursuant to the Agreement, (i) is the highest and best offer received by the Trustee; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate

consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practical and available alternative. The Trustee's determination that the Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

U.     The Agreement and the transactions thereunder is not being entered into to escape liability for the estates' debts. The Chapter 7 estates are unable to satisfy all of the Debtors' debts.

## No Fraudulent Transfer

V.     The total consideration provided by the Buyer for the Purchased Assets is the highest and best offer received by the Trustee, and the Purchase Price constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act; (ii) fair consideration under the Uniform Fraudulent Conveyance Act; and (iii) under any other applicable laws of the United States, any state, territory or possession or the District of Columbia, reasonably equivalent value, fair consideration and fair value for the Purchased Assets.

## Validity of Transfer

W.     Prior to the transactions contemplated under the Agreement, the Purchased Assets are property of the Chapter 7 estates and title thereto is vested in the Chapter 7 estates.[4]

X.     The Trustee has full power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly

---

[4]     Notwithstanding the foregoing and as more specifically set forth in this Order, and subject to Paragraph 7 hereof, the Trustee, the Alfred Mann Living Trust, the Ad Hoc Committee of Secured Noteholders and Buyer acknowledge that title to and liens upon certain of the Purchased Assets are the subject of the pending WIP Adversary Proceedings and Opinicus Adversary Proceeding.

authorized by all necessary corporate authority by the Trustee to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Trustee to consummate such transactions.

Y. The Trustee has advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets and the Designated Contracts, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Trustee's business judgment to sell and assign the Purchased Assets and the Designated Contracts and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Buyer and the assumption and assignment of the Designated Contracts is a legal, valid and effective transfer of the Purchased Assets and any Designated Contracts.

Z. The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Chapter 7 estates.

## Section 363(f) of the Bankruptcy Code is Satisfied

AA. Except as otherwise provided in the Agreement or otherwise specifically set forth in this Order, the Purchased Assets shall be sold free and clear of all of the following (collectively, the "Encumbrances"): mortgages, security interests, conditional sale or other retention agreement, pledges, liens (as that term is defined in section 101(37) of the Bankruptcy Code), claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, guaranties, debts, obligations, rights, contractual commitments, interests, judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, other Encumbrances

(as defined in the Agreement), Liens (as defined in the Agreement) and restrictions of any kind or nature whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation (i) encumbrances that purport to give any party a right or option to effect any forfeiture, modification or termination of any Debtor or of the Buyer in the Purchased Assets or (ii) in respect of taxes, in each case accruing, arising or relating to a period prior to the Closing.

BB.    The transfer of the Purchased Assets to the Buyer will be a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Agreement or this Order, shall vest Buyer with all right, title and interest of the Trustee to the Purchased Assets free and clear of any and all Encumbrances. Except as specifically provided in the Agreement or this Order, the Buyer shall not assume or become liable for any Encumbrances relating to the Purchased Assets being sold by the Debtor.

CC.    Except as may otherwise be provided in the Agreement or this Order, the transfer of the Purchased Assets to the Buyer free and clear of all Encumbrances will not result in any undue burden or prejudice to any holders of any Encumbrances as all such Encumbrances of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets received by the Trustee in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. Except as may otherwise be provided in the Agreement or this Order, all persons having Encumbrances of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Encumbrances against the Buyer, any of its assets, property, successors or assigns, or the Purchased Assets.

DD.     Except as may otherwise be provided in the Agreement or this Order, the Trustee may sell the Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Encumbrances and (ii) non-Debtor parties, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Encumbrances, with such Encumbrances being subject to treatment as prescribed by separate order of this Court.

### Cure under Designated Contracts; Adequate Assurance of Future Performance

EE.     The Trustee and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code. Pursuant to the terms and subject to the conditions of this Order and the Agreement, the Buyer shall, within the time period set forth in the Agreement, (i) cure or provide adequate assurance of cure of any undisputed default existing prior to the Closing under any of the assigned Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provide compensation or adequate assurance of compensation to any party other than the Trustee for any undisputed actual pecuniary loss to such party resulting from an undisputed default prior to the Closing under any of the assigned Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The Buyer has demonstrated adequate assurance of future performance with

respect to the Designated Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. The Designated Contracts are assignable notwithstanding any provisions contained therein to the contrary pursuant to section 365(f) of the Bankruptcy Code. The assumption and assignment of the Designated Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Chapter 7 estates, creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Trustee.

### No Successor Liability

FF. The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Chapter 7 estates, there is not substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or the Chapter 7 estates, and the Buyer does not constitute a successor to the Debtors or the Chapter 7 estates.

GG. Except as expressly set forth in the Agreement or this Order, the transfer of the Purchased Assets to the Buyer and assumption and assignment to Buyer of the Designated Contracts and the Assumed Liabilities by Buyer do not and will not subject the Buyer or any of its affiliates or subsidiaries to any liability by reason of such transfer under (i) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based in whole or part on, directly or indirectly, including without limitation, any theory of antitrust, environmental, products liability, successor or transferee liability, labor law, *de facto* merger or substantial continuity or (ii) any employment contract, understanding or agreement, including

without limitation collective bargaining agreements, employee pension plans or employee welfare or benefit plans.

HH.    Pursuant to the terms of the Agreement, the Buyer has agreed to assume certain liabilities of the Debtor Eclipse Aviation Corporation and the related Chapter 7 estate which are the subject of pending adversary proceedings described in Section 7.8 of the Asset Purchase Agreement, namely the adversary proceedings set forth on Schedule 7.8 (the "WIP Adversary Proceedings") and the adversary proceeding with Opinicus Corporation (the "Opinicus Adversary Proceeding"), those liabilities assumed by the Buyer are expressly limited to the obligations of the Chapter 7 estate to return to the Plaintiffs in those actions any property that is the subject of such actions, to the extent such rights, if any, are established by Final Order of the Court. Any claims against Buyer pursuant to those actions, shall be, and hereby are, limited to the obligation to return to the Plaintiffs, if such rights are established, any property which is part of the Purchased Assets and which the Court may later determine the Plaintiffs are entitled to possession of under applicable law. The Buyer shall not be liable for:  (1) specific performance;  or (2) any monetary claims against the Seller, including but not limited to, any claims to deposits or segregated funds.  The Buyer shall be substituted for the chapter 7 Trustee as a party in the adversary proceedings set forth on Schedule 7.8, or, as procedurally appropriate, and at the election of Buyer, shall be allowed to intervene, and shall have all rights, claims and defenses to which the Debtors, chapter 7 estates and/ or the Trustee could assert against the parties to those actions or the property which is the subject of those actions; however, that to the extent the Trustee or the Debtors shall remain a party to any of the adversary proceedings described above, the Trustee and the Debtors shall retain those rights, claims and defenses to the extent of any claims against Trustee or as otherwise agreed to between Buyer and Trustee.

II.     The sale contemplated by this Order is a sale of all or substantially all of the Estates' assets in a single sale pursuant to section 363 of the Bankruptcy Code, to which a majority of the Senior Secured Notes consent.

CONCLUSIONS OF LAW:

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:[5]

1.     The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.     Notice of the Sale Hearing was fair and adequate under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### Approval of Sale

3.     The sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), the bid by the Buyer and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

4.     The sale of the Purchased Assets and the consideration provided by the Buyer under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

5.     The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the

---

[5]     To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. See FED. R. BANKR. P. 7052.

transfer of the Designated Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

6.     The Trustee be, and hereby is, authorized and directed to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities and the assumption and assignment of the Designated Contracts, as may be necessary or appropriate to the performance of the Trustee's obligations as contemplated by the Agreement, without any further corporate action or orders of this Court. The Buyer shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.   The Buyer may consummate the transactions under the Agreement at any time after the entry of this Order (including immediately thereafter) by waiving all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close such transactions, without any notice to the Court, any pre-petition or post-petition creditor of the Debtors or any other party in interest.

7.     The Trustee is authorized and directed to deposit and hold in escrow the Cash Consideration (as defined in the Agreement), and furthermore to make distributions (i) first, from the Cash Consideration and (ii) second, from the Note Consideration (as defined in the Agreement) on the Closing Date as follows:

a.      The Trustee shall deposit $3.2 million in cash (the "Over and Out Escrow Amount") in a separate account. The replacement claims and liens pursuant to the Chapter 11 Final Cash Collateral Order (as defined below) and the Senior Secured Notes, the liens of the Alfred Mann Living Trust pursuant to the Chapter 11 Final DIP Order, as defined below, and the interests (if any) alleged by the Over and Out Plaintiffs (as defined below) in the Over and Out Action (as defined below), shall attach to the Over and Out Escrow Amount in the order of their priority. The Over and Out Escrow Amount shall be not be distributed, except in accordance with a final order of the Court resolving by settlement, dismissal or adjudication, the Adversary Proceeding No. 09-50029, commenced by Over and Out, Inc., Ocala Bedrock, Inc., The Kenneth and Shari Meyer Trust, Michael T. Flynn, Richard A. Smith, James Frisbie, Team Aircraft, Inc., Max J. Cohen, Joseph J. Rusin/Northwest Ohio International LLC, Shaun Hughes, Henry Orlosky, Peter Riechers, Peter Schultz, Management Tech LLC, Robert H. Yarbrough, Linde International, Inc., Davis Air, LLC, Julian MacQueen, Jeff Reynolds, K2 Jet, LLC, James Teng, Black Falcon Aviation & Consulting, LLC, Gulfstream Nautical, Dan Mudge, Gray & Co., Inc., The Gray Oil & Gas Company, Louisiana, N400EA, Richard Ryan, Michael Osbourne (the "Over and Out Plaintiffs") against Eclipse Aviation Corporation (the "Over and Out Action").

b.      The Trustee shall deposit $650,000.00 in cash (the "Tapia Escrow Amount") in a separate account. The replacement claims and liens pursuant to the Chapter 11 Final Cash Collateral Order (as defined below) and the Senior

Secured Notes, the liens of the Alfred Mann Living Trust pursuant to the Chapter 11 Final DIP Order, as defined below, and the interests (if any) alleged by the Tapia Plaintiffs (as defined below) in the Tapia Action (as defined below), shall attach to the Tapia Escrow Amount in the order of their priority. The Tapia Escrow Amount shall be not be distributed, except in accordance with a final order of the Court resolving by settlement, dismissal or adjudication, the Adversary Proceeding 09-50109, commenced by Javier Tapia And Alejandro Camou (the "Tapia Plaintiffs") against Eclipse Aviation Corp., Kings Road Investments Ltd., Citadel Investment Group, L.L.C., HBK Services, LLC, a/k/a HBK Master Fund L.P. (the "Tapia Action").

c.    The Trustee shall deposit $2,604,435.00 (the "Chapter 11 Professional Fee Amount") in a separate account (the "Professional Fee Escrow") for payment of fees and expenses of the chapter 11 professionals employed by the Debtors, including those fees and expenses approved by the *Omnibus Order Awarding Allowance of Compensation for Services Rendered and Reimbursement Of Expenses of Chapter 11 Professionals Employed in This Case* (the "Final Fee Order") [Docket No. 733]. The Trustee is directed to make distributions to those chapter 11 professionals whose fees and expenses were approved by the Final Fee Order from the Chapter 11 Professional Fee Escrow within five (5) business days of the Closing Date in the amounts allowed in accordance with the Final Fee Order, less any amounts previously paid to such chapter 11 professionals.

d.    The Trustee shall deposit $20,325.00 (the "U.S. Trustee Fee Amount") in a

separate account for payment of outstanding U.S. Trustee fees.

e. The Trustee shall deposit $636,250.00 (the "Trustee Compensation Reserve") in a separate account for payment of compensation to which the Chapter 7 Trustee may be entitled pursuant to section 326 of the Bankruptcy Code subject to further order of the Court.

f. The Trustee shall deposit $5,000.00 (the "Trustee Expense Reserve") in a separate account to reimburse him for his reasonable expenses subject to further order of the Court.

g. The Trustee shall deposit an amount sufficient to pay unpaid fees and expenses of professionals employed by the Chapter 7 Trustee in excess of the Chapter 7 Carve-Out (as defined in the Stipulation And Agreed Order Authorizing Limited Use Of Cash Collateral (with any extensions thereof, the "Chapter 7 Cash Collateral Order") [Docket no. 714] (the "Chapter 7 Professional Fee Amount") in a separate account to pay unpaid fees and expenses of professionals employed by the Chapter 7 Trustee after further order of this Court.

h. The Trustee shall deposit $100,000.00 (the "Closing Expense Reserve") in a separate account to be available without further order of the Court to pay any necessary post-closing obligations of the Trustee as Seller that are contemplated by the Agreement.

i. The Trustee shall deposit an amount sufficient to pay (i) any unpaid expense approved by the Cash Collateral Order, (ii) any fees and expenses of counsel to the Ad Hoc Committee of Secured Noteholders in excess of any amounts

payable pursuant to the Chapter 7 Cash Collateral Order that are incurred by the Ad Hoc Committee of Secured Noteholders through and including the Closing Date and (iii) any unpaid fees and expenses of counsel to the Collateral Agent under that certain Amended and Restated Security Agreement dated as of February 15, 2008. The Trustee is directed to pay the amounts set forth in subsections (ii) and (iii) of the previous sentence to such professionals as soon as practicably possible, and no later than, within 3 business days of the Closing Date; and

j.    The Trustee shall distribute as soon as practicably possible, and no later than within 3 business days of the Closing Date, the remainder of the Cash Consideration as follows: (i) first, to pay the amount due and owing to the Noteholders (as such term is defined in the Chapter 7 Cash Collateral Order) in connection with the Chapter 7 Cash Collateral Order, and (ii) second, to pay on a prorated basis the amount due and owing to (a) the Alfred Mann Living Trust pursuant to the Final Order Pursuant to 11 U.S.C. Sections 105, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness with Priority Over All Other Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens and (3) Modifying the Automatic Stay [Docket No. 230] (the "Chapter 11 Final DIP Order"), and (b) the Noteholders pursuant to the Final Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection [Docket No. 228] (the "Chapter 11 Final Cash Collateral Order"). Upon exhaustion

of the Cash Consideration, the Trustee shall next distribute the Note Consideration as follows: (i) first, to pay on a prorated basis the remainder of the amount due and owing to (a) the Alfred Mann Living Trust pursuant to the Chapter 11 Final DIP Order, and (b) the Noteholders pursuant to the Chapter 11 Final Cash Collateral Order on a prorated basis, until such amounts are paid in full, and (ii) second, with respect to any remaining Note Consideration, to pay to the Noteholders, the amount due and owing to the Noteholders pursuant to the terms of the Senior Secured Notes. Notwithstanding anything to the contrary in the preceding sentence, no later than within 3 business days after the Closing Date, $2,002,000.00 of the Note Consideration to be paid to the Alfred Mann Living Trust pursuant to the preceding sentence shall be held by the Trustee in escrow pending the resolution and/or settlement of the Over and Out Action and the Tapia Action as follows: (i) Note Consideration in the amount of $1,661,660.00 in connection with the Over and Out Action (the "Over and Out Action Note Consideration Reserve") and (ii) Note Consideration in the amount of $340,340 in connection with the Tapia Action (the "Tapia Action Note Consideration Reserve"). All interest due to the Alfred Mann Living Trust in connection with the $2,002,000.00 of the Note Consideration referred to in the preceding sentence will also be held in trust by the Trustee. Any amounts returned to the Trustee and/or the estate from the Over and Out Escrow Amount (as reduced by the amount of the legal fees and expenses incurred by the Noteholders and the Alfred Mann Living Trust in connection with the

litigation of the Over and Out Action) will be distributed by the Trustee as set forth for the distribution of Cash Consideration in section 7(j)(ii) within two (2) business days of the entry of a final order of the Court resolving by settlement, dismissal or adjudication the Over and Out Action; provided however that the amount that would have been distributed to the Noteholders pursuant to the Chapter 11 Final Cash Collateral Order under section 7(j)(ii)(b) shall be paid directly to the Noteholders as provided in the terms of the Senior Secured Notes. After such distributions, the Trustee shall distribute to the Alfred Mann Living Trust the Note Consideration from the Over and Out Action Note Consideration Reserve in an amount equal to the Over and Out Action Note Consideration Reserve minus the cash actually received by the Alfred Mann Living Trust in connection with the Over and Out Action. Any remainder of the Over and Out Action Note Consideration Reserve after giving effect to the preceding sentence shall be retained by the Trustee for distribution to the Noteholders pursuant to the terms of the Senior Secured Notes and this Order. Any amounts returned to the Trustee and/or the estate from the Tapia Escrow Amount (as reduced by the amount of the legal fees and expenses incurred by the Noteholders and the Alfred Mann Living Trust in connection with the litigation of the Tapia Action) will be distributed by the Trustee as set forth for the distribution of Cash Consideration in section 7(j)(ii) within two (2) business days of the entry of a final order of the Court resolving by settlement, dismissal or adjudication the Tapia Action; provided however that the amount that would have been

- 23 -

distributed to the Noteholders pursuant to the Chapter 11 Final Cash Collateral Order under section 7(j)(ii)(b) shall be paid directly to the Noteholders as provided in the terms of the Senior Secured Notes. After such distributions, the Trustee shall distribute to the Alfred Mann Living Trust the Note Consideration from the Tapia Action Note Consideration Reserve in an amount equal to the Tapia Action Note Consideration Reserve minus the cash actually received by the Alfred Mann Living Trust in connection with the Tapia Action. Any remainder of the Tapia Action Note Consideration Reserve shall be retained by the Trustee for distribution to the Noteholders pursuant to the terms of the Senior Secured Notes and this Order. Any funds held by the Trustee in escrow as stated above in subparagraphs 7(c) through 7(i), inclusive, that are not actually expended by the Trustee shall be distributed in accordance with subparagraph 7(j). All the Cash Consideration and the Note Consideration held by the Trustee pending distribution pursuant to this subsection shall continue to be subject to the liens and claims granted under the Chapter 7 Cash Collateral Order, the Chapter 11 Final Cash Collateral Order, the Chapter 11 Final DIP Order and the Senior Secured Notes, in order of their priority.

Pending distribution of the Cash Consideration the Trustee shall not commingle the Cash Consideration with any other of the Debtors' assets.

8.      The Trustee and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives and attorneys, are authorized and

empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. The Trustee shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Trustee is further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as the Trustee may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the

State of Delaware and all other applicable business corporation, trust and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

9. Effective as of the Closing, (a) the sale of the Purchased Assets by the Trustee to the Buyer shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, pursuant to section 363(f) of the Bankruptcy Code, except as otherwise provided in the Agreement or this Order, and (b) the assumption of any Assumed Liabilities by the Buyer shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

10. The sale of the Purchased Assets is not subject to avoidance, and no damages may be assessed against the Buyer or any other party, pursuant to section 363(n) of the Bankruptcy Code.

11. The Eclipse Production Certificate is an Excluded Asset and is not transferred to the Buyer via this sale. The Eclipse Production Certificate is not transferable. See 14 C.F.R. § 21.155. Further, per FAA regulations, a new production certificate will be issued only upon the Buyer's independent compliance with the requirements of 14 C.F.R. Part 21, Subpart G (14 C.F.R. §§ 21.131-21.165).

12. The Trustee is not selling, transferring, assuming, assigning, or otherwise conveying, and shall not sell, transfer, assume, deliver, assign or otherwise convey any of the

Curtiss-Wright IP (as defined in the limited objection of Curtiss-Wright Integrated Sensing, Inc. and Novatronics, Inc. to the Trustee's motion to sell assets [D.I. 805] (the "C-W Objection")) or the Contracts (as defined in the C-W Objection) by or through this Order, the Sale Motion or the Agreement (as defined in this Order) and related documents. Any and all rights, remedies and claims of (i) the Curtiss-Wright Companies (as defined in the C-W Objection) against the Debtors and the Chapter 7 Estates and (ii) the Debtors and the Chapter 7 Estates (including the right to seek attorneys' fees under the Contracts), are not affected by this Order and are expressly reserved and preserved with respect to the Curtiss-Wright IP and the Contracts.

13.     Notwithstanding anything in this Order or the Agreement to the contrary, the Purchased Assets purchased by the Buyer shall not include the P&WC Intellectual Property, as defined in the Limited Objection and Reservation of Rights With Respect To Sale Motion filed by Pratt & Whitney Canada Corp. ("P&WC") (Docket No. 799, filed 8/17/09). Certain P&WC Intellectual Property is contained on computers or other media which are part of the Purchased Assets, or may otherwise be accessible to the Buyer as a result of its purchase of the Purchased Assets. Pending negotiation of confidentiality and limited use license agreement with P&WC, Buyer shall preserve and protect the P&WC Intellectual Property in its current state and shall not use or disclose P&WC Intellectual Property for any purpose. Buyer's rights and obligations with respect to the P&WC Intellectual Property shall be as set forth in a letter agreement between P&WC and the Buyer dated August 19, 2009, or any agreement subsequently negotiated between P&WC and the Buyer.

14.     Notwithstanding any other provisions in the Agreement or this Order to the contrary, the objections of UT Finance Corporation (" UT Finance ") [D.I. 821] will not be deemed overruled on the merits and are hereby preserved in accordance with terms of the

reported settlement between the Trustee, UT Finance and the Buyer. The Trustee and the Chapter 7 Estates have assigned to the Buyer any all rights, claims and interests they have under those certain Air Taxi Financing Agreement between Eclipse Aviation Corporation and UT Finance Corporation, dated as of April 5, 2005; Air Taxi Financing Agreement by and among Eclipse Aviation Corporation, UT Finance Corporation and Pratt & Whitney Canada Corp., dated as of June 30, 2007 and all related agreements (the "UT Financing Agreements"); the Buyer, in accordance with the Asset Purchase Agreement, shall hold all rights, claims and interests of the Chapter 7 Estates and the Debtors in the UT Financing Agreements or related to the twenty-eight Eclipse 500 aircraft previously sold to DayJet Leasing LLC and currently in the custody of the Trustee (the "DayJet Aircraft"). Buyer shall otherwise have no affirmative obligation to expend funds or otherwise affirmatively to take any action pursuant to the UT Financing Agreements. Upon the Closing of the sale to the Buyer, UT Finance and the Trustee and the Chapter 7 Estates shall be deemed to have released each other from any and all claims under the UT Financing Agreements or otherwise related to the DayJet Aircraft; except that UT Finance may file a general, nonpriority, unsecured claim in the Chapter 7 proceedings and the Trustee's rights to object to any such claim shall be preserved.

15. Notwithstanding any other provisions in the Agreement or this Order to the contrary, the objections of SAP America, Inc. ("SAP") [D.I. 813] will not be deemed overruled on the merits, but will be deemed withdrawn based on the settlement reached by the parties as described herein. In connection with the assumption and assignment of the Designated Contract identified on Schedule 2.3 of the Agreement and described as the "Certified Business Solutions Provider End-User License Agreement" (the "SAP License Agreement"), the Trustee is authorized to assume and assign the SAP License Agreement to Buyer and the Trustee and

Buyer are authorized to execute any documents necessary to consummate the assumption and assignment of the SAP License Agreement. The assumption and assignment of the SAP License Agreement shall be conditioned on the following: (i) the Buyer shall pay or cause to be paid to SAP ten (10) days after the Closing an amount equal $63,308.37, which amount shall constitute the Cure Amount for the SAP License Agreement and (ii) the Trustee and Buyer shall execute and deliver a License Assignment Acknowledgment Agreement in a form that is acceptable to SAP. Other than the transfer of the License Agreement from the Trustee to Buyer upon satisfaction of the foregoing requirements, nothing contained in the Agreement or this Order shall modify the terms of the License Agreement or the respective rights of the parties thereto.

### Transfer of Purchased Assets

16. Except to the extent specifically provided in the Agreement or this Order, upon the closing the Trustee shall be, and hereby is, authorized, empowered and directed, pursuant to sections 105 and 363(b) of the Bankruptcy Code, to sell the Purchased Assets to the Buyer. Except with respect to the Assumed Liabilities and except as otherwise provided in this Order, the sale of the Purchased Assets shall vest Buyer with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Encumbrances and other liabilities and claims to attach only to the proceeds of the sale (if any) with the same priority, validity, force and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and

defenses the Debtors may possess with respect thereto. Following the Closing Date, no holder of any Encumbrance in the Purchased Assets shall interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Encumbrance, or any actions that the Trustee may take in the chapter 7 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order. To the extent provided for in the Agreement, any and all of the Debtors' security deposits, or other security held by landlords, lessors and other counterparties to the contracts, leases and licenses that are to be assumed and assigned under the Agreement are being transferred and assigned to, and shall be the property of, the Buyer from and after the Closing, which transfer and assignment of security deposits, other deposits or security shall satisfy in full the requirements of section 365(l) of the Bankruptcy Code for all contracts, leases, and licenses assumed and assigned pursuant to this Order or the Agreement.

17. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Encumbrances, other than Assumed Liabilities, shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Trustee and the Buyer, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Trustee or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order. Moreover, effective as of the Closing, the Buyer, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Buyer, its

successors and assigns, to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof, and from time to time to institute and prosecute in the Debtors' name, for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets which the Buyer, its successors and assigns, shall deem desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

18.    On or before the Closing Date, all parties holding Encumbrances of any kind are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances in or against the Purchased Assets shall not have delivered to the Trustee prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Encumbrances that the person or entity has with respect to the Purchased Assets, the Trustee is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Buyer is authorized to execute and file such documents after Closing.

19.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Trustee with respect to the Purchased Assets, and

all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

20.     All of the Debtors' interests in the Purchased Assets to be acquired by the Buyer under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Buyer under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Buyer, subject to the Assumed Liabilities.

21.     Except as expressly provided in the Agreement or this Order, the Buyer is not assuming nor shall it or any affiliate or subsidiary of Buyer be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate or subsidiary of the Buyer.

22.     With respect to the WIP Adversary Proceedings and the Opinicus Adversary Proceeding, those liabilities assumed by the Buyer are expressly limited to the obligations of the chapter 7 estate to return to the Plaintiffs in those actions any property that is the subject of such

action, to the extent such rights, if any, are established by Final Order of the Court. Any claims against Buyer pursuant to those actions, shall be, and hereby are, limited to the obligation to return to the Plaintiffs, if such rights are established, any property which is part of the Purchased Assets and which the Court may later determine the Plaintiffs are entitled to possession of under applicable law. The Buyer shall not be liable for: (1) specific performance; or (2) any monetary claims against the Seller, including but not limited to, any claims to deposits or segregated funds. The Buyer shall be substituted for the chapter 7 Trustee as a party in the adversary proceedings set forth on Schedule 7.8 and the Opinicus Adversary Proceeding or, as appropriate, and at the election of Buyer, shall be allowed to intervene, and shall have all rights, claims and defenses to which the Debtor, chapter 7 estates and/ or the Trustee could assert against the parties to those actions or the property which is the subject of those actions; however, that to the extent the Trustee or the Debtors shall remain a party to any of the adversary proceedings described above, the Trustee and the Debtors shall retain those rights, claims and defenses to the extent of any claims against Trustee or as otherwise agreed to between Buyer and Trustee. Notwithstanding anything in this Order, the Agreement or any other order in these Bankruptcy Cases to the contrary, no aspect of the transactions authorized herein shall impair, substantively or procedurally, the prosecution of the claims in the WIP Adversary Proceedings or the Opinicus Adversary Proceeding in the context of the pending adversary proceeding, other than the specific limitation of the Buyer's obligations set forth above. Buyer acknowledges that Maverik may be entitled to possession of the aircraft under its first claim for relief if the Court finds in its favor in the pending adversary proceeding, although it would not be entitled to a complete judgment of specific performance for any assembly or production work to be performed on the aircraft. Before and after the consummation of the transactions authorized herein, the Plaintiffs in the WIP Adversary Proceedings shall have the right to inspect the

property that is the subject of such proceedings, under reasonable conditions and upon reasonable notice to both the Trustee and the Buyer, and after execution of a nondisclosure agreement. The Buyer shall include the Equipment (as defined in the Opinicus Adversary Proceeding) which are, in part, the subject of the Opinicus Adversary Proceeding, in its insurance coverage. The Buyer shall not operate, transfer or share the Equipment (or the intellectual property contained therein, if any) absent further order of the Court. Opinicus, the Plaintiff in the Opinicus Adversary Proceeding, shall have no obligation to turn over any intellectual property relating to the Equipment absent further order of the Court.

23. Except as otherwise provided in the Agreement, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

24. Except as otherwise expressly provided in the Agreement or this Order, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

25. Notwithstanding anything in this Order or the Agreement to the contrary: (a) the Purchased Assets purchased by the Buyer shall include approximately 712,690 pounds of inventory owned by one or more of the Debtors (the "Eclipse Owned TW Inventory") and warehoused by TW Metals, Inc. ("TW"); (b) promptly following the closing of the Agreement, Buyer shall retrieve from TW (upon at least two weeks prior written notice, during regular business hours and at a date and time acceptable to TW) all of the Eclipse Owned TW Inventory and Buyer shall be responsible for all attendant costs, expenses and transportation associated

with Buyer's retrieval of such inventory from TW's warehouse; and (c) if Buyer fails to retrieve the Eclipse Owned TW Inventory at Buyer's expense within ninety (90) days following the closing of the Agreement (or such later date to which TW and Buyer may hereafter agree), TW shall be relieved of any further obligation to store, hold, warehouse, protect, account for, or otherwise safeguard such inventory and may abandon or otherwise dispose of such inventory.

## Designated Contracts

26.    Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Trustee of the Designated Contracts and the sale and assignment of such agreements to the Buyer, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.

27.    The Designated Contracts shall be deemed valid and binding and in full force and effect and assumed by the Trustee and sold and assigned to the Buyer at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to (a) the payment by Buyer of all cures required to assume and assign the Designated Contracts to the Buyer as provided in this Order and the Agreement; and (b) the Buyer's right to exclude Designated Contracts from the definition of Designated Contracts in accordance with the terms of the Agreement. To the extent the Buyer excludes any Designated Contracts from the definition of Designated Contracts, the Trustee shall file a revised Schedule 2.3 to the Agreement with the Court and provide proper and adequate notice thereof.

28.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Designated Contract. The Trustee shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

29.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, pursuant to the terms and subject to the conditions of this Order and the Agreement, within the time period provided in the Agreement, or as otherwise provided in this Order or agreed to between Buyer and any party to a Designated Contract, the Buyer shall pay or cause to be paid to the parties to any Designated Contracts the requisite Cure Amounts, if any, set forth in the notice served by the Trustee on each of the parties to the Designated Contracts, except to the extent that a cure amount was amended on the record of the Sale Hearing (the "Cure Amounts"), following the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the notice served by the Trustee, or the amounts set forth on the record of the Sale Hearing, as the case may be, and the non-Debtor parties to the Designated Contracts are forever bound by such Cure Amounts.

30.     Notwithstanding anything to the contrary herein, the Cure Amount for the June 21, 2004 Agreement between Eclipse Aviation Corporation and Southwest Research Institute ("SwRI"), as amended by subsequent purchase agreements (collectively the"Contract"), (i) is set at $360,697.08, (ii) must be paid by the Buyer before SwRI shall be required to resume any performance under the Contract, and (iii) pursuant to the Contract SwRI shall retain possession of the $300,000 it holds (and in which it has possessory liens and security interests) under the Contract and apply the $300,000 to the last invoice applicable to the Contract.

31.     All defaults or other obligations under the Designated Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts.

32.     Any provision in any Designated Contract that purports to declare a breach,

default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Designated Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Designated Contract that purport to provide for additional payments, penalties, charges or other financial accommodations in favor of the non-Debtor third party to the Designated Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Designated Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Designated Contract. The non-Debtor party to each Designated Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the rights and benefits under each such Designated Contract as of the applicable date of assumption without the necessity of obtaining each such non-Debtor party's written consent to the assumption or assignment thereof.

33.     The Buyer has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Designated Contracts.

34.     The Debtors and the Chapter 7 estates shall be relieved of any liability for any breach of any of the Designated Contracts occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

35.     Notwithstanding anything else in this Order, that certain real property described and identified as the "Eclipse Tract" in the Special Warranty Deed (the "Deed") recorded

January 20, 2005 as document no. 2005009859, in Bk-A90, Pg-9831, in the Office of the County Clerk of Bernalillo County, New Mexico (Recording and Filing Department), a copy of which Deed is attached hereto as "Exhibit 3", shall only be sold or transferred subject to the right of reversion (the "Right of Reversion") retained by Ranch Joint Venture, LLP ("Ranch") as described in the Deed. The date after which the Right of Reversion may be exercised under the circumstances set forth in the Deed has been extended to January 15, 2013 by notice to Ranch properly provided in accordance with the Deed. Notwithstanding the foregoing two sentences, Eclipse and Ranch further agree five acres of the Eclipse Tract on which there is currently situated a flight training/simulator center (the "Flight Training Parcel"), identified as Tract D-1-A-2 on Plat of Tracts D-1-A-1, D-1-A-2, and S-1-A of Amended Bulk Land Plat For Aerospace Technology Park Within Section 36, Township 11 North, Range 1 East and Section 3, Township 10 North, Range 1 East City of Albuquerque Bernalillo County, New Mexico, June 2007, is not subject to Ranch's Right of Reversion and is owned free and clear of the Right of Reversion. The option of Ranch to purchase the Eclipse Tract set forth in the Deed shall not be deemed to be triggered by reason of the bankruptcy filing of Eclipse Aviation Corporation or the transfer of the Eclipse Tract to Buyer.

36.     Notwithstanding any other provisions in the Agreement or this Order to the contrary, the objections of Qwest Corporation and Qwest Communications Corporation (collectively, "Qwest ") [D.I. 810] will not be deemed overruled on the merits and shall be preserved in all respects pending further Order of the Court. In connection with the assumption and assignment of the Designated Contracts, Buyer shall be afforded an additional period expiring on August 31, 2009 to designate any contracts or accounts with Qwest for assumption and assignment and serve Qwest with notice of such designation. Qwest shall thereafter have ten

(10) days within which to file any objections to the proposed assumption and assignment of the Qwest contracts. The Court shall schedule a further hearing on any proposed assumption and assignment of the Qwest contracts, or, alternatively, the rights of the Chapter 7 estates, if any, in and to the telephone, telex and telephone facsimile numbers related to the Qwest contracts as referred to in the Qwest objection.

37.     Notwithstanding any other provisions in the Agreement or this Order to the contrary, in connection with the assumption and assignment of the Designated Contracts, Parametric Technology Corporation shall be afforded an additional period expiring on September 9, 2009 to object to any contracts designated by Buyer for assumption and assignment. The Court shall schedule a further hearing on any objection.

## Additional Provisions

38.     Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

39.     The Buyer has not assumed and is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Agreement, or as otherwise provided in this Order, and the Buyer has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against any of the Buyer, its affiliates and subsidiaries or the Purchased Assets to recover any Encumbrance or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement or as otherwise provided in this Order. All persons holding or asserting any Encumbrance in the

Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrance or cause of action against any of the Buyer, its affiliates, and subsidiaries or the Purchased Assets for any liability associated with the Excluded Assets.

40.     The Buyer is not a "successor" to the Debtors or the Chapter 7 estates by reason of any theory of law or equity, and the Buyer, its affiliates and subsidiaries shall not assume, nor be deemed to assume, nor in any way be responsible for any liability or obligation of any of the Debtors and/or the Chapter 7 estates including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the Agreement. Neither the purchase of the Purchased Assets by the Buyer or its affiliates or subsidiaries, nor the fact that the Buyer or its affiliates or subsidiaries are using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer or any of its affiliates or subsidiaries to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, and the Buyer, its affiliates and subsidiaries shall have no liability or obligation on account of any of the foregoing. Buyer and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. § 210 *et seq.*) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

41.     Except to the extent expressly provided in this Order or included in the Assumed

Liabilities, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, any claimant asserting a products liability claim, trade and other creditors asserting or holding an Encumbrance of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Buyer, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrance or other liability against the Buyer or any affiliate, subsidiary, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity) or the Purchased Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, the Chapter 7 estates, successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in and only in accordance with the terms of the Agreement.

42.    Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Trustee, the Ad Hoc Committee and the Buyer without further action or order of the Court; provided, however, that any such waiver, modification, amendment or supplement is not material and substantially conforms to and effectuates the Agreement and any related Agreement.

43.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

44.     The failure specifically to include any particular provisions of the Agreement or any related Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Trustee and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing. To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, the terms and conditions of the Agreement shall govern and control. Nothing in this Order shall alter or amend the Agreement and the obligations of the Trustee and Buyer thereunder.

45.     This Order and the Agreement shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any successor chapter 7 trustee hereinafter appointed for the Chapter 7 estates, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. All Encumbrances against the Chapter 7 estates of record as of the Closing shall forthwith be removed and stricken as against the Purchased Assets, without further order of the Court or act of any party. Upon Closing, the entities listed above in this paragraph are authorized and directed to strike all such recorded Encumbrances against the Purchased Assets as provided for herein from their records, official and otherwise. Each and every federal, state and local

governmental agency, unit or department are hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Purchased Assets to the Buyer, and such agency, unit or department may rely upon this Order in consummating the transactions contemplated by the Agreement.

46.     The provisions of this Order are non-severable and mutually dependent.

47.     Nothing in any order of this Court shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

48.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Trustee and the Buyer are free to close under the Agreement at any time, subject to the terms of the Agreement. If, in the absence of any person or entity obtaining a stay pending appeal, the Trustee and the Buyer close under the Agreement, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

49.     This Order may be recorded by the Buyer in any registry or government office.

50.     This Court shall retain jurisdiction even after the closing of these chapter 7 cases to:

        a.     Interpret, implement and enforce the terms and provisions of this Order, the Procedures Order, and the Agreement, all amendments thereto and any waivers or consents thereunder and each of the Agreement executed in connection therewith in all respects;

b.     Decide any disputes concerning this Order, the Agreement or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Designated Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Encumbrances;

c.     Protect the Buyer or any of the Designated Contracts or Purchased Assets against any of the Encumbrances as provided herein including, without limitation, to enjoin the commencement or continuation of any action seeking to impose successor liability or bulk sale liability;

d.     Enter orders in aid or furtherance of the transactions contemplated by the Agreement or to ensure the peaceful use and enjoyment of the Designated Contracts or the Purchased Assets by the Buyer;

e.     Compel delivery of all Purchased Assets to the Buyer;

f.     Adjudicate any and all remaining issues concerning the Trustee's right and authority to assume and assign the Designated Contracts and the rights and obligations of the Debtors and the Buyer with respect to such assignment and the existence of any default under any such Designated Contract;

g.     Adjudicate any and all disputes concerning alleged pre-Closing Encumbrances in and to the Purchased Assets including without limitation the extent, validity, enforceability, priority, and nature of any and all such

alleged Encumbrances; and

h.   Adjudicate any and all disputes relating to the Trustee's right, title or interest

in the Purchased Assets and the proceeds thereof.


Dated: August ___28___, 2009
Wilmington, Delaware

_Mary F. Walrath_
The Honorable Mary F. Walrath
United States Bankruptcy Judge