# Schedule 4.5

# Intellectual Property

**PATENT – Foreign**

|  | Country | Application /Patent No. | Title |
|---|---|---|---|
| 154494-0048 | Japan | 2004527783 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0089 | Japan | 2007551432 | Fire Suppression Systems |
| 154494-0093 | Japan | 517468/98 /3868500 | Labile Bromine Fire Suppressants |
| 154494-0051 | Australia | 2003258106 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0083 | Australia | 1996073952 | Labile Bromine Fire Suppressants |
| 154494-0084 | Australia | 2006204755 | Fire Suppression Systems |
| 154494-0058 | Spain | 03784945.2 EP1556186 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0059 | Italy | 03784945.2 EP1556186 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0060 | United Kingdom | 03784945.2 EP1556186 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0061 | France | 03784945.2 EP1556186 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0062 | Germany | 03784945.2 EP1556186 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
|  | **European Patent Office** | **EP1861174** | **Fire Suppressant Systems** |
| 154494-0077 | Germany | 69608707.3 EP0932432 | Labile Bromine Fire Suppressants |
| 154494-0078 | United Kingdom | 96936260.7 EP0932432 | Labile Bromine Fire Suppressants |
| 154494-0079 | France | 96936260.7 EP0932432 | Labile Bromine Fire Suppressants |

| | Country | Application /Patent No. | Title |
|---|---|---|---|
| 154494-0080 | Netherlands | 96936260.7 EP0932432 | Labile Bromine Fire Suppressants |
| 154494-0081 | Belgium | 96936260.7 EP0932432 | Labile Bromine Fire Suppressants |
| 154494-0082 | Switzerland | 96936260.7 EP0932432 | Labile Bromine Fire Suppressants |
| 154494-0050 | Russia | 2005106228 RU2325981 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0091 | Russia | 2007130445 | Fire Suppression Systems |
| 154494-0053 | China | 03819156.3 | Method of Friction Stir Welding |
| 154494-0086 | China | 200680002236.2 | Fire Suppression Systems |
| 154494-0098 | Hong Kong | 08105868.0 | Fire Suppression Systems |
| 154494-047 | Israel | 166643 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0088 | Israel | 183869 | Fire Suppression Systems |
| 154494-0049 | Korea | 10-2005-7002026 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |
| 154494-0090 | Korea | 1020077015807 | Fire Suppression Systems |
| 154494-0085 | Canada | 2,591,669 | Fire Suppression Systems |
| 154494-0052 | Canada | 2,494,143 | Method of Welding, by Using for Example Friction Stir Welding Surfaces with Polymer Sealant and Welded Structure |

**PATENT – USA**

| | Country | Application /Patent No. | Title |
|---|---|---|---|
| 154494-0030 | USA | 08/897,771/ 5,957,405 | Twin Engine Aircraft |
| 154494-0031 | USA | 08/898,138/ 6,089,504 | Single Engine Aircraft |
| 154494-0032 | USA | 09/132,273/ 6,199,795 | Twin Engine Aircraft |
| 154494-0033 | USA | 09/143,047/ 6,170,780 | Twin Engine Aircraft |

|  | Country | Application /Patent No. | Title |
|---|---|---|---|
| 154494-0034 | USA | 10/635,829/ 7,225,966 | Welded Joints with Polymer Sealant |
| 154494-0044 | USA | 11/331,524 2006/60273223 | Fire Suppression Systems |
| 154494-0065 | USA | 11/427,783 2007/0119602 | Fire Suppression Systems |
| 154494-0066 | USA | 11/456,548 2007/0119603 | Fire Suppression Systems |
| 154494-0074 | USA | 08/423,209/ 5,626,786 | Labile Bromine Fire Suppressants |
| 154494-0095 | USA | 11/929,743 2008/0115950 | Fire Suppression Systems |

## TRADEMARK

| Country | Mark | Date of Filing | App. No./ Reg. No. |
|---|---|---|---|
| Australia | ECLIPSE AVIATION AUSTRALIA | 9/25/01 | 890219 |
| Australia | EAA ECLIPSE AVIATION AUSTRALIA & Design | 9/25/01 | 890220 |
| Australia | ECLIPSE AVIATION & Design | 4/15/2004 | 998221 |
| Australia | ECLIPSE AVIATION | 4/15/2004 | 998230 |
| U.S. | ECLIPSE | 1/20/00 | 75/899,693 3,557,904 |
| U.S. | JETCOMPLETE | 7/12/05 | 78/669,039 3,525,722 |
| U.S. | ECLIPSE | 10/9/06 | 77/017,234 |
| India | ECLIPSE | 6/19/08 | **1701261** |
| India | ECLIPSE 500 | 6/19/08 | **1701262** |
| India | Design Only (Airplane Design) | 6/19/08 | **1701263** |
| Uruguay | ECLIPSE | 5/12/06 | 370,856 |
| U.S. | PHOSTREX | 5/23/05 | 3,469,367 |
| U.S. | ECLIPSE 500 | 10/9/06 | 77/017249 |
| U.S. | ECLIPSE 500 | 10/11/00 | 3,373,394 |
| U.S. | Design Only (Circles) | 8/15/00 | 2,992,733 |
| U.S. | ECLIPSE 500 JET | 5/11/00 | 3,373,395 |
| U.S. | ECLIPSE AVIATION | 2/3/00 | 3,169,023 |

**Schedule 5.2**

**Brokers and Finders**

**None.**

# Schedule 7.8

## WIP Adversaries

| Adversary Proceeding No. | |
|---|---|
| 08-51891-MFW | Mata et al v. Eclipse Aviation et al |
| 08-51904-MFW | Vermeer Manufacturing Company v. Eclipse Aviaion Corporation et al |
| 09-50027-MFW | Alpha-Airways GMBH v. Eclipse Aviation Corporation et al |
| 09-50028-MFW | La Scogliera, S.p.A, an Italian Corporation v. Eclipse Aviation Corp. |
| 09-50030-MFW | Maverik, Inc. v. Eclipse Aviation Corporation et al |

**Schedule 8.2(e)**

**Governmental Consents**

**Schedule A-1**

**Excluded Contracts**

1.  Amended and Restated Shareholders Agreement, among Eclipse Aviation Corporation and certain Shareholders, dated as of June 8, 1999, as amended and restated on February 15, 2008.

2.  Any Purchase Agreements related to any equity or security in Eclipse Aviation Corporation.

3.  Note, Conversion Share and Redemption Equity Warrants Subscription Agreement by and between Eclipse Aviation Corporation and certain Investors, dated as of May 26, 2006.

4.  Third Amended and Restated Intercreditor Agreement, among Bank of New York and Eclipse Aviation Corporation, dates as May 31, 2006.

5.  Security Agreement by Bank of New York, Eclipse Aviation Corporation, dates as of March 15, 2007.

6.  Collateral Agent Agreement, by Bank of New York, Eclipse Aviation Corporation and certain Lenders, dates as of March 13, 2007.

7.  Accession Agreement, among Bank of New York and Eclipse Aviation Corporation, dated as of March 31, 2006.

8.  Convertible Loan Agreement, among Eclipse Aviation Corporation and Alfred E. Mann Living Trust, dated as of July 29, 2008.

9.  Promissory Note, by Eclipse Aviation Corporation, dated as of August [__], 2008.

10. Convertible Loan Agreement, among Eclipse Aviation Corporation and ETIRC Aviation S.a.r.l., dated as of August [__], 2008.

11. Warrant to Purchase Series A Common Stock of Exlipse Aviation Corporation, by Eclipse Aviation Corporation and Roel Pieper, dated as of August [__], 2008.

12. Limited Waiver of Change of Control Redemption Provision by Parker [_____] LP. dated as of August 1, 2008.

13. Limited Waiver of Change of Control Redemption Provision by Daniel J. McElroy, dated as of August 4, 2008.

14. Limited Waiver of Change of Control Redemption Provision by JBJK Investments, LLC, dated as of August 4, 2008.

15. Limited Waiver of Change of Control Redemption Provision by Richard Novel, dated as of August 1, 2008.

16. Limited Waiver of Change of Control Redemption Provision by Lars Thuesen, dated as of August 1, 2008.

17. Limited Waiver of Change of Control Redemption Provision by Texas Eclipse Group, dated as of August 7, 2008.

18. Limited Waiver of Change of Control Redemption Provision by Melinda Mason, dated as of August 4, 2008.

19. Limited Waiver of Change of Control Redemption Provision by Monte Ahuja Family Trust and Usha Ahuja Family Trust, dated as of August 6, 2008.

20. Limited Waiver of Change of Control Redemption Provision by Robert A. Mittledorf, Peggy A. Mittledorf TTE FBO the Mittledorf Family Trust, dated as of August 5, 2008.

21. Limited Waiver of Change of Control Redemption Provision by Brian L. Mittledorf, dated as of August 5, 2008.

22. Limited Waiver of Change of Control Redemption Provision by Irell & Manella LLP, dated as of August 5, 2008.

23. Limited Waiver of Change of Control Redemption Provision by William Luterman, dated as of August 5, 2008.

24. Limited Waiver of Change of Control Redemption Provision by Jeffrey M. Rubenstein, dated as of July 30, 2008.

25. Limited Waiver of Change of Control Redemption Provision by Rapid Prototypes, Inc. dated as of August 5, 2008.

26. Limited Waiver of Change of Control Redemption Provision by Klaburde Revocable Trust, dated as of July 31, 2008.

27. Limited Waiver of Change of Control Redemption Provision by Lloyd Marcum DDS Inc. Profit Sharing Plan, dated as of July 30, 2008.

28. Limited Waiver of Change of Control Redemption Provision by Brook J. Lenfest, dated as of August 1, 2008.

29. Limited Waiver of Change of Control Redemption Provision by Global Light Industrial, Inc., dated as of July 31, 2008.

30. Limited Waiver of Change of Control Redemption Provision by Sand Hill Sakura Fund, LP, dated as of August 1, 2008.

31. Limited Waiver of Change of Control Redemption Provision by Eric M. Kobern, dated as of July 31, 2008.

32. Limited Waiver of Change of Control Redemption Provision by James Teng, dated as of [_____].

33. Amended and Restated Security Agreement made by Eclipse IRB Sunport LLC in favor of the Bank of New York, dated as of February 15, 2008.

34. Second Amendment to Mortgage with Assignment of Rents and Fixture Filling, by and between Eclipse Aviation Corporation and the Bank of New York, dated as of February 15, 2008.

35. Fourth Accession Agreement, by the Bank of New York and Eclipse Aviation Corporation, dated as of February 15, 2008.

36. Amended and Restated Shareholders Agreement, by Eclipse Aviation Corporation and certain Investors named therein, dated as of February 15, 2008.

37. J-1 and J-2 Preferred Stock Subscription Agreement, by and between ETIRC Aviation S.a.r.l. and Eclipse Aviation Corporation, dated as of January 17, 2008.

38. Joinder Agreement to Amended and Restated Shareholders Agreement by ETIRC Aviation S.a.r.l., dated as of June 8, 1999.

39. Exchange Agent Agreement, by Eclipse Aviation Corporation and accepted be The Bank of New York Trust Company, N.A., dated as of January 17, 2008.

40. Exchange Offer Agreement by and among Eclipse Aviation Corporation, Kings Road Investments Ltd., Citadel Horizon S.a.r.l. and HBK Master Fund L.P., dated as of February 12, 2008.

41. July 2008 Restructing Agreement by and among Eclipse Aviation Corporation, ETIRC Aviation S.a.r.l., Alfred E. Mann as defined therein, and the Consenting Holders as defined therein, dated as of July 28, 2008.

42. Air Taxi Financing Agreement between Eclipse Aviation Corporation and UT Finance Corporation, dated as of April 5, 2005.

43. Air Taxi Financing Agreement by and among Eclipse Aviation Corporation, UT Finance Corporation and Pratt & Whitney Canada Corp., dated as of June 30, 2007.

44. Option Agreement to Subscribe Shares of Capital of ETIRC Aviation S.a.r.l. between Eclipse Aviation Corporation and ETIRC Aviation S.a.r.l., dated as of May 9, 2008.

45. Option and Factory Extenstion Agreement between ETIRC Aviation S.a.r.l. and Eclipse Aviation Corporation, dated as of June 30, 2008, to extend the Memorandum of Understanding between ETIRC Aviation S.a.r.l. and Eclipse Aviation Corporation, dated as of December 15, 2007.

46. Distributor Agreement between Eclipse Aviation Corporation and ETIRC Aviation Cyprus Ltd., dated as of September 17, 2007.

47. Confidentiality and Non-Disclosure Agreement by and among Eclipse Aviation Corporation, ETIRC Aviation Cyprus Ltd., and ETIRC Aviation S.a.r.l., dated as of September 17, 2007.

48. Eclipse 500 Fleet Aircraft Purchase Agreement between ETIRC Aviation Europe and Eclipse Aviation Corporation, dated as of January 12, 2006.

49. Pilot Training Services Agreement between Eclipse Aviation Corporation and United Air Lines, Inc., dated as of November 11, 2004, as terminated by Eclipse Aviation Corporation and United Air Lines, Inc. by the Amendment to Agreement – Pilot Training Services, dated as of February 15, 2007.

50. Aircraft Lease Agreement between Eclipse Aviation Corporation and Vern Raburn, dated as of August 27, 2008.

51. Severance Agreement and General Release between Vern Raburn, Eclipse Aviation Corporation and ETIRC Aviation S.a.r.l., dated as of July 25, 2008, as amended by Vern Raburn and Eclipse Aviation Corporation by the Amendment to Severance Agreement and General Release, dated as of August 27, 2008.

52. Letter Agreement between Vern Raburn, King Road Investments, Ltd., Citadel Horizons S.a.r.l., and HBK Master Fund, L.P., dated as of July 28, 2008.

53. Severeance Agreement and General Release between Chris Herzog and Eclipse Aviation, Inc., dated as of October 31, 2004.

54. Severance Agreement and General Release between Eugene Garnes and Eclipse Aviation, Inc., dated as of December 30, 2006.

55. Severance Agreement and General Release between Don Taylor and Eclipse Aviation, Inc., dated as of November 5, 2007.

56. Severance Agreement and General Release between William Bonder and Eclipse Aviation, Inc., dated as of June 7, 2008.

57. Employment Agreement between Eclipse Aircraft Corporation and Oliver Masefield, dated as of July 1, 2001.

58. Employment Agreement between Eclipse Aviation Corporation and J. Mark Borseth, dated as of June 11, 2008.

59. Bonus Letter from Eclipse Aviation Corporation to J. Mark Borseth, dated as of August 25, 2008.

60. Bonus Letter from Eclipse Aviation Corporation to Michael McConnell, dated as of August 25, 2008.

61. Bonus Letter from Eclipse Aviation Corporation to Peg Billson, dated as of August 25, 2008.

62. All Contracts relating to the Jet Complete Program.

63. All Contracts with Irell & Manella LLP.

64. All Contracts with International Business Machines.

65. All Contracts with BAE Systems.

66. All Contracts with Mach 2 Management, Inc.

67. All Contracts with Unifist Corporation.

68. All Contracts with Albuquerque Isotopes.

69. All Contracts with Productivity Team LLC.

70. All Contracts with Wexler & Walker Public Policy Association.

71. All Contracts with Castle & Cooke Aviation Services, I.

72. All Contracts with Gallagher & Kennedy.

73. All Contracts with The Santa Fe Opera.

74. All Contracts with Pool Aviation.

75. All Contracts with Jack Harrington.

76. Contract with Axon Solutions Inc.

77. License and Cooperation Agreement with Jeppesen Sanderson Inc.

78.   Subject to Section 2.3(b) of the Agreement, any Contract not identified as a Designated Contract or a Pending Designated Contract shall be deemed on Excluded Contract.

**Schedule A-2**

**Excluded Leases**

1.  Sublease between Castle & Cooke Aviation Services Inc. and Eclipse Aviation Corporation, dated as of December 1, 2006 pertaining to 7415, 7501, 7530 and 7405 Hayvenhurst Place, Van Nuys, California.

2.  Memorandum of Agreement between Lian Tien Ventures, LLC and Eclipse Aviation Corporation, dated as of June 14, 2007.

3.  Lease between SKAR, LLC and Eclipse Aviation Corporation, dated as of February 28, 2008 pertaining to 2811 Karsten Court SE, Albuquerque, New Mexico.

4.  Sub-Lease between Bode Aero Services, Inc. and Eclipse Aviation Corporation, dated as of September 1, 2007 pertaining to 7401 Paseo Del Volcan NW, Albuquerque, New Mexico.

5.  Subject to Section 2.3(b) of the Agreement, any Lease not identified as a Designated Contract or a Pending Designated Contract shall be deemed to be an Excluded Lease.

**Exhibit A**

**Bidding Procedures Order**

**(see attached)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*, | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## ORDER (A) APPROVING BID PROCEDURES RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) BREAK UP FEE; (C) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING THE FORM AND MATTER OF NOTICES; (D) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; AND (E) GRANTING RELATED RELIEF

Upon the Motion[1], dated July __, 2009 (the "Sale Motion"), of Jeoffrey L. Burtch, as the

Chapter 7 trustee (the "Trustee") of the above-captioned debtors (collectively, the "Debtors") for

the entry of an order (A) approving bid procedures which are attached as Exhibit 1 hereto (the

"Bid Procedures") with respect to the proposed sale of substantially all of the Debtors' assets, as

more fully set forth in that certain asset purchase agreement (the "Agreement") dated as of July

__, 2009 by and between the Trustee and Eclipse Aerospace, Inc. ("Buyer"); (B) scheduling a

hearing (the "Sale Hearing") and approving the form and manner of notice of the Auction and

the Bid Procedures; (C) establishing procedures relating to the assumption and assignment of

certain Designated Contracts, including notice of proposed cure amounts; and (D) granting

related relief; and the Court having determined that, to the extent set forth herein, the relief

requested in the Motion is in the best interests of the Debtors, the Chapter 7 estates, creditors and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below), or in the Bid Procedures (defined below).

other parties in interest; due and appropriate notice of the Motion and the relief requested therein was provided by the Trustee pursuant to Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014 on the following parties: (i) all entities known to assert any interest in or lien upon the Purchased Assets; (ii) all parties to Designated Contracts; (iii) all parties that are entitled to notice under Bankruptcy Rule 2002; (iv) the attorneys general of all states in which the Purchased Assets are located; (v) the Office of the United States Trustee; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service and any governmental taxing authority that has filed a claim against the Chapter 7 Estates; (viii) all entities that expressed to the Seller an interest in purchasing the Purchased Assets; (ix) any party appearing in the Bankruptcy Cases and claiming a secured interest in the Purchased Assets; or any party known to the Seller and claiming a secured interest in the Purchased Assets; and (x) any and all other parties directed by the Court (collectively, the "Notice Parties"); and after consideration of the Sale Motion to the extent of the relief granted herein; and the remainder of the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

FOUND, CONCLUDED, AND DECLARED THAT:[2]

    A.    The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    B.    Notice of the Hearing, the Motion and proposed entry of this Order has been provided to the Notice Parties. Under the urgent circumstances, requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Rules 2002, 4001, 6004, 6006 and 9014, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, Bankruptcy Code § 102(1), and no further notice of, or hearing on, the Motion or this Order is necessary or required.

C.     The proposed notices (in substantially the form attached hereto as Exhibit 2) of (i) the Proposed Sale of the Assets, (ii) the assumption and assignment of the Designated Contracts and any Cure Costs payable in respect thereof, as described or referred to in the Agreement, (iii) the Agreement, and the terms contained therein, and (iv) the Bid Procedures, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Proposed Sale of the Assets, the Auction, the assumption and assignment of Designated Contracts and the cure associated therewith, the Agreement and the Bid Procedures to be employed in connection therewith.

D.     The approval of the Bidding Procedures is in the best interest of the estates, their creditors and other parties in interest. The Trustee has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bid Procedures and has demonstrated sound business justifications to support such relief. The Bidding Procedures, including the Break Up Fee, are fair, reasonable and reasonably calculated to enhance the prospect of competitive bidding and maximize recovery for the estates and their creditors.

E.     The entry of this Order and the relief contained herein are in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and it is therefore ORDERED, ADJUDGED AND DECREED THAT:

1.     The relief requested in the Motion is granted, to the extent set forth herein.

2.    The Bid Procedures attached hereto as Exhibit 1 are hereby approved and fully incorporated into this Order, and shall apply with respect to the Proposed Sale of the Assets. The Trustee is authorized to take any and all actions necessary to implement the Bid Procedures.

3.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

4.    A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the parties set forth below not later than 12:00 noon (prevailing Eastern time) on August __, 2009 (the "Bid Deadline") and shall comply with the requirements set forth in the Bid Procedures for making such bid: (a) Jeoffrey L. Burtch, Esq., Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801 with a copy to Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801 Att.: Adam Singer, Esq.; (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq; and (c) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment.

5.    The Trustee shall have the right to reject any and all bids that he believes in his reasonable discretion, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, do not comply with the Bid Procedures. Buyer is deemed to be a Qualified Bidder, and Buyer's Bid as embodied in the Agreement, is deemed to be a Qualified Bid.

6.    As further described in the Bid Procedures, if a Qualified Bid other than Buyer's Bid is timely received, the Auction will be held on August __, 2009 at _____.m. (prevailing

Eastern time), and the Trustee shall, not later than _____ m. (prevailing Eastern time) on August __, 2009, notify Buyer, all Qualified Bidders who have submitted a Qualified Bid and expressed their intent to participate in the Auction, counsel for the Ad Hoc Committee of Senior Secured Noteholders and the United States Trustee that the Auction will be held on August __, 2009 at _____ at the offices of Cooch & Taylor, 1000 West Street, Wilmington, Delaware 19801.

7.    Not later than three (3) days after entry of this Order, the Trustee will cause the Auction and Sale Notice, substantially similar to the form attached hereto as Exhibit 2 to be sent by first-class mail postage prepaid to the Notice Parties.

8.    In addition, to facilitate the sale, assumption and assignment of any Designated Contracts, the Trustee will serve a notice (the "Cure Amount Notice"), similar to the form attached hereto as Exhibit 3 hereto not later than three (3) days after the entry of this Order upon each counterparty to a Designated Contract under the Agreement. Buyer shall have the right until the date provided in the Agreement to amend the Designated Contracts schedule to include additional executory contracts and unexpired leases or to exclude executory contracts or unexpired leases previously included as provided in the Agreement. To the extent that Buyer is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Designated Contracts assumed and assigned as part of an alternative transaction, the Trustee will provide financial information for the alternative bidder with respect to all non-debtor parties to such Designated Contracts immediately following the Auction via facsimile or Federal Express or email.

9.    The Trustee will attach to the Cure Amount Notice his calculation of the undisputed cure amounts that the Trustee believes must be paid to cure all prepetition defaults

under all Designated Contracts (the "Prepetition Cure Amounts"). If no such amount is listed, then the Trustee believes that there is no Prepetition Cure Amount. Unless the non-debtor party to a Designated Contract files an objection (the "Cure Amount Objection") to its scheduled Prepetition Cure Cost or any other objection to the proposed assumption and assignment of its Designated Contract no later than 4:00 p.m. (prevailing Eastern time) on August __, 2009 (or in the event Buyer is not the Successful Bidder, at or prior to the Sale Hearing), and serves the objection, so that it is actually received before such deadline, upon (a) counsel to the Trustee: Jeoffrey L. Burtch, Esq., Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801, (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq.; and (c) counsel for the Ad Hoc Committee of Senior Secured Noteholders: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; such non debtor party shall (i) be forever barred from objecting to the Prepetition Cure Amount and from asserting any additional cure or other amounts with respect to such Designated Contract or any other objection to the proposed assumption and assignment of its Designated Contract and the Trustee shall be entitled to rely solely upon the Prepetition Cure Amount; and (ii) be forever barred and estopped from asserting or claiming against the Debtors, Buyer, or such other Successful Bidder or any other assignee of the relevant Designated Contract that any additional amounts are due or defaults exist under such Designated Contract.

10.     In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party

asserts as the Prepetition Cure Amount, and (iii) appropriate documentation in support of the Prepetition Cure Amount.

11.    Hearings on Cure Amount Objections may be held (a) at the Sale Hearing, or (b) on such other date as this Court may designate upon request by the Trustee with the prior written consent of Buyer.

12.    The Trustee's decision to assume and assign Designated Contracts is subject to Court approval and consummation of the Proposed Sale of the Assets. Absent consummation of the Proposed Sale of the Assets, each of the Designated Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

13.    Except to the extent otherwise provided in the Agreement or any agreement with a Successful Bidder, subject to any required Prepetition Cure Amount payments, the assignee of any assumed Designated Contract will not be subject to any liability to the assigned Designated Contract counterparty that accrued or arose before the closing date of the Proposed Sale of the Assets and the Debtors and the Chapter 7 estates shall be relieved of all liability accruing or arising thereafter pursuant to Bankruptcy Code § 365(k).

14.    Recognizing the value and benefits that the Buyer has provided to the estates by entering into the Asset Purchase Agreement, as well as Buyer's expenditure of time, energy and resources, Buyer is hereby granted a fee equal to $1,600,000 (the "Break Up Fee"), such fee payable in the event the Court fails to approve a sale to Buyer and instead approves a sale of some or all of the Purchased Assets to an entity that has submitted a Qualified Bid and such sale closes. The Break Up Fee shall be payable at the closing of the sale in connection with such Bid from the first proceeds of such sale without further order of the Court. The Break Up Fee, when

7

earned, shall constitute an administrative claim against the estate under Bankruptcy Code Sections 503(b)(1) and 507(a)(2).

15.  If Buyer elects to participate in bidding at the Auction, the amount of the Break Up Fee shall be considered if added to Buyer's bid in determining whether Buyer's bid is a higher and better offer for the Purchased Assets.

16.  Objections, if any, to the relief requested in the Sale Motion must: (1) be in writing; (2) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (3) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801, on or before 12:00 p.m. (prevailing Eastern Time) on January 15, 2009 and (4) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on such date, upon (a) counsel to the Trustee: Jeoffrey L. Burtch, Esq., Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801, (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq.; and (c) counsel for the Ad Hoc Committee of Senior Secured Noteholders: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; provided however, to the extent that Buyer is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain unexpired leases, license agreements and executory contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such unexpired leases, license agreements and executory contracts shall have until the Sale Hearing to raise objections under Bankruptcy Code § 365(b)(1)(C).

~Doc# 14330.1~

17. The Sale Hearing shall be held before this Court on August __, 2009 at _____ m. (prevailing Eastern Time). The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

18. The notices to be issued in connection with the Proposed Sale of the Assets, substantially in the form of the notices annexed hereto as [Exhibits 2 and 3] are approved in all respects.

19. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

20. As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

21. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

Dated August_____, 2009
Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge

~Doc# 14330.1~

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Eclipse Aviation Corporation, *et al.*,[1] | ) | Case No. 08-13031 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BID PROCEDURES

On November 25, 2008 (the "Petition Date"), Eclipse Aviation Corporation and its affiliated debtors (collectively, the "Debtors") filed chapter 11 cases pending in the Bankruptcy Court and jointly administered under Case No. 08-13031 (MFW). On March 5, 2009, the Debtors' cases converted to cases under Chapter 7 of the Bankruptcy Code. Jeoffrey L. Burtch was appointed as interim chapter 7 trustee on March 5, 2009, and serves as the chapter 7 trustee (the "Trustee") in these cases pursuant to section 702(d) of the Bankruptcy Code. On July [__], 2009, the Trustee entered into an asset purchase agreement (the "Agreement")[2] with Eclipse Aerospace Inc. ("Buyer") in which Buyer proposes to purchase substantially all of the Debtors' assets. By motion dated July [__], 2009 (the "Motion"), the Trustee sought, among other things, approval for the sale of substantially all the assets (the "Assets") of the Debtors and of the process and procedures set forth below (the "Bid Procedures") through which the Trustee, with the consultation of the Ad Hoc Committee of Senior Secured Noteholders, will determine the highest and best offer for the Assets. On July [__], 2009, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bid Procedures.

On August [__], 2009, at ____ _. m. (prevailing Eastern Time) as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Trustee shall seek entry of the Sale Order authorizing and approving the sale of the Assets (the "Proposed Sale") to Buyer (defined below) or to one or more other Qualified Bidders (defined below) that the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines to have made the highest and best offer.

*Agreement*

Pursuant to the terms and conditions of the Agreement, Buyer would provide consideration for the Assets equal to the following (the "Purchase Price"): (i) the Cash Consideration, which amount shall be payable as set forth in <u>Section 3.2</u> of the Agreement, plus (ii) the Note Consideration. The transaction contemplated by the Agreement is subject to

---

[1]     The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax I.D. No. XX-XXX9000) and Eclipse IRB Sunport, LLC, a wholly-owned subsidiary of Eclipse Aviation Corporation (Tax I.D. No. XX-XX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

*Assets for Sale*

The Trustee is offering for sale in one or more transactions all or substantially all of the assets of Eclipse Aviation Corporation and its affiliated debtor. The assets proposed to be sold to the Buyer consist of the Purchased Assets as set forth in the Agreement. The assets for sale to the Buyer do not include the Excluded Assets, which shall mean (i) the excluded assets specified in the Agreement.

*Participation Requirements*

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Trustee and his counsel no later than 12:00 noon (prevailing Eastern Time) on August ___, 2009:

(a) <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance acceptable to the Trustee and his counsel; such form attached as Exhibit 1 hereto (if not already provided); and

(b) <u>Identification of Potential Bidder</u>. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Debtors' assets do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in subparagraphs (a)-(b) above, and that the Trustee in his discretion and with assistance from his advisors, and in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines is reasonably likely to submit a *bona fide* offer that would result in greater total consideration being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(b) above, the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Buyer is a Qualified Bidder.

*Access to Due Diligence Materials*

2

Only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information. If the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines that a Potential Bidder who has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Trustee will designate a representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Trustee is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Trustee, the Ad Hoc Committee of Senior Secured Noteholders or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Trustee to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Trustee to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## Bidding Process

The Trustee and his advisors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions, above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "Bidding Process"). The Trustee shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be August ___, 2009, at 12:00 noon (Eastern Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its bid to: (a) counsel to the Trustee, Cooch & Taylor P.A., The Brandywine Building, 1000 West Street, 10th Floor, P.O. Box 1680, Wilmington, Delaware 19899-1680, Attn: Adam Singer; (b) Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq; and (c) counsel to the Ad Hoc Committee of Senior Secured Noteholders, Covington & Burling LLP,

The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment (collectively, the "Notice Parties"), so that the bid is actually received by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid unless otherwise agreed by the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, to satisfy each of the following conditions:

(a)  Good Faith Deposit: Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or a certified check payable to the order of the Trustee in an amount of not less than $5.0 million.

(b)  Minimum Overbid: The aggregate consideration must exceed the sum of the Purchase Price by at least $2,000,000.

(c)  Irrevocable: A bid must be irrevocable until two (2) business days after the Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "Termination Date").

(d)  The Same or Better Terms: The Bid may be for the Purchased Assets under the Agreement, as applicable for the Purchased Assets subject to the Bid (provided, however, that any variations from one or more material terms must, in the aggregate constitute an improvement, as determined by the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders, upon such term or terms as set forth in the Agreement). The Bid must be on terms that, in the Trustee's business judgment, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, are substantially the same or better than the terms of the Agreement. A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price). The Contemplated Transaction Documents must include a written commitment satisfactory to the Trustee and the Ad Hoc Committee of Senior Secured Noteholders of its financial ability and intention to complete the transaction and contain a representation that the Qualified Bidder shall make all necessary regulatory filings, if any, and pay all costs and expenses of such filings (including the Trustee's costs and expenses).

For all Qualified Bidders seeking to acquire all or substantially all assets of the Debtors:

(a)     <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement, as applicable.

(b)     <u>Corporate Authority</u>:  A Bid must include written evidence of the Qualified Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that if the Qualified Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Qualified Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals").

(c)     <u>Financing Sources</u>: A Bid must contain written evidence satisfactory to the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, that demonstrates the Qualified Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

(i)     the Qualified Bidder's current financial statements (audited if they exist);

(ii)     contact names and numbers for verification of financing sources,

(iii)     evidence of the Qualified Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

(iv)     any such other form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders demonstrating that such Qualified Bidder has the ability to close the contemplated transaction provided, however, that the Trustee shall determine, in his reasonable discretion, in consultation with his advisors and the Ad Hoc Committee of Senior Secured Noteholders, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Qualified Bidder's financial qualifications.

(d)   No Fees payable to Qualified Bidder: A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Trustee believes, in his reasonable discretion and after consultation with the Ad Hoc Committee of Senior Secured Noteholders, that such bid would be consummated if selected as the Successful Bid. For purposes hereof, the Agreement shall constitute a Qualified Bid. Promptly upon such determination, the Trustee shall provide any other Qualified Bids to the Buyer and to any Qualified Bidders.

In the event that any Bid is determined by the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, not to be a Qualified Bid, the Qualified Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

## Auction

Only if a Qualified Bid (other than Buyer's) is received by the Bid Deadline, shall the Trustee conduct an auction (the "Auction") to determine the highest and best bid with respect to the Purchased Assets under the Agreement. The Trustee shall provide Buyer and all Qualified Bidders with copies of all Qualified Bids at least eighteen (18) hours prior to the Auction. The Auction shall commence on August ___, 2009 at 10:00 a.m. (prevailing Eastern time).

No later than 4:00 p.m. (prevailing Eastern time) on August ___, 2009, the Trustee will notify all Qualified Bidders of (i) the highest and best Qualified Bid(s), as determined in the Trustee's discretion after consultation with the Ad Hoc Committee of Senior Secured Noteholders (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders. If, however, no other such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Buyer will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the August ___, 2009 Sale Hearing, the Trustee will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

(a)   Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. The auction shall be conducted openly and all creditors shall be entitled to attend. Each Qualified Bidder shall have at least one representative physically present at the location of the Auction. During the Auction, bidding shall begin initially with the highest Baseline Bid as to the Purchased Assets under the Agreement and subsequently continue in minimum increments of at least $100,000. Bidding at the auction shall be transcribed or

videotaped. Other than otherwise set forth herein, the Trustee may conduct the Auction in the manner he determines, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, will result in the highest and best offer for the Purchased Assets under the Agreement.

(b)    The Trustee Shall Conduct the Auction

The Trustee and his professionals shall direct and preside over the Auction. At the start of the Auction the Trustee shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (A) the amount and nature of the consideration; (B) the proposed assets to be purchased and the assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents and (H) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Trustee shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

(c)    Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Trustee's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder seeking to acquire all or substantially all of the Debtors' assets must comply with the following conditions:

(i)    Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $100,000.

(ii)    Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (a) the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, accepts a higher Qualified Bid as an Overbid and (b) such Overbid is not selected as the Back-up Bid (as defined below).

7

To the extent not previously provided (which shall be determined by the Trustee), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee and the Ad Hoc Committee of Senior Secured Noteholders) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

(iii)     Announcing Overbids

The Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

(d)     Additional Procedures

The Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, may adopt rules for the Auction at or prior to the Auction that, in his reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction. Subject to the prior consent of the Buyer, the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, in his reasonable discretion, may adjourn without further notice the Auction (and Sale Hearing) if in his reasonable discretion an adjournment will better promote the goals of the Auction and allow parties to make progress towards modifications of any Qualified Bid that could result in a higher and better Qualified Bid.

(e)     Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

(f)     Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest and best offer for the Purchased Assets

under the Agreement (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtors' estates, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination. If Buyer's final bid is deemed to be highest and best at the conclusion of the Auction, Buyer will be the Successful Bidder, and such bid, the Successful Bid.

### Acceptance of Successful Bid

The Trustee shall sell the assets subject to the Successful Bid(s) to the Successful Bidder(s) upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Trustee's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Trustee's acceptance of the bid. The Trustee will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Trustee's selection of the Successful Bidder (including the assignment of any of such objector's Designated Contract thereto, provided, however, that any objection to such assignment on the basis of the Cure Amount must be made and/or reserved as set forth in the order approving these Bid Procedures).

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, his agents or the Chapter 7 estates except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to Buyer, the terms of the sale of the Purchased Assets under the Agreement shall be set forth in the Agreement, or (ii) as another Successful Bidder, the terms of the sale of the Assets shall be set forth in the applicable purchase agreement.

### Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Chapter 7 estates' right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets.

## Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on August ___, 2009 or on such date as may be established by the Bankruptcy Court. Following the approval of the sale of the Assets to the Successful Bidder(s) at the Sale Hearing, if any Successful Bidder fails to consummate an approved sale within ten (10) days after entry of an Order approving the Sale, the Trustee, unless such Order approving the Sale is otherwise stayed by order of a court with competent jurisdiction, shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Trustee shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

## Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder(s) shall be applied to the purchase price of such transaction at Closing. The Good Faith Deposit of the Back-up Bidder shall be held in an interest-bearing account until five (5) days after the Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the Back-up Bidder. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders. If a Successful Bidder or the Back-up Bidder, as appropriate, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, the Trustee shall be entitled to retain the Good Faith Deposit as part of the Debtors' damages resulting from the breach or failure to perform by such Bidder.

## Modifications

The Trustee, after consultation with the Ad Hoc Committee of Senior Secured Noteholders, may (a) determine, which Qualified Bid, if any, is the highest and best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors' estates and creditors. The Trustee shall not make material modifications to these Bidding Procedures without Bankruptcy Court approval, provided, however, that, to the extent not contrary to the Bidding Procedures Order, the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders and the Buyer, may make other non-material modifications to such procedures if their reasonable judgment such modifications would be in the best interests of the Debtors' estates and promote an open and fair sale process.

In all cases where the Bid Procedures require the Trustee to obtain consent or consult with the Buyer or the Ad Hoc Committee of Senior Secured Noteholders, the Trustee's fiduciary duties shall not be limited by such requirement.

# EXHIBIT 1 TO BID PROCEDURES

## Confidentiality Agreement

# CONFIDENTIALITY AGREEMENT

In connection with your consideration of materials relating to a possible acquisition (the "**Transaction**") of part or all of the assets of Eclipse Aviation Corporation and Eclipse IRB Sunport, LLC (the "**Company**"), you are being or have been provided with certain Confidential Information (as defined below). All information concerning the Company that is non-public, confidential or proprietary, whether written, in electronic or other tangible or intangible form, in any other medium whatsoever, or oral, including without limitation, trade secrets, inventions, system designs, processes, business plans, marketing strategies, pricing information, budgets, financial statements, lists or other information relating to suppliers, customers, clients, and employees, together with any evaluations, ideas, analyses, reports, notes, compilations, interpretations, or other documents or technical, business or financial data of any kind, furnished to you by or on behalf of the Chapter 7 Trustee or the Company, or containing all or any part of, or derived from, any of the foregoing, from the date hereof through the term of this Confidentiality Agreement (this "**Agreement**") is hereinafter referred to as the "**Confidential Information**." Notwithstanding the foregoing, Confidential Information does not include any information that (A) is or becomes generally available to the public other than as a result of disclosure or actions by you or your Representatives (as defined below) in breach of this Agreement, (B) is or becomes available to you or your Representatives on a nonconfidential basis from a source (other than the Chapter 7 Trustee or his representatives, or the Company or its Representatives) which, to your knowledge, had no obligation to the Chapter 7 Trustee or the Company or any other party to maintain the confidentiality of such information, (C) was in your possession prior to the date of this Agreement and the source of such information, to your knowledge, had no obligation to the Chapter 7 Trustee or the Company or any other party to maintain the confidentiality of such information or (D) has been independently developed or acquired by you or your Representatives without violating your or any of their respective obligations under this Agreement.

In consideration of the Chapter 7 Trustee furnishing you with the Confidential Information, the Chapter 7 Trustee and you hereby agree that:

      1.    <u>Non-Disclosure; Limitations On Use; Representatives</u>. Except as otherwise expressly provided herein, without the prior consent of the Chapter 7 Trustee or the Company, you and your Representatives (A) will not disclose to any person (i) the fact that any discussions or negotiations took place concerning an Transaction; (ii) the economic or other terms of the Transaction; and (iii) the Confidential Information, the fact that the Confidential Information has been made available to you or that you have inspected or have knowledge of any portion of the Confidential Information, and (B) will use the Confidential Information solely for the purpose of evaluating, negotiating, documenting and/or consummating the Transaction, will keep the Confidential Information confidential and will not disclose the Confidential Information to any third party whatsoever; <u>provided</u>, <u>however</u>, that the Confidential Information may be disclosed to any of your directors, officers, employees, representatives, accountants, advisers, potential financing sources, agents and legal counsel (collectively, "**Representatives**") who need the Confidential Information solely for the purpose of evaluating, negotiating, documenting and/or consummating the Transaction on your behalf, so long as such Representatives agree to maintain the confidentiality thereof in accordance with the terms of this Agreement. The obligations of you and your Representatives with respect to Confidential Information shall terminate two (2) years from the date of this Agreement (the "**Term**"). You shall be responsible for any breach of the confidentiality provisions of this Agreement by any of your Representatives.

You agree that, for a period of 24 months after the date of this Agreement, you will not, without the prior written consent of the Chapter 7 Trustee or the Company, directly or indirectly, solicit for employment or hire any employee of the Company or any of its subsidiaries provided, however, that you shall not be precluded or otherwise restricted from hiring or employing, or from having employment or hiring discussions with, any such person (i) who is not then employed by the Company or any of its subsidiaries, (ii) who contacts you without any solicitation by you or (iii) who responds to a general solicitation for employment placed by you or your agents in newspapers, trade journals, the Internet, through recruiters or by any similar media; and provided further that no such general solicitation shall constitute a breach of this Agreement. You also agree that until 24 months after the date of this Agreement, you will not, without the prior written consent of the Chapter 7 Trustee, initiate or maintain contact (except in the ordinary course of business) with any officer, director, employee, supplier, vendor, distributor, broker, customer or agent of the Company for purposes of discussing the Transaction.

2.    Termination. The Chapter 7 Trustee may at any time terminate this Agreement and cease to provide to you Confidential Information and you may at any time terminate this Agreement with respect to any information furnished to you after receipt by the Chapter 7 Trustee of your notice of termination. At such time that this Agreement is terminated, upon written request by the Chapter 7 Trustee  you and your Representatives shall promptly destroy or return to the Chapter 7 Trustee all instances and copies of the Confidential Information, in any medium, and shall destroy analyses, reports, notes, compilations, studies, summaries, extracts or other documents containing any of, or derived from, the Confidential Information prepared by you or your Representatives; provided that, in the event that you destroy rather than return any such Confidential Information to the Chapter 7 Trustee, upon the written request of the Chapter 7 Trustee, you shall confirm such destruction in writing to the Chapter 7 Trustee; and provided, further, that you may retain copies of such Confidential Information in accordance with your internal record retention policies, so long as such Confidential Information continues to be treated as such and all such Confidential Information shall continue to be subject to this Agreement through the remainder of the Term. The termination of this Agreement will not affect the respective obligations of you and your Representatives hereunder, all of which obligations shall continue in effect through the remainder of the Term for any Confidential Information obtained from the Chapter 7 Trustee or the Company prior to such termination.

3.    Compelled Disclosure. If you or any of your Representatives reasonably believe that you are legally required to disclose any of the Confidential Information to a third party or you are requested by regulatory authority to provide Confidential Information, unless legally prohibited you will before such disclosure has occurred provide as soon as is practical, written notice to the Chapter 7 Trustee of the proposed disclosure; provided in the case of a broad regulatory request with respect to your business (not specifically targeted at the Chapter 7 Trustee or the Company) you may promptly comply with the request and provide notice (if permitted by such regulator) to the Chapter 7 Trustee thereafter of such disclosure. You and your Representatives will use commercially reasonable efforts to cooperate with the Chapter 7 Trustee  in his efforts to decline, resist or narrow such request and, if reasonably necessary, to assist Chapter 7 Trustee in his efforts to obtain an appropriate protective order or other reliable assurance that confidential treatment, if available, will be accorded to such disclosure.

4.    No Representations or Warranties. You shall assume full responsibility for all conclusions you derive from the Confidential Information. The Confidential Information is being provided "as is" without representation or warranty hereunder of any kind.  You acknowledge and agree that none of the Chapter 7 Trustee or the Company and their respective Representatives makes any express or implied representations or warranties as to the accuracy, completeness or fitness for a particular purpose of any Confidential Information, and you agree that none of such persons shall

have any liabilities to you or any of your Representatives relating to or arising from your or their use of any Confidential Information or for any errors therein or omissions therefrom except to the extent otherwise provided in a definitive agreement.

5. <u>Privilege Issues; Work Product</u>. To the extent that any Confidential Information may include material subject to the attorney-client privilege, work product doctrine or any other applicable privilege concern pending or threatened legal proceedings or governmental investigations, you understand and agree that we have a commonality of interest with respect to such matters and it is our desire, intention and mutual understanding that the disclosure of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege and any such Confidential Information shall remain entitled to all protection under these privileges, this agreement, and under the joint defense doctrine. Nothing in this agreement obligates any party to reveal material subject to the attorney-client privilege, work product doctrine or any other applicable privilege.

6. <u>Equitable Remedies</u>. You agree that money damages may not be a sufficient remedy for any breach of this Agreement by you or your Representatives, and that the Chapter 7 Trustee and the Company would be irreparably harmed in the event of such a breach. Accordingly the Chapter 7 Trustee and the Company shall, in addition to any other remedies or money damages to which it may be entitled, be entitled to specific performance and injunctive or other equitable relief as a remedy for any such threatened or actual breach. The parties hereby waive any requirement of the posting of a bond or other security in connection with the granting to the Chapter 7 Trustee or the Company of any such injunctive relief.

7. <u>Waiver; Governing Law; Assignment; Severability; Counterparts</u>. It is understood and agreed that no failure or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. The agreements set forth herein may only be waived or modified by an agreement in writing signed on behalf of the parties hereto. This Agreement shall be governed by the laws of the State of Delaware without regard to the principles of choice of law thereof. This Agreement is not assignable by either party; any purported assignment will be void and without effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors. Except as set forth in Section 1 hereof, there are no third-party beneficiaries of this Agreement. In case specific provisions of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of the Agreement shall not in any way be affected or impaired thereby. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of such counterparts taken together shall be deemed to constitute one and same instrument.

8. <u>Term</u>. This Agreement shall expire two years following the date hereof.

9.    By execution below, the signatory represents and warrants that he has fully authority to bind the entity for which he is signing.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized representatives as of the later of the dates under the signatures below.

[Name of Entity and Address]

By: _____
Name:
Title:

Date:

Jeoffrey L. Burtch, Chapter 7 Trustee for Eclipse Aviation Corporation and and Eclipse IRB Sunport, LLC,

By: _____
Name: Adam Singer
Title: Counsel to the Chapter 7 Trustee

Date:

## EXHIBIT 2

## Notice of Auction and Sale Hearing

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Eclipse Aviation Corporation, *et al.*,[1] | ) | Case No. 08-13031 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 763, ____** |

## NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that on July 31, 2009, Jeoffrey L. Burtch, the Chapter 7

Trustee (the "Trustee") for the above caption cases filed his *Motion Of The Chapter 7 Trustee To*

*Approve Sale Procedures And Approve Sale And For Related Relief* (the "Sale Motion") with the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The

Trustee has received a Qualified Bid[2] from Eclipse Aerospace, Inc. (the "Buyer"), subject to

higher and better offers, and under certain circumstances, an Auction (as defined below), all

pursuant to the Bid Procedures Order (as defined below), and with respect to the asset purchase

agreement dated as of July 30, 2009 between the Trustee and the Buyer (the "Agreement").

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on August 10, 2009, the

Bankruptcy Court entered an order (the "Bid Procedures Order") approving the Bidding

Procedures sought as part of the Sale Motion and scheduled a hearing to consider granting final

relief as to the Sale Motion for August_____2009, at ____ (prevailing Eastern Time). At

that hearing, the Bankruptcy Court will consider approving the sale of the assets of the Chapter 7

estates, free and clear of all claims, liens, and encumbrances.

---

[1] The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax ID No. XX-XXX9000) and
Eclipse IRB Sunport, LLC, a wholly owned subsidiary of Eclipse Aviation Corporation (Tax ID No. XX-
XXX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.
[2] All capitalized terms not defined herein have the meaning ascribed to them in the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that only those parties that submit Qualified Bids may participate in the Auction (as defined below). If you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Bid Procedures Order. Any party in interest wishing to receive the Agreement may do so free of charge upon request of Trustee's Counsel: Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Claire McCudden (cmccudden@coochtaylor.com). Any party that wishes to take part in this process and submit a bid for the Eclipse Assets must submit its competing bid prior to August ___2009 at noon (prevailing Eastern Time) (the "Bid Deadline") to: (a) The Trustee, c/o Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Adam Singer (asinger@coochtaylor.com); (b) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment.

**PLEASE TAKE FURTHER NOTICE** that if a Qualified Bid (other than the Buyer's Qualified Bid) is received by the Bid Deadline, an auction (the "Auction") with respect to a contemplated transaction shall take place on August ___, 2009 at 10:00 a.m. (prevailing Eastern Time), at the offices of Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Buyer will be deemed the Successful Bidder, the Agreement will be the Successful Bid, and, at the Sale Hearing scheduled for August ___, 2009, at ____ (prevailing Eastern Time), the Trustee will seek approval of and authority to consummate the transaction contemplated by the Agreement.

2

**PLEASE TAKE FURTHER NOTICE** that only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Each Qualified Bidder must appear in person. The Auction shall be conducted openly and all creditors shall be entitled to attend. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the highest or otherwise best Qualified Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, and continue in increments of at least $100,000.

**PLEASE TAKE FURTHER NOTICE** that at the Sale Hearing, the Trustee will present the Successful Bid to the Bankruptcy Court for approval. The Trustee will sell the Assets or any portion thereof to the Successful Bidder, or to the Buyer in accordance with the applicable Agreements if a higher or otherwise better Qualified Bid is not received and accepted as the Successful Bid. If the Successful Bidder fails to consummate an approved Sale, the next highest or otherwise best Qualified Bid, as approved at the Sale Hearing, shall be deemed to be the Successful Bid and the Trustee shall be authorized to effect such Sale without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that if you seek to object to the sale of the Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order. Any objections to the relief requested in the Sale Motion must be (a) in writing, (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules, (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, no later than 12:00 p.m. prevailing Eastern time on August ___ , 2009 and (d) be served so as to be **received** no later than 12:00 p.m. (prevailing Eastern Time) on the same

3

day, upon: The Trustee, c/o Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Adam Singer (asinger@coochtaylor.com); (b) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (c) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection and such person shall be deemed to consent to the sale and will be forever bound by any conclusions or findings by the Bankruptcy Court with respect to the sale.

**PLEASE TAKE FURTHER NOTICE** that the proposed sale contemplates the sale of substantially all of the Eclipse Assets free and clear of all liens, claims, and encumbrances and the assumption and assignment of certain executory contracts and unexpired leases. Any person purporting to hold a lien, claim, or other encumbrance against the Eclipse Assets and who does not file an objection in accordance with the terms for making such objections set forth in the Bid Procedures Motion and the Bidding Procedures Order (and as set forth above), shall be deemed to consent to the sale of the Eclipse Assets fee and clear of any lien, claim, or other encumbrance such person purports to hold.

**PLEASE TAKE FURTHER NOTICE** that any party to a Designated Contract who does not file an objection in accordance with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order (and as set forth above), shall be

4

deemed to consent to the assumption and assignment of such Designated Contract including the proposed cure amounts in connection therewith.

Dated: August , 2009

COOCH AND TAYLOR, P.A.

_____
Adam Singer (No. 2472)
M. Claire McCudden (No. 5036)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 984-3800
Facsimile: (302) 984-3939

Attorneys for Jeoffrey L. Burtch,
Chapter 7 Trustee

5

# **EXHIBIT 3**

## **Notice of Cure Amounts**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*, | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | |
| Debtors. | ) | **Re: Docket No. 763, ___** |

### NOTICE OF AUCTION AND SALE, POTENTIAL ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS, AND CURE AMOUNTS ASSOCIATED THEREWITH

**PLEASE TAKE NOTICE** that July 31, 2009, Jeoffrey L. Burtch, the Chapter 7 Trustee

(the "Trustee") for the above caption cases filed his *Motion Of The Chapter 7 Trustee To*

*Approve Sale Procedures And Approve Sale And For Related Relief* (the "Sale Motion") with the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The

Trustee has received a Qualified Bid[1] from Eclipse Aerospace, Inc. (the "Buyer"), subject to

higher and better offers, and under certain circumstances, an Auction (as defined below), all

pursuant to the Bid Procedures Order (as defined below), and with respect to the asset purchase

agreement dated as of July 30, 2009 between the Trustee and the Buyer (the "Agreement").

You may obtain a copy of the Agreement by making a written request to the undersigned counsel.

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on August 10, 2009, the

Bankruptcy Court entered an order (the "Bid Procedures Order") approving the Bidding Procedures

sought as part of the Sale Motion and scheduled a hearing to consider granting final relief as to the Sale

Motion for August_____2009, at ____ (prevailing Eastern Time). At that hearing, the Bankruptcy

Court will consider approving the sale of the assets of the Chapter 7 estates, free and clear of all

claims, liens, and encumbrances.

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in the [Bid Procedures Order] (as defined below).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Motion, the Trustee may assume, sell and assign certain of the unexpired leases, license agreements, and executory contracts (collectively referred to as the "Contracts") free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(I)(A) of the Bankruptcy Code (the "Cure Costs"). The Contracts that the Trustee **MAY** seek to assume, sell and assign (the "Designated Contracts") and corresponding Cure Costs are listed on the attached Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the listing of any Contract on Exhibit A may not necessarily result in any such Contract ultimately becoming a Designated Contract or being assumed, sold and assigned.

**PLEASE TAKE FURTHER NOTICE** that the Buyer shall have the right until [date which is five (5) business days prior to the date scheduled for hearing on the entry of the Sale Order ]_____, to amend the list of Designated Contracts to include additional executory contracts or unexpired leases or to exclude executory contracts and unexpired leases previously included on the list of Designated Contracts and to amend the Cure Costs.

**PLEASE TAKE FURTHER NOTICE** that with respect to contracts with the City of Albuquerque, the Buyer shall have until thirty (30) days after the Closing to designate any contract with the City of Albuquerque.

**PLEASE TAKE FURTHER NOTICE** that any objections to the relief requested in the Sale Motion, including the assumption, sale and assignment of the Designated Contracts and the corresponding Cure Costs, must be (a) in writing, (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules, (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, no later than 4:00 p.m. prevailing Eastern time on August___, 2009 (the "Cure Objection Deadline") and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon: The Trustee, c/o Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE

19801, Attn: Adam Singer (asinger@coochtaylor.com); (b) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (c) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq.; provided however, to the extent that the Buyer is not the Successful Bidder and the alternative Successful Bidder is seeking to have certain unexpired leases, license agreements and executory contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such unexpired leases, license agreements and executory contracts shall have until the Sale Hearing to raise objections under section 365(b)(1)(C).

PLEASE TAKE FURTHER NOTICE that any person or entity receiving notice of the Sale Hearing and this Notice that fails to file an objection on a timely basis shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such unexpired lease, license agreement or executory contract and the Trustee and the Buyer shall be entitled to rely solely upon the Cure Costs; (ii) be deemed to have consented to the assumption and assignment of such unexpired lease, license agreement or executory contract; and (iii) be forever barred and estopped from asserting or claiming against the Trustee, the Chapter 7 estates, or the Successful Bidder or any other assignee of the relevant Designated Contract that any additional amounts are due or defaults exist under such Designated Contract.

PLEASE TAKE FURTHER NOTICE that any person or entity receiving notice of the Sale Hearing and this Notice that fails to file an objection on a timely basis shall be

deemed to have been provided with adequate assurance of future performance under any assumed and assigned unexpired lease, license agreement or executory contract and shall be forever barred from raising any defense, claim, or objection with respect to the assignment of such lease, license agreement or executory contract on account of the Successful Bidder's financial condition.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of said adjournment in the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for the Sale Hearing.

Dated: August      , 2009             COOCH AND TAYLOR, P.A.

 

Adam Singer (No. 2472)
M. Claire McCudden (No. 5036)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 984-3800
Facsimile: (302) 984-3939

Attorneys for Jeoffrey L. Burtch,
Chapter 7 Trustee

**Exhibit B**

**Sale Order**

**(see attached)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*,[1] | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## ORDER (A) AUTHORIZING THE TRUSTEE TO SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF

Upon the motion, dated July [___], 2009 (the "Sale Motion"), of Jeoffrey L. Burtch, the appointed chapter 7 trustee (the "Trustee") for the debtors in the above-captioned cases (the "Debtors") for the entry of an order pursuant to sections 105, 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Trustee to, *inter alia,* (i) enter into that certain Asset Purchase Agreement, dated as of July 30, 2009, between Eclipse Aerospace, Inc. (the "Buyer") and the Trustee (the "Agreement," attached hereto as Exhibit 1),[2] (ii) sell substantially all of the Debtors' assets free and clear of all Encumbrances (as defined below), with such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume and sell and assign certain executory contracts and unexpired leases to the Buyer; and (iv) granting related relief; and this Court having entered an order dated August [___], 2009 (the "Procedures Order," and attached hereto as

---

[1] The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax I.D. No. XX-XXX9000) and Eclipse IRB Sunport, LLC, a wholly-owned subsidiary of Eclipse Aviation Corporation (Tax I.D. No. XX-XX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

Exhibit 2, the "Bid Procedures") authorizing the Trustee to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher and better offers for the Assets, establishing a date for the Auction and approving, inter alia, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; (iii) procedures relating to certain Designated Contracts, including notice of proposed cure amounts; and (iv) the Break-Up Fee; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and after consideration of the Sale Motion, the relief requested therein, and the responses thereto, if any; and this being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, the Chapter 7 estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

I.      FINDINGS OF FACT:

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

### Jurisdiction, Final Order, Statutory Predicates

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      The Court has jurisdiction over this matter and over the property of the Debtors,

---

[3]     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. See FED. R. BANKR. P. 7052.

including the Purchased Assets to be sold, transferred or conveyed pursuant to the Agreement, and the Chapter 7 estates pursuant to 28 U.S.C. § § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 7 case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

        C.      The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 363 and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006 and [9014].

        D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), the parties may consummate the transactions provided for under the terms and conditions of the Agreement immediately upon entry of this Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

### Retention of Jurisdiction

        E.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes relating in any way to the transactions provided for under the terms and conditions of the Agreement.

### Time Is of the Essence

        F.      On November 25, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. On March 5, 2009 (the "Conversion Date"), the Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. On the Conversion Date, Jeoffrey L. Burtch was

appointed as interim chapter 7 trustee and currently serves as the Trustee in these cases pursuant to section 702(d) of the Bankruptcy Code.

G.     Time is of the essence in consummating the sale. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

### Notice of the Sale Motion

H.     As evidenced by the affidavits of service filed with the Court, (i) proper, timely, adequate and sufficient notice of the Sale Motion, the Auction and the Sale Hearing (including due and proper notice of the assumption, sale and assignment of each Designated Contract to each non-Debtor party under each such Designated Contract) have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution and in compliance with the Procedures Order; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Designated Contracts or of the entry of this Order is necessary or shall be required.

I.     Actual written notice of the Sale Motion, the Auction and the Sale Hearing (including due and proper notice of the assumption, sale and assignment of each Designated Contract to each non-Debtor party under each such Designated Contract) and a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities known to assert any interest in

or lien upon the Purchased Assets; (ii) all parties to Designated Contracts; (iii) all parties that are entitled to notice under Bankruptcy Rule 2002; (iv) the attorneys general of all states in which the Purchased Assets are located; (v) the Office of the United States Trustee; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service and any governmental taxing authority that has filed a claim against the Chapter 7 Estates; (viii) all entities that expressed to the Seller an interest in purchasing the Purchased Assets; (ix) any party appearing in the Bankruptcy Cases and claiming a secured interest in the Purchased Assets; or any party known to the Seller and claiming a secured interest in the Purchased Assets. Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

## Compelling Circumstances for Immediate Sale

J.       The Trustee has demonstrated a sufficient basis and the existence of exigent circumstances requiring it to enter into the Agreement, sell the Purchased Assets and assume and assign the Designated Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Trustee's business judgment and in the best interests of the Debtors, the Chapter 7 estates and their creditors, in that:

1.       The holders of Senior Secured Notes would not consent to the use of additional cash collateral absent a sale of substantially all of the assets.

2.       If the sale and related transactions under the Agreement is not approved and consummated promptly, the Trustee will exhaust any cash collateral available, thereby potentially consigning the Debtors to a piecemeal liquidation that would achieve far less value for creditors than the transactions contemplated by the Agreement.