or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

5.6    Construction.    The provisions of this Agreement shall be construed according to their fair meaning and neither for nor against any Party hereto irrespective of which Party caused such provisions to be drafted.  Each of the Parties acknowledges that it has been represented by an attorney in connection with the preparation and execution of this Agreement.

5.7    No Limitation.  The Parties (other than the Escrow Agent) agree that the rights and remedies of any Party under this Agreement shall not operate to limit any other rights and remedies otherwise available to any party under the Asset Purchase Agreement.

5.8    Counterparts.    This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

5.9    Severability.  It is the desire and intent of the Parties hereto that the provisions of this Agreement be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought.  Accordingly, if any particular provision of this Agreement shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

5.10    Governing Law and Choice of Forum.  THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE DOMESTIC LAWS OF THE STATE OF GEORGIA, WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICTING PROVISION OR RULE (WHETHER OF THE STATE OF GEORGIA OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF GEORGIA TO BE APPLIED.   IN FURTHERANCE OF THE FOREGOING, THE INTERNAL LAWS OF THE STATE OF GEORGIA WILL CONTROL THE INTERPRETATION AND CONSTRUCTION OF THIS AGREEMENT, EVEN IF UNDER SUCH JURISDICTION'S CHOICE OF LAW OR CONFLICT OF LAW ANALYSIS, THE SUBSTANTIVE LAW OF SOME OTHER JURISDICTION WOULD ORDINARILY APPLY.

5.11    Other Transactions with Purchaser.    The Escrow Agent and any stockholder, director, officer or employee of the Escrow Agent may become pecuniarily interested in any transaction in which Purchaser may be interested, and contract and lend money to Purchaser and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement.  Nothing herein shall preclude the Escrow Agent from acting in any other capacity for Purchaser or for any other entity.

5.12 <u>Authorized Signatures.</u> Contemporaneously with the execution and delivery of this Agreement and, if necessary, from time to time thereafter, each of the parties to this Agreement (other than the Escrow Agent) shall execute and deliver to the Escrow Agent a Certificate of Authority substantially in the form of Schedule II hereto (a "<u>Certificate of Authority</u>") for the purpose of establishing the identity and authority of persons entitled to issue notices, instructions or directions to the Escrow Agent on behalf of each such party. Until such time as the Escrow Agent shall receive an amended Certificate of Authority replacing any Certificate of Authority theretofore delivered to the Escrow Agent, the Escrow Agent shall be fully protected in relying, without further inquiry, on the most recent Certificate of Authority furnished to the Escrow Agent. Whenever this Agreement provides for joint written notices, joint written instructions or other joint actions to be delivered to the Escrow Agent, the Escrow Agent shall be fully protected in relying, without further inquiry, on any joint written notice, instructions or action executed by persons named in such Certificate of Authority.

\* \* \* \* \*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

PURCHASER:                        ECLIPSE AEROSPACE, INC.

By: _____
      Name:
      Title:

SELLER:

By: _____
      Name: Jeoffrey L. Burtch
      Title: Chapter 7 Trustee

ESCROW AGENT:              SUNTRUST BANK

By: _____
      Name: _____
      Title: _____



**SUNTRUST℠**

## Schedule I

**SunTrust Bank, as Escrow Agent**

**Eclipse Aerospace, Inc.**

**and**

**Jeoffrey L. Burch, as the trustee of
Eclipse Aviation Corporation and Eclipse IRB Sunport, LLC**

### Schedule of Fees & Expenses

**Acceptance/Legal Review Fee:**     $500.00 – one time only payable at the time of signing the escrow agreement

The Legal Review Fee includes review of all related documents and accepting the appointment of Escrow Agent on behalf of SunTrust Bank. The fee also includes setting up the required account(s) and accounting records, document filing, and coordinating the receipt of funds/assets for deposit to the Escrow Account. This is a one-time fee payable upon execution of the Escrow Agreement. As soon as SunTrust Bank's attorney begins to review the escrow agreement, the legal review fee is subject to payment regardless if the parties decide to appoint a different escrow agent or a decision is made that the escrow agreement is not needed.

**Administration Fee:**     [$] – payable at the time of signing the escrow agreement and on the anniversary date thereafter, if applicable

The Administration Fee includes providing routine and standard services of an Escrow Agent. The fee includes administering the escrow account, performing investment transactions, processing cash transactions (including wires and check processing), disbursing funds in accordance with the Agreement (note any pricing considerations below), and providing trust account statements to applicable parties for a twelve (12) month period. If the account remains open beyond the twelve (12) month term, the parties will be invoiced each year on the anniversary date of the execution of the Escrow Agreement. Additional fees will be billed for processing claim notices and/or objections. Extraordinary expenses, including legal counsel fees, will be billed as out-of-pocket. The Administration Fee is due upon execution of the Escrow Agreement.

**Out-of-Pocket Expenses:**     At Cost

Out-of-pocket expenses such as, but not limited to, postage, courier, overnight mail, insurance, money wire transfer, long distance telephone charges, facsimile, stationery, travel, legal (out-of-pocket to counsel) or accounting, will be billed at cost.

**Note: This fee schedule is based on the assumption that the escrowed funds will be invested in SunTrust Bank's money market cash sweep account, the RidgeWorth Money Market Funds.**

All escrow agent fees and expense reimbursements shall be paid jointly and severally to the Escrow Agent, provided that, as between Seller and Purchaser, one-half shall be paid by Seller and one-half shall be paid by Purchaser, subject to Section 4.2(b) of this Agreement. All fees and expense reimbursements to be paid by Seller may be paid from the Escrow Fund at Purchaser's sole discretion.

\* \* \* \* \*

## Schedule II

## Certificate As To Authorized Signatures

Re: Escrow Agreement dated _____, 2009, among SunTrust Bank, Eclipse Aerospace, Inc. and Jeoffrey L. Burch, as the trustee of Eclipse Aviation Corporation and Eclipse IRB Sunport, LLC (the "Escrow Agreement)

The specimen signatures set forth below are the specimen signatures of the persons authorized to execute and deliver documents and to initiate and approve transactions pertaining to the Escrow Agreement on behalf of Eclipse Aerospace, Inc.

| Name/Title | Specimen Signature |
|---|---|
| Name and Title | Signature |
| Name and Title | Signature |
| Name and Title | Signature |

The specimen signatures set forth below are the specimen signatures of the persons authorized to execute and deliver documents and to initiate and approve transactions pertaining to the Escrow Agreement on behalf of Jeoffrey L. Burch, as the trustee of Eclipse Aviation Corporation and Eclipse IRB Sunport, LLC.

| Name/Title | Specimen Signature |
|---|---|
| Name and Title | Signature |
| Name and Title | Signature |
| Name and Title | Signature |

**EXHIBIT 2**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*, | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket No. 763** |

### ORDER (A) APPROVING BID PROCEDURES RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) BREAK UP FEE; (C) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING THE FORM AND MATTER OF NOTICES; (D) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; AND (E) GRANTING RELATED RELIEF

Upon the Motion[1], dated July 31, 2009 (the "Sale Motion"), of Jeoffrey L. Burtch, as the

Chapter 7 trustee (the "Trustee") of the above-captioned debtors (collectively, the "Debtors") for

the entry of an order (A) approving bid procedures which are attached as Exhibit 1 hereto (the

"Bid Procedures") with respect to the proposed sale of substantially all of the Debtors' assets, as

more fully set forth in that certain asset purchase agreement (the "Agreement") dated as of

July 30, 2009 by and between the Trustee and Eclipse Aerospace, Inc. ("Buyer"); (B) scheduling

a hearing (the "Sale Hearing") and approving the form and manner of notice of the Auction and

the Bid Procedures; (C) establishing procedures relating to the assumption and assignment of

certain Designated Contracts, including notice of proposed cure amounts; and (D) granting

related relief; and the Court having determined that, to the extent set forth herein, the relief

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below), or in the Bid Procedures (defined below).

requested in the Motion is in the best interests of the Debtors, the Chapter 7 estates, creditors and other parties in interest; due and appropriate notice of the Motion and the relief requested therein was provided by the Trustee pursuant to Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014 on the following parties: (i) all entities known to assert any interest in or lien upon the Purchased Assets; (ii) all parties to Designated Contracts; (iii) all parties that are entitled to notice under Bankruptcy Rule 2002; (iv) the attorneys general of all states in which the Purchased Assets are located; (v) the Office of the United States Trustee; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service and any governmental taxing authority that has filed a claim against the Chapter 7 Estates; (viii) all entities that expressed to the Seller an interest in purchasing the Purchased Assets; (ix) any party appearing in the Bankruptcy Cases and claiming a secured interest in the Purchased Assets; or any party known to the Seller and claiming a secured interest in the Purchased Assets; and (x) any and all other parties directed by the Court (collectively, the "Notice Parties"); and after consideration of the Sale Motion to the extent of the relief granted herein; and the remainder of the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

FOUND, CONCLUDED, AND DECLARED THAT:[2]

A.    The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.    Notice of the Hearing, the Motion and proposed entry of this Order has been provided to the Notice Parties. Under the urgent circumstances, requisite notice of the Motion

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

and the relief requested thereby and this Order has been provided in accordance with Bankruptcy

Rules 2002, 4001, 6004, 6006 and 9014, which notice is sufficient for all purposes under the

Bankruptcy Code, including, without limitation, Bankruptcy Code § 102(1), and no further

notice of, or hearing on, the Motion or this Order is necessary or required.

     C.     The proposed notices (in substantially the form attached hereto) of (i) the Auction

and Sale Notice, (ii) the assumption and assignment of the Designated Contracts and any Cure

Costs payable in respect thereof, as described or referred to in the Agreement,  and (iii) the Bid

Procedures, are appropriate and reasonably calculated to provide all interested parties with

timely and proper notice of the Proposed Sale of the Assets, the Auction, the assumption and

assignment of Designated Contracts and the cure associated therewith, the Agreement and the

Bid Procedures to be employed in connection therewith.

     D.     The approval of the Bidding Procedures is in the best interest of the estates, their

creditors and other parties in interest.  The Trustee has articulated good and sufficient reasons for

this Court to grant the relief requested in the Motion regarding the Bid Procedures and has

demonstrated sound business justifications to support such relief.  The Bidding Procedures,

including the Break Up Fee, are fair, reasonable and reasonably calculated to enhance the

prospect of competitive bidding and maximize recovery for the estates and their creditors.

     E.     The entry of this Order and the relief contained herein are in the best interests of

the Debtors, their estates, creditors and other parties-in-interest; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

     1.     The relief requested in the Motion is granted, to the extent set forth herein.

~Doc# 14330.1~

2.     The Bid Procedures attached hereto as Exhibit 1 are hereby approved and fully incorporated into this Order, and shall apply with respect to the Proposed Sale of the Assets. The Trustee is authorized to take any and all actions necessary to implement the Bid Procedures.

3.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

4.     A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the parties set forth below not later than 12:00 noon (prevailing Eastern time) on August 14, 2009 (the "Bid Deadline") and shall comply with the requirements set forth in the Bid Procedures for making such bid: (a) Jeoffrey L. Burtch, Esq., Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801 with a copy to Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801 Att.: Adam Singer, Esq.; (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq; and (c) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment.

5.     The Trustee shall have the right to reject any and all bids that he believes in his reasonable discretion, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, do not comply with the Bid Procedures. Buyer is deemed to be a Qualified Bidder, and Buyer's Bid as embodied in the Agreement, is deemed to be a Qualified Bid.

6.     As further described in the Bid Procedures, if a Qualified Bid other than Buyer's Bid is timely received, the Auction will be held on August 17, 2009 at 10:00 a.m. (prevailing

5

Eastern time), and the Trustee shall, not later than 6 p.m. (prevailing Eastern time) on August 15, 2009, notify Buyer, all Qualified Bidders who have submitted a Qualified Bid and expressed their intent to participate in the Auction, counsel for the Ad Hoc Committee of Senior Secured Noteholders and the United States Trustee that the Auction will be held on August 17, 2009 at 10:00 a.m. at the offices of Cooch & Taylor, 1000 West Street, Wilmington, Delaware 19801.

7.　　Not later than one (1) days after entry of this Order, the Trustee will cause the Auction and Sale Notice, substantially similar to the form attached hereto as Exhibit 2 to be sent by first-class mail postage prepaid to the Notice Parties; however with respect to all entities that expressed to the Seller an interest in purchasing the Purchased Assets, the Trustee will serve the Auction and Sale Notice by email, facsimile transmission, or by overnight mail.

8.　　In addition, to facilitate the sale, assumption and assignment of any Designated Contracts, the Trustee will e-file and serve by email, facsimile transmission, or by overnight mail a notice (the "Cure Amount Notice"), similar to the form attached hereto as Exhibit 3 hereto not later than three (3) days after the entry of this Order upon each counterparty to a Designated Contract under the Agreement (including counsel of record, if known, to such counterparties via hand delivery or overnight courier). Buyer shall have the right until the date provided in the Agreement to amend the Designated Contracts schedule to include additional executory contracts and unexpired leases or to exclude executory contracts or unexpired leases previously included as provided in the Agreement. To the extent that Buyer is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain Designated Contracts assumed and assigned as part of an alternative transaction, the Trustee will provide financial information for the alternative bidder with respect to all non-debtor parties to such Designated Contracts immediately following the Auction via facsimile or Federal Express or email.

9.    The Trustee will attach to the Cure Amount Notice his calculation of the undisputed cure amounts that the Trustee believes must be paid to cure all defaults under all Designated Contracts (the "Cure Amounts"). If no such amount is listed, then the Trustee believes that there is no Cure Amount. Unless the non-debtor party to a Designated Contract files an objection (the "Cure Amount Objection") to its scheduled Cure Cost or any other objection to the proposed assumption and assignment of its Designated Contract no later than 12:00 p.m. (prevailing Eastern time) on August 18, 2009 (or in the event Buyer is not the Successful Bidder, at or prior to the Sale Hearing), and serves the objection, so that it is actually received before such deadline, upon (a) counsel to the Trustee: Jeoffrey L. Burtch, Esq., Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801, (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq.; and (c) counsel for the Ad Hoc Committee of Senior Secured Noteholders: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; such non debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Designated Contract or any other objection to the proposed assumption and assignment of its Designated Contract and the Trustee shall be entitled to rely solely upon the Cure Amount; and (ii) be forever barred and estopped from asserting or claiming against the Debtors, Buyer, or such other Successful Bidder or any other assignee of the relevant Designated Contract that any additional amounts are due or defaults exist under such Designated Contract.

10. In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party asserts as the Cure Amount, and (iii) appropriate documentation in support of the Cure Amount.

11. Hearings on Cure Amount Objections may be held (a) at the Sale Hearing, or (b) on such other date as this Court may designate upon request by the Trustee with the prior written consent of Buyer.

12. The Trustee's decision to assume and assign Designated Contracts is subject to Court approval and consummation of the Proposed Sale of the Assets. Absent consummation of the Proposed Sale of the Assets, each of the Designated Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

13. Except to the extent otherwise provided in the Agreement or any agreement with a Successful Bidder, subject to any required Cure Amount payments, the assignee of any assumed Designated Contract will not be subject to any liability to the assigned Designated Contract counterparty that accrued or arose before the closing date of the Proposed Sale of the Assets and the Debtors and the Chapter 7 estates shall be relieved of all liability accruing or arising thereafter pursuant to Bankruptcy Code § 365(k).

14. Recognizing the value and benefits that the Buyer has provided to the estates by entering into the Asset Purchase Agreement, as well as Buyer's expenditure of time, energy and resources, Buyer is hereby granted a fee equal to $1,600,000 (the "Break Up Fee"), such fee payable in the event the Court fails to approve a sale to Buyer and instead approves a sale of some or all of the Purchased Assets to an entity that has submitted a Qualified Bid and such sale closes. The Break Up Fee shall be payable at the closing of the sale in connection with such Bid

8

from the first proceeds of such sale without further order of the Court. The Break Up Fee, when earned, shall constitute an administrative claim against the estate under Bankruptcy Code Sections 503(b)(1) and 507(a)(2).

15.     If Buyer elects to participate in bidding at the Auction, the amount of the Break Up Fee shall be considered if added to Buyer's bid in determining whether Buyer's bid is a higher and better offer for the Purchased Assets.

16.     Objections, if any, to the relief requested in the Sale Motion must: (1) be in writing; (2) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (3) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801 and served so as to be received on or before 12:00 p.m. (prevailing Eastern Time) on August 18, 2009 upon (a) counsel to the Trustee: Jeoffrey L. Burtch, Esq., Cooch & Taylor, P.A., 1000 West Street, Wilmington, Delaware 19801, (b) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq.; and (c) counsel for the Ad Hoc Committee of Senior Secured Noteholders: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; provided however, to the extent that Buyer is not the Successful Bidder and an alternative Successful Bidder is seeking to have certain unexpired leases, license agreements and executory contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such unexpired leases, license agreements and executory contracts shall have until the Sale Hearing to raise objections under Bankruptcy Code § 365(b)(1)(C).

9

17.     The Sale Hearing shall be held before this Court before the Honorable Mary F. Walrath on August 20, 2009 at 3:30 p.m. (prevailing Eastern Time). The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

18.     The notices to be issued in connection with the Proposed Sale of the Assets, substantially in the form of the notices annexed hereto as Exhibits 1, 2 and 3 are approved in all respects.

19.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

20.     As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

21.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

Dated August_____11_____, 2009
Wilmington, Delaware

_____
Peter J. Walsh
United States Bankruptcy Judge

~Doc# 14330.1~

# EXHIBIT 1

# BID PROCEDURES

NY: 632734-1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Eclipse Aviation Corporation, et al.,[1] | ) | Case No. 08-13031 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BID PROCEDURES

On November 25, 2008 (the "Petition Date"), Eclipse Aviation Corporation and its affiliated debtors (collectively, the "Debtors") filed chapter 11 cases pending in the Bankruptcy Court and jointly administered under Case No. 08-13031 (MFW). On March 5, 2009, the Debtors' cases converted to cases under Chapter 7 of the Bankruptcy Code. Jeoffrey L. Burtch was appointed as interim chapter 7 trustee on March 5, 2009, and serves as the chapter 7 trustee (the "Trustee") in these cases pursuant to section 702(d) of the Bankruptcy Code. On July 30, 2009, the Trustee entered into an asset purchase agreement (the "Agreement")[2] with Eclipse Aerospace Inc. ("Buyer") in which Buyer proposes to purchase substantially all of the Debtors' assets. By motion dated July 31, 2009 (the "Motion"), the Trustee sought, among other things, approval for the sale of substantially all the assets (the "Assets") of the Debtors and of the process and procedures set forth below (the "Bid Procedures") through which the Trustee, with the consultation of the Ad Hoc Committee of Senior Secured Noteholders, will determine the highest and best offer for the Assets. On August [__], 2009, the Bankruptcy Court entered its order (the "Bidding Procedures Order"), which, among other things, approved the Bid Procedures.

On August 20, 2009, at 3:30 p.m. (prevailing Eastern Time) as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Trustee shall seek entry of the Sale Order authorizing and approving the sale of the Assets (the "Proposed Sale") to Buyer (defined below) or to one or more other Qualified Bidders (defined below) that the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines to have made the highest and best offer.

*Agreement*

Pursuant to the terms and conditions of the Agreement, Buyer would provide consideration for the Assets equal to the following (the "Purchase Price"): (i) the Cash Consideration, which amount shall be payable as set forth in <u>Section 3.2</u> of the Agreement, plus (ii) the Note Consideration. The transaction contemplated by the Agreement is subject to

---

[1]    The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax I.D. No. XX-XXX9000) and Eclipse IRB Sunport, LLC, a wholly-owned subsidiary of Eclipse Aviation Corporation (Tax I.D. No. XX-XX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

*Assets for Sale*

The Trustee is offering for sale in one or more transactions all or substantially all of the assets of Eclipse Aviation Corporation and its affiliated debtor. The assets proposed to be sold to the Buyer consist of the Purchased Assets as set forth in the Agreement. The assets for sale to the Buyer do not include the Excluded Assets, which shall mean (i) the excluded assets specified in the Agreement.

Notwithstanding the foregoing, the Trustee proposes to sell any and all of the assets, either under one or a series of related transactions (e.g. to the Buyer) or in lots ("Lot Bids") consisting of discrete assets.

*Participation Requirements*

In order to participate in the bidding process and to or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Trustee and his counsel and counsel to the Ad Hoc Committee of Senior Secured Noteholders no later than 12:00 noon (prevailing Eastern Time) on August 14, 2009:

(a) <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance acceptable to the Trustee and his counsel; such form attached as Exhibit 1 hereto (if not already provided); and

(b) <u>Identification of Potential Bidder</u>. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Debtors' assets do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described in described in subparagraphs (a)-(b) of the Participation Requirements above and (a)-(d) of the Bid Requirements (as defined below), and that the Trustee in his discretion and with assistance from his advisors, and in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines is reasonably likely to submit a *bona fide* offer that would result in greater total consideration being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(b) above, the Trustee, in consultation with the Ad Hoc Committee of

Senior Secured Noteholders, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Buyer is a Qualified Bidder.

*Access to Due Diligence Materials*

Only Potential Bidders that comply with the Participation Requirements are eligible to receive due diligence access or additional non-public information. If the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, determines that a Potential Bidder who has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Trustee will designate a representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Trustee is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Trustee, the Ad Hoc Committee of Senior Secured Noteholders or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Trustee to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Trustee to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## Bidding Process

The Trustee and his advisors, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions, above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets (collectively, the "Bidding Process"). The Trustee shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids shall be August 14, 2009, at 12:00 noon, (Eastern Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its bid to: (a) counsel to the Trustee, Cooch &

4

Taylor P.A., The Brandywine Building, 1000 West Street, 10th Floor, P.O. Box 1680, Wilmington, Delaware 19899-1680, Attn: Adam Singer; (b) Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq; and (c) counsel to the Ad Hoc Committee of Senior Secured Noteholders, Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment (collectively, the "Notice Parties"), so that the bid is actually received by the Bid Deadline.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid unless otherwise agreed by the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, to satisfy each of the following conditions:

(a) <u>Good Faith Deposit</u>: Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or a certified check payable to the order of the Trustee in an amount of not less than $5.0 million.

(b) <u>Minimum Overbid</u>: The aggregate consideration must exceed the sum of the Purchase Price by at least $2,000,000.

(c) <u>Irrevocable</u>: A bid must be irrevocable until two (2) business days after the Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "Termination Date").

(d) <u>The Same or Better Terms</u>: The Bid may be for the Purchased Assets under the Agreement, as applicable for the Purchased Assets subject to the Bid (provided, however, that any variations from one or more material terms must, in the aggregate constitute an improvement, as determined by the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders, upon such term or terms as set forth in the Agreement). The Bid must be on terms that, in the Trustee's business judgment, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, are substantially the same or better than the terms of the Agreement. A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to Purchase Price). The Contemplated Transaction Documents must include a written commitment satisfactory to the Trustee and the Ad Hoc Committee of

5

Senior Secured Noteholders of its financial ability and intention to complete the transaction and contain a representation that the Qualified Bidder shall make all necessary regulatory filings, if any, and pay all costs and expenses of such filings (including the Trustee's costs and expenses).

For Qualified Bidders seeking to acquire discrete assets ("Lot Bidders"):

(a)     Good Faith Deposit:  Each Bid must be accompanied by a Good Faith Deposit in the form of cash or a certified check payable to the order of the Debtors in an amount of not less than ten percent (10%) of such Qualified Bidder's Lot Bid.

(b)     Irrevocable:  Be irrevocable until two (2) business days after a Termination Date.

For all Qualified Bidders, including Lot Bidders and Qualified Bidders seeking to acquire all or substantially all assets of the Debtors:

(a)     Contingencies:  A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement, as applicable.

(b)     Corporate Authority:   A Bid must include written evidence of the Qualified Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction; provided, however, that if the Qualified Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Qualified Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder (the "Principals").

(c)     Financing Sources: A Bid must contain written evidence satisfactory to the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, that demonstrates the Qualified Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

(i)      the Qualified Bidder's current financial statements (audited if they exist);

(ii)     contact names and numbers for verification of financing sources,

6

      (iii)    evidence of the Qualified Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

      (iv)    any such other form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders demonstrating that such Qualified Bidder has the ability to close the contemplated transaction provided, however, that the Trustee shall determine, in his reasonable discretion, in consultation with his advisors and the Ad Hoc Committee of Senior Secured Noteholders, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Qualified Bidder's financial qualifications.

(d)    <u>No Fees payable to Qualified Bidder</u>: A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Trustee believes, in his reasonable discretion and after consultation with the Ad Hoc Committee of Senior Secured Noteholders, that such bid would be consummated if selected as the Successful Bid. For purposes hereof, the Agreement shall constitute a Qualified Bid. Promptly upon such determination, the Trustee shall provide any other Qualified Bids to the Buyer and to any Qualified Bidders.

In the event that any Bid is determined by the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, not to be a Qualified Bid, the Qualified Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

## Auction

Only if a Qualified Bid (other than Buyer's) is received by the Bid Deadline, shall the Trustee conduct an auction (the "Auction") to determine the highest and best bid with respect to the Purchased Assets under the Agreement. The Trustee shall provide Buyer and all Qualified Bidders with copies of all Qualified Bids at least twelve (18) hours prior to the Auction. The Auction shall commence on August 17, 2009 at 10:00 a.m. (prevailing Eastern time).

No later than 4:00 p.m. (prevailing Eastern time) on August 16, 2009, the Trustee will notify all Qualified Bidders of (i) the highest and best Qualified Bid(s), as determined in the

Trustee's discretion after consultation with the Ad Hoc Committee of Senior Secured Noteholders (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders. If, however, no other such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Buyer will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the August 20, 2009 Sale Hearing, the Trustee will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

(a)     Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. The auction shall be conducted openly and all creditors shall be entitled to attend. Each Qualified Bidder shall have at least one representative physically present at the location of the Auction. During the Auction, bidding shall begin initially with the highest Baseline Bid as to the Purchased Assets under the Agreement and subsequently continue in minimum increments of at least $100,000. Bidding at the auction shall be transcribed or videotaped. Other than otherwise set forth herein, the Trustee may conduct the Auction in the manner he determines, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, will result in the highest and best offer for the Purchased Assets under the Agreement.

(b)     The Trustee Shall Conduct the Auction

The Trustee and his professionals shall direct and preside over the Auction. At the start of the Auction the Trustee shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (A) the amount and nature of the consideration; (B) the proposed assets to be purchased and the assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of any changes from the Agreement, if any, contemplated by the Contemplated Transaction Documents and (H) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Trustee shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

(c)     Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Trustee's announcement of the Baseline Bid. To submit an Overbid for purposes of this

8

Auction, a Qualified Bidder seeking to acquire all or substantially all of the Debtors' assets must comply with the following conditions:

     (i).    Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $100,000.

     (ii)    Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (a) the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, accepts a higher Qualified Bid as an Overbid and (b) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Trustee), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee and the Ad Hoc Committee of Senior Secured Noteholders) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

     (iii)    Announcing Overbids

The Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

    (d)    Additional Procedures

The Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, may adopt rules for the Auction at or prior to the Auction that, in his reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction. Subject to the prior consent of the Buyer,

the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, in his reasonable discretion, may adjourn without further notice the Auction (and Sale Hearing) if in his reasonable discretion an adjournment will better promote the goals of the Auction and allow parties to make progress towards modifications of any Qualified Bid that could result in a higher and better Qualified Bid.

(e)    Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

(f)    Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Trustee, in consultation with the Ad Hoc Committee of Senior Secured Noteholders, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest and best offer for the Purchased Assets under the Agreement (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtors' estates, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination. If Buyer's final bid is deemed to be highest and best at the conclusion of the Auction, Buyer will be the Successful Bidder, and such bid, the Successful Bid.

### Acceptance of Successful Bid

The Trustee shall sell the assets subject to the Successful Bid(s) to the Successful Bidder(s) upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Trustee's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Trustee's acceptance of the bid. The Trustee will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Trustee's selection of the Successful Bidder (including the assignment of any of such objector's Designated Contract thereto, provided, however, that any objection to such assignment on the basis of the Cure Amount must be made and/or reserved as set forth in the order approving these Bid Procedures).

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, his agents or the Chapter 7 estates except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. Buyer and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and

that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to Buyer, the terms of the sale of the Purchased Assets under the Agreement shall be set forth in the Agreement, or (ii) as another Successful Bidder, the terms of the sale of the Assets shall be set forth in the applicable purchase agreement.

### Free Of Any And All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Chapter 7 estates' right, title and interest in and to the Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on August 20, 2009, 3:30 p.m before the Honorable Mary F. Walrath. Following the approval of the sale of the Assets to the Successful Bidder(s) at the Sale Hearing, if any Successful Bidder fails to consummate an approved sale within ten (10) days after entry of an Order approving the Sale, the Trustee, unless such Order approving the Sale is otherwise stayed by order of a court with competent jurisdiction, shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Trustee shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder(s) shall be applied to the purchase price of such transaction at Closing. The Good Faith Deposit of the Back-up Bidder shall be held in an interest-bearing account until five (5) days after the Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the Back-up Bidder. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders. If a Successful Bidder or the Back-up Bidder, as appropriate, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, the Trustee shall be entitled to retain the Good Faith Deposit as part of the Chapter 7 estates' damages resulting from the breach or failure to perform by such Bidder.

### Modifications

The Trustee, after consultation with the Ad Hoc Committee of Senior Secured Noteholders, may (a) determine, which Qualified Bid, if any, is the highest and best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of

the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale, or (iii) contrary to the best interests of the Chapter 7 estates and their creditors. The Trustee shall not make material modifications to these Bidding Procedures without Bankruptcy Court approval, provided, however, that, to the extent not contrary to the Bidding Procedures Order, the Trustee in consultation with the Ad Hoc Committee of Senior Secured Noteholders and the Buyer, may make other non-material modifications to such procedures if their reasonable judgment such modifications would be in the best interests the Chapter 7 estates and promote an open and fair sale process.

In all cases where the Bid Procedures require the Trustee to obtain consent or consult with the Buyer or the Ad Hoc Committee of Senior Secured Noteholders, the Trustee's fiduciary duties shall not be limited by such requirement.

# EXHIBIT 2

## NOTICE OF AUCTION AND SALE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| Eclipse Aviation Corporation, *et al.*,[1] | ) | Case No. 08-13031 (MFW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | Re: Docket No. 763, ____ |

## NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that on July 31, 2009, Jeoffrey L. Burtch, the Chapter 7

Trustee (the "Trustee") for the above caption cases filed his *Motion Of The Chapter 7 Trustee To*

*Approve Sale Procedures And Approve Sale And For Related Relief* (the "Sale Motion") with the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The

Trustee has received a Qualified Bid[2] from Eclipse Aerospace, Inc. (the "Buyer"), subject to

higher and better offers, and under certain circumstances, an Auction (as defined below), all

pursuant to the Bid Procedures Order (as defined below), and with respect to the asset purchase

agreement dated as of July 30, 2009 between the Trustee and the Buyer (the "Agreement").

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on August 10, 2009, the

Bankruptcy Court entered an order (the "Bid Procedures Order") approving the Bidding

Procedures sought as part of the Sale Motion and scheduled a hearing to consider granting final

relief as to the Sale Motion for **August 20, 2009, at 3:30 p.m. (prevailing Eastern Time)**. At

that hearing, the Bankruptcy Court will consider approving the sale of the assets of the Chapter 7

estates, free and clear of all claims, liens, and encumbrances.

---

[1] The Debtors in these proceedings are: Eclipse Aviation Corporation (Tax ID No. XX-XXX9000) and
Eclipse IRB Sunport, LLC, a wholly owned subsidiary of Eclipse Aviation Corporation (Tax ID No. XX-
XXX4013), each with a mailing address of 2503 Clark Carr Loop SE, Albuquerque, NM 87106.
[2] All capitalized terms not defined herein have the meaning ascribed to them in the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that only those parties that submit Qualified Bids may participate in the Auction (as defined below). If you are interested in determining how to submit such a Qualified Bid, you must comply with the terms of the Bid Procedures as referenced in the Bid Procedures Order. Any party in interest wishing to receive the Agreement may do so free of charge upon request of Trustee's Counsel: Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Claire McCudden (cmccudden@coochtaylor.com). Any party that wishes to take part in this process and submit a bid for the Eclipse Assets must submit its competing bid prior to **August 14, 2009 at noon (prevailing Eastern Time)** (the "Bid Deadline") to: (a) The Trustee, c/o Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Adam Singer (asinger@coochtaylor.com); (b) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment.

**PLEASE TAKE FURTHER NOTICE** that if a Qualified Bid (other than the Buyer's Qualified Bid) is received by the Bid Deadline, an auction (the "Auction") with respect to a contemplated transaction shall take place on **August 17, 2009 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, the Buyer will be deemed the Successful Bidder, the Agreement will be the Successful Bid, and, at the Sale Hearing scheduled for August 20, 2009, at 3:30 p.m. (prevailing Eastern Time), the Trustee will seek approval of and authority to consummate the transaction contemplated by the Agreement.

**PLEASE TAKE FURTHER NOTICE** that only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Each Qualified Bidder must appear in person. The Auction shall be conducted openly and all creditors shall be entitled to attend. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the highest or otherwise best Qualified Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, and continue in increments of at least $100,000.

**PLEASE TAKE FURTHER NOTICE** that at the Sale Hearing, the Trustee will present the Successful Bid to the Bankruptcy Court for approval. The Trustee will sell the Assets or any portion thereof to the Successful Bidder, or to the Buyer in accordance with the applicable Agreements if a higher or otherwise better Qualified Bid is not received and accepted as the Successful Bid. If the Successful Bidder fails to consummate an approved Sale, the next highest or otherwise best Qualified Bid, as approved at the Sale Hearing, shall be deemed to be the Successful Bid and the Trustee shall be authorized to effect such Sale without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that if you seek to object to the sale of the Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order. Any objections to the relief requested in the Sale Motion must be (a) in writing, (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules, (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, and served so as to be received no later than **12:00 p.m. prevailing Eastern time on August 18 , 2009** upon: The Trustee, c/o Cooch and Taylor, The Brandywine Building,

4

1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Adam Singer (asinger@coochtaylor.com); (b) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (c) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq. If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection and such person shall be deemed to consent to the sale and will be forever bound by any conclusions or findings by the Bankruptcy Court with respect to the sale.

**PLEASE TAKE FURTHER NOTICE** that the proposed sale contemplates the sale of substantially all of the Eclipse Assets free and clear of all liens, claims, and encumbrances and the assumption and assignment of certain executory contracts and unexpired leases. Any person purporting to hold a lien, claim, or other encumbrance against the Eclipse Assets and who does not file an objection in accordance with the terms for making such objections set forth in the Bid Procedures Motion and the Bidding Procedures Order (and as set forth above), shall be deemed to consent to the sale of the Eclipse Assets fee and clear of any lien, claim, or other encumbrance such person purports to hold.

**PLEASE TAKE FURTHER NOTICE** that any party to a Designated Contract who does not file an objection in accordance with the terms for making such objections as set forth in the Bid Procedures Motion and the Bidding Procedures Order (and as set forth above), shall be deemed to consent to the assumption and assignment of such Designated Contract including the proposed cure amounts in connection therewith.

Dated: August , 2009

COOCH AND TAYLOR, P.A.

---

Adam Singer (No. 2472)
M. Claire McCudden (No. 5036)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 984-3800
Facsimile: (302) 984-3939

Attorneys for Jeoffrey L. Burtch,
Chapter 7 Trustee

# EXHIBIT 3

## NOTICE OF CURE AND RELATED SALE PROCEDURES

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECLIPSE AVIATION CORPORATION, *et al.*, | ) | Case No. 08-13031 (MFW) |
| | ) | |
| | ) | |
| Debtors. | ) | Re: Docket No. 763, ___ |

## NOTICE OF AUCTION AND SALE,
## POTENTIAL ASSUMPTION AND ASSIGNMENT OF
## <u>DESIGNATED CONTRACTS, AND CURE AMOUNTS ASSOCIATED THEREWITH</u>

**PLEASE TAKE NOTICE** that July 31, 2009, Jeoffrey L. Burtch, the Chapter 7 Trustee

(the "Trustee") for the above caption cases filed his *Motion Of The Chapter 7 Trustee To*

*Approve Sale Procedures And Approve Sale And For Related Relief* (the "Sale Motion") with the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The

Trustee has received a Qualified Bid[1] from Eclipse Aerospace, Inc. (the "Buyer"), subject to

higher and better offers, and under certain circumstances, an Auction (as defined below), all

pursuant to the Bid Procedures Order (as defined below), and with respect to the asset purchase

agreement dated as of July 30, 2009 between the Trustee and the Buyer (the "Agreement").

You may obtain a copy of the Agreement by making a written request to the undersigned

counsel.

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on August 10,

2009, the Bankruptcy Court entered an order (the "Bid Procedures Order") approving the

Bidding Procedures sought as part of the Sale Motion and scheduled a hearing to consider

granting final relief as to the Sale Motion for August 20, 2009, at 3:30 p.m. (prevailing Eastern

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in the [Bid Procedures Order] (as defined below).

Time).  At that hearing, the Bankruptcy Court will consider approving the sale of the assets of the Chapter 7 estates, free and clear of all claims, liens, and encumbrances.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Motion, the Trustee may assume, sell and assign certain of the unexpired leases, license agreements, and executory contracts (collectively referred to as the "Contracts") free and clear of all liens, claims, encumbrances, and interests upon satisfaction of the cure amounts required under section 365(b)(1)(A) of the Bankruptcy Code (the "Cure Costs"). The Contracts that the Trustee **MAY** seek to assume, sell and assign (the "Designated Contracts") and corresponding Cure Costs are listed on the attached Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the listing of any Contract on Exhibit A may not necessarily result in any such Contract ultimately becoming a Designated Contract or being assumed, sold and assigned.

**PLEASE TAKE FURTHER NOTICE** that the Buyer shall have the right until August 13, 2009, to amend the list of Designated Contracts to include additional executory contracts or unexpired leases or to exclude executory contracts and unexpired leases previously included on the list of Designated Contracts and to amend the Cure Costs.

**PLEASE TAKE FURTHER NOTICE** that with respect to contracts with the City of Albuquerque, the Buyer shall have until thirty (30) days after the Closing to designate any contract with the City of Albuquerque.

**PLEASE TAKE FURTHER NOTICE** that any objections to the relief requested in the Sale Motion, including the assumption, sale and assignment of the Designated Contracts and the corresponding Cure Costs, must be (a) in writing, (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules, (c) be filed with the clerk of

3

the Bankruptcy Court for the District of Delaware. Third Floor, 824 Market Street, Wilmington, Delaware 19801 and served so as to be received no later than 12:00 p.m. prevailing Eastern time on August 18, 2009 (the "Cure Objection Deadline") upon: The Trustee, c/o Cooch and Taylor, The Brandywine Building, 1000 West Street, 10th Floor, Wilmington, DE 19801, Attn: Adam Singer (asinger@coochtaylor.com); (b) the Ad Hoc Committee: Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, Attn: Benjamin Hoch and Andrew Ment; and (c) Buyer: Eclipse Aerospace, Inc., 125 Fairchild St., Suite 100, Charleston, SC 29492, Attn.: Mason Holland, President, with a copy to: Nelson Mullins Riley & Scarborough LLP, Atlantic Station, 201 17th Street, Suite 1700, Atlanta, Georgia 30363, Attn.: William J. Ching, Esq. and Michael E. Hollingsworth II, Esq.; provided however, to the extent that the Buyer is not the Successful Bidder and the alternative Successful Bidder is seeking to have certain unexpired leases, license agreements and executory contracts assumed and assigned as part of an alternative transaction, the non-debtor parties to such unexpired leases, license agreements and executory contracts shall have until the Sale Hearing to raise objections under section 365(b)(1)(C).

　　　　**PLEASE TAKE FURTHER NOTICE** that any person or entity receiving notice of the Sale Hearing and this Notice that fails to file an objection on a timely basis shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such unexpired lease, license agreement or executory contract and the Trustee and the Buyer shall be entitled to rely solely upon the Cure Costs; (ii) be deemed to have consented to the assumption and assignment of such unexpired lease, license agreement or executory contract; and (iii) be forever barred and estopped from asserting or claiming against the Trustee, the Chapter 7 estates, or the Successful Bidder or any other assignee of the relevant

Designated Contract that any additional amounts are due or defaults exist under such Designated Contract.

**PLEASE TAKE FURTHER NOTICE** that any person or entity receiving notice of the Sale Hearing and this Notice that fails to file an objection on a timely basis shall be deemed to have been provided with adequate assurance of future performance under any assumed and assigned unexpired lease, license agreement or executory contract and shall be forever barred from raising any defense, claim, or objection with respect to the assignment of such lease, license agreement or executory contract on account of the Successful Bidder's financial condition.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of said adjournment in the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for the Sale Hearing.

Dated: August , 2009       COOCH AND TAYLOR, P.A.


             Adam Singer (No. 2472)
             M. Claire McCudden (No. 5036)
             The Brandywine Building
             1000 West Street, 10th Floor
             Wilmington, DE 19801
             Telephone: (302) 984-3800
             Facsimile: (302) 984-3939

             Attorneys for Jeoffrey L. Burtch,
             Chapter 7 Trustee

**EXHIBIT 3**

# SPECIAL WARRANTY DEED

This Special Warranty Deed is being delivered pursuant to that certain Donation Agreement dated February 25, 2002, as it may have been amended (the "Donation Agreement"), by and between RANCH JOINT VENTURE, L.L.P., a New Mexico limited liability partnership ("Ranch"), and ECLIPSE AVIATION CORPORATION, a Delaware corporation ("Eclipse"). Ranch, for consideration paid, grants to Eclipse, whose address is 2503 Clark Carr Loop SE, Albuquerque, NM 87106, the following described real estate in Bernalillo County, New Mexico:

Tract D-1 of the "Bulk Land Plat for Aerospace Technology Park Tracts D and S of Double Eagle II Airport and Adjacent Lands within Section 36, Township 11 North, Range 1 East and Section 3, Township 10 North, Range 1 East, City of Albuquerque Bernalillo County, New Mexico October 2004" as the same is shown and designated on said Bulk Land Plat filed December 21, 2004 as Doc. No. 2004178149 in Bk. 2004C, Pg. 396 of the records of the County Clerk of Bernalillo County, New Mexico (the "Eclipse Tract").

Upon the appointment of a custodian, trustee, liquidator or receiver for or for any of the Eclipse Tract, the assignment for the benefit of creditors by, or the filing of a petition under bankruptcy, insolvency or debtor's relief law or the filing of a petition for any adjustment of indebtedness, composition or extension by or against Eclipse prior to the construction of a manufacturing facility on the Eclipse Tract, Ranch shall have the option to purchase the Eclipse Tract for $10,000.00, or if Eclipse does not construct a manufacturing facility on the Eclipse Tract within five (5) years from the date of this deed, the Eclipse Tract shall revert to the Ranch. Provided, however, if 6.1(i) of the Donation Agreement is inapplicable, Eclipse may, by written notice to Ranch no more than six (6) months prior to the expiration of five years, cause the reversion to be postponed for an additional three (3) years to allow Eclipse to construct its Manufacturing Facility.

Subject to restrictions and easements of record and taxes for the current year and thereafter.

with special warranty covenants.

WITNESS its hand and seal 15 day of January, 2005.

RANCH JOINT VENTURE, L.L.P.,
a New Mexico limited liability partnership

By:   B-R Ranch Management II Partners, L.P.,
a Texas limited partnership,
It's General Partner

    By:   TexWest LLC, a Delaware limited liability company,
It's General Partner

       By: _William L. Rogers_
          W. L. Rogers, Sole Member and Manager

2005080059
8865999
Page: 1 of 2
01/20/2005 09:20
Bk-A99 Pg-8831
Mary Herrera    Bern. Co.   SPWD   R 11.00

STATE OF TEXAS
COUNTY OF TRAVIS

This instrument was acknowledged before me on January 14 , 2005, by W. L. Rogers as Sole Member and Manager of TexWest LLC, a Delaware limited liability company, General Partner of B-R Ranch Management II Partners, L.P., a Texas limited partnership, General Partner of Ranch Joint Venture, L.L.P., a New Mexico limited liability partnership.

(Seal)



Notary Public

My commission expires: 1/30/08

GAYLEE COOK
Notary Public, State of Texas
My Commission Expires
January 30, 2008

K:\dox\client\17972\116\W0437987.DOC



2005099059
6605000
Page: 2 of 2
01/20/2005 03:20P
Bk-A90 Pg-9031
Mary Herrera   Bern. Co. SPWD   R 11.00